# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A., T.L., I.O., D.S., and K.S.;[1]<br>Asian Americans Advancing Justice \| AAJC<br>1620 L St. NW, Washington, D.C. 20036<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland<br>Security, in her official capacity;<br>2707 Martin Luther King, Jr. Ave., S.E.<br>Washington, D.C. 20528<br><br>TODD LYONS, Acting Director, U.S.<br>Immigration and Customs Enforcement, in his<br>official capacity;<br>500 12th St., S.W. Washington, D.C. 20536<br><br>PAMELA BONDI, Attorney General, in her<br>official capacity;<br>950 Pennsylvania Ave., N.W. Washington, D.C.<br>20530<br><br>and<br><br>MARCO RUBIO, Secretary of State, in his<br>official capacity;<br>2201 C St., N.W. Washington, D.C. 20451<br><br>*Defendants*. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

[1] All Plaintiffs may be contacted through their counsel. While LCvR 5.1(c) requires parties to state the name and full residence address of each party in the caption of an initial filing, Plaintiffs are seeking leave from this Court to proceed using their initials to protect their privacy, as listing their full names would expose them to risk of harm. Accordingly, Plaintiffs' Motion to Proceed Pseudonymously is being filed contemporaneously with this Complaint. Furthermore, as explained *infra*, Plaintiffs D.A., T.L., I.O., and D.S. are detained at a remote open-air detention site in Ghana and do not know where they are. Plaintiff K.S. is in hiding and fears for his life.

Defendants know that they may not, consistent with U.S. immigration law, directly deport non-citizens to countries from which they have been granted fear-based protection. As an end-run around this prohibition, Defendants have enlisted the government of Ghana to do their dirty work. Despite the minimal, pass-through involvement of the Ghanaian government, Defendants' objective is clear: deport individuals who have been granted fear-based relief from being sent to their countries of origin to those countries anyway, in contravention to the rulings of U.S. immigration judges and U.S. immigration law.

Plaintiffs are non-citizens who have been granted fear-based immigration relief. Plaintiffs D.A., T.L., I.O., and D.S. are now in immediate danger of being sent on, within hours, to their countries of origin at the direction and acquiescence of the United States, notwithstanding orders from U.S. Immigration Judges that they may not be sent to their countries of origin because they will be persecuted or tortured there. Plaintiff K.S., a bisexual man, has already been removed from Ghana to his country of origin, again despite orders barring such removal, where he is in hiding for fear of his life.

None of the plaintiffs are Ghanaian citizens, have ties to Ghana, or had Ghana designated as a potential country for removal during the course of their immigration proceedings. Nevertheless, in the middle of the night on September 5, 2025, Plaintiffs and nine other individuals were taken from their cells in U.S. Immigration and Customs Enforcement ("ICE") custody in Alexandria, Louisiana and put on a U.S. military cargo plane, where several sat in straitjackets for 16 hours. Prior to putting Plaintiffs on the plane, officials did not notify them where they were being taken. Plaintiffs did not know their destination until several hours into their journey. Plaintiffs were also not assured they would not be sent on to their home countries, where they fear persecution or torture. To the contrary, on the plane to Ghana, they were told by

U.S. officials that they would be transported to their countries of origin, and when they arrived in Ghana, a U.S. official told Ghanaian officials that each individual on the plane would be transported to their country of origin. That has been reaffirmed by the President of Ghana. *See* Solomon Ekanem, *Ghana joins Trump's deportee host country list as 14 migrants arrive in Accra*, Business Insider Africa (Sept. 11, 2025), https://africa.businessinsider.com/local/lifestyle/ghana-joins-trumps-deportee-host-country-list-as -14-migrants-arrive-in-accra/l5etfjd.

For the last five days, Plaintiffs have been detained in squalid conditions and surrounded by armed military guards in an open-air detention facility known, upon information and belief, as Dema Camp. On or about September 6, 2025, three other individuals who were on the plane were removed to their countries of origin. *See* Exhibit A, Declaration of K.S. ("K.S. Decl."). One of those individuals, Plaintiff K.S., had previously been granted deferral of removal under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.18, a protection against removal to his country of origin. Two other plaintiffs, who are still detained in Ghana, have also been granted deferral of removal under CAT, and the last two plaintiffs have been granted withholding of removal under the Immigration and Nationality Act ("INA"), 8 CFR § 208.16.

On September 10, 2025, officials at Dema Camp informed the four Plaintiffs detained in Ghana that they, too, will be deported to their countries of origin this Friday, September 12, in spite of the fact that Plaintiffs have been granted fear-based protection from being removed to those countries under the INA, and CAT, and that they communicated as much to Ghanaian officials.

By removing Plaintiffs to Ghana without notice or an opportunity to be heard, and by directing the transportation of Plaintiffs to their countries of origin and enlisting Ghana to do its

bidding in the process, Defendants are circumventing U.S. immigration law. Plaintiffs file this Complaint to prevent their unlawful transfer to countries from which they have been granted withholding of removal under the INA and deferral of removal under CAT.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to hear this case under 28 U.S.C. § 2201, the Declaratory Judgment Act, and 28 U.S.C. § 1331, Federal Question Jurisdiction; and because the individual Defendants are United States officials. 28 U.S.C. § 1346(a)(2).

2.      The Court has authority to enter a declaratory judgment and to provide temporary, preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, the All Writs Act, and the Court's inherent equitable powers.

3.      Venue lies in this District because each Defendant is an agency or officer of the United States sued in his or her official capacity, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. 28 U.S.C. § 1391(e)(1).

## PARTIES

4.      Plaintiff D.A. is a citizen and native of Nigeria. An Immigration Judge granted him withholding of removal in April 2025. His wife is a U.S. citizen and his Form I-130, Petition for Alien Relative, was approved four months ago. Defendants have deported him to Ghana without any legal process whatsoever.

5.      Plaintiff T.L. is a citizen and native of Nigeria. An Immigration Judge granted him CAT deferral in June 2025. Defendants have deported him to Ghana without any legal process whatsoever.

6.     Plaintiff I.O. is a citizen and native of Nigeria. An Immigration Judge granted him CAT deferral in July 2025. Defendants have deported him to Ghana without any legal process whatsoever.

7.     Plaintiff D.S. is a citizen and native of The Gambia. An Immigration Judge granted him withholding of removal in February 2025. Defendants have deported him to Ghana without any legal process whatsoever.

8.     Plaintiff K.S. is a citizen and native of The Gambia. An Immigration Judge granted him CAT deferral in March 2025 on the basis of his sexuality. Defendants deported him to Ghana without any legal process whatsoever, and he has now been deported from there to The Gambia.

9.     Defendant Kristi Noem is the U.S. Department of Homeland Security ("DHS") Secretary. She is the cabinet-level secretary responsible for DHS, including all immigration enforcement in the United States. Furthermore, DHS is the federal agency responsible for implementing and enforcing the INA and is an agency within the meaning of the APA, 5 U.S.C. § 551(1). DHS oversees its component agencies, including ICE, U.S. Customs and Border Protection, and U.S. Citizenship and Immigration Services. DHS is headquartered in Washington, D.C.

10.     Defendant Todd Lyons is the Acting Director of ICE, which is headquartered in Washington, D.C. In that role, he is responsible for overseeing all operations of ICE, the federal agency responsible for all immigration enforcement in the United States.

11.     Pamela Bondi is the Attorney General of the United States. She is responsible for overseeing all operations of the U.S. Department of Justice, which is headquartered in

Washington, D.C. The Immigration Judges who decide removal cases and applications for relief from removal do so as designees of Defendant Bondi.

12.    Marco Rubio is the Secretary of the U.S. State Department ("State Department"), which is headquartered in Washington, D.C. He is responsible for overseeing all State Department operations. On information and belief, he, or his subordinates, is responsible for facilitating the agreement with Ghana resulting in Plaintiffs' unlawful removal there.

13.    All government defendants are sued in their official capacities.

## FACTUAL BACKGROUND

14.    Plaintiffs are non-citizens from Nigeria and The Gambia who all have some form of fear-based immigration relief. They were detained in ICE facilities across the country and transferred to an ICE detention center in Alexandria, Louisiana.

15.    The night of September 5, 2025, Plaintiffs were awoken and removed from their cells. They were shackled in chains. *See* Ex. A at   5-6.

16.    They were put on a U.S. military plane without being told where they were going. *See* Ex. A at   6. Four individuals were placed in straitjackets and remained in the straitjackets for approximately 16 hours. *Id.* at   6. During the flight, the only food Plaintiffs were provided was bread and water. The only available toilet was a plastic portable bathroom. If Plaintiffs needed to use the restroom, they had to do so while shackled in chains.

17.    Not until had boarded the plane did an ICE officer on the plane inform Plaintiff K.S. that the individuals on the plane would be transported to Ghana, and then to their countries of origin. *See* Ex. A at   7.

18.    None of Plaintiffs are from Ghana or have substantial ties to Ghana.

19.     Ghana was not designated as a potential country for removal during any Plaintiff's immigration proceedings.

20.     At no point prior to their arrival in Ghana did any Plaintiff receive a reasonable fear interview or opportunity to express their fear of torture or persecution if removed to Ghana.

21.     When Plaintiffs were at a fuel stop in the U.S. Virgin Islands, the apparent head ICE official on the plane told Plaintiff K.S. that those on the plane were being sent to Ghana and that Ghana would send them to their countries of origin. Ex. A at 7.

22.     Some of the Plaintiffs were then taken to an outdoor camp which, upon information and belief, is known as Dema Camp. K.S. and two other individuals who were on the plane were detained in a room at the airport in Accra, Ghana.

23.     Between September 6 and September 10, 2025, the three individuals detained at the airport were removed to their countries of origin, including Plaintiff K.S. *See* Ex. A at 8, 10.

24.     K.S. was held at the airport in Accra, Ghana for five days, during which time he repeatedly stated his fear of returning to The Gambia and that he had won protection from return to The Gambia under the CAT based on his sexuality. *See* Ex. A at 9. A Ghanaian immigration official told K.S. that orders from ICE and Ghanaian superiors were to send him to The Gambia. *Id.* On September 10, 2025, K.S. was flown from Ghana to The Gambia, where a Gambian official admitted K.S. into The Gambia without any formal processing or valid travel documents. *Id.* at 11-12. He is currently in hiding in The Gambia for fear of his life. *Id.* at 13.

25.     On September 11, 2025, an African news outlet reported that "President John Dramani Mahama confirmed that a group of 14 deportees, among them Nigerians and one Gambian, had already arrived in Accra as per Reuters. According to him, the Ghanaian

government immediately facilitated their transfer back to their respective home countries, underscoring the nation's role as a temporary transit hub rather than a final destination." *See* Ekanem, *supra* p. 2.

26.    Upon information and belief, President Mahama was referring to Plaintiffs, as well as the other individuals they were traveling with.

27.    The conditions at Dema Camp are abysmal and deplorable. The facilities are dilapidated. There is no permanent shelter available; Plaintiffs are therefore forced to sleep in tents. The camp has little running water, and what does exist is not consistently available. Plaintiffs have been forced to wear the same clothes for the past five days. When removed from the U.S., Plaintiffs were not provided the opportunity to bring additional clothes with them and the Camp has provided Plaintiffs no additional clothing or a way to wash their clothes. Plaintiffs are surrounded by armed military guards around the clock.

28.    On September 10, 2025, Plaintiffs were informed by officials in Ghana that this Friday, September 12, 2025, they would be removed to their countries of origin.

29.    The comments by U.S. officials on the plane on the way to Ghana, combined with news reports about Ghana's involvement in a deal with the U.S. about repatriating non-citizens to their countries of origin in Africa, indicate that the U.S. is deporting people to Ghana with the intention that they be deported to their countries of origin.

## LEGAL FRAMEWORK

30.    Congress authorized only the DHS Secretary with "enforcement [of final removal orders] and all other laws relating to immigration . . . of [noncitizens] . . . ." 8 U.S.C. § 1103(a)(1). Paragraphs (b)(1) and (b)(2) of 8 U.S.C. § 1231 govern the countries to which DHS is authorized to remove noncitizens with final removal orders. The statutory scheme consists of

"four consecutive removal commands." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). DHS must attempt to remove the individual first to the country of choice (designated on the removal order), then their country of origin, next a country to which they have a lesser connection, and finally, if, and only if, removal to any of those countries is "impracticable, inadvisable, or impossible," may DHS remove a person to another country "whose government will accept" them. *Id.* (citing 8 U.S.C. § 1231(b)(2)).[2]

31.    Before removal to **any** country where a noncitizen fears persecution or torture, U.S. law guarantees the right to raise a claim under the withholding of removal statute, 8 U.S.C. § 1231(b)(3) and/or Article 3 of the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). First, 8 U.S.C. § 1231(b)(1) and (b)(2) make any country of removal "[s]ubject to paragraph (3)." Paragraph (3), entitled "Restriction on removal to a country where [noncitizen's] life or freedom would be threatened," reads:

> *Notwithstanding paragraphs (1) and (2)*, the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1231(b)(3)(A) (emphasis added);[3] *see also Jama*, 543 U.S. at 348. Congress also enacted the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") to implement CAT, instructing that the U.S. government may not "expel, extradite, or otherwise effect the

---

[2] For noncitizens placed in removal proceedings upon "arriv[ing] in the United States," the designated country is the one from which they departed, or, alternatively, to which they have a connection. *Id*. § 1231(b)(1)(A)-(C). Another country is permitted only if removal to each of those countries "is impracticable, inadvisable, or impossible." *Id.* § 1231(b)(1)(C)(iv).

[3] Withholding of removal is a "mandatory" protection for noncitizens who are ineligible for asylum but can establish that they are more likely than not to face persecution in the designated country. *Id*. § 1231(b)(3)(A); *see also* 8 C.F.R. §§ 208.16, 1208.16; *INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999). Withholding of removal contains exceptions for, inter alia, individuals who have committed certain serious crimes. *See* 8 U.S.C. § 1231(b)(3)(B).

involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." Pub. L. 105-277, Div. G, § 2242(a), 112 Stat. 2681, 2681-822 (1998) (codified as statutory note to 8 U.S.C. § 1231). Congress directed that the government "shall prescribe regulations to implement the obligations of the United States under Article 3 of the [CAT]," *id.* § 2242(b), 112 Stat. at 2681-822, which the government did, *see*, *e.g.*, 28 C.F.R. § 200.1 (explaining that a Title V removal order "shall not be executed in circumstances that would violate Article 3 of [CAT]").[4]

32.     The statute and regulations implement Congress' designation scheme to ensure that noncitizens receive meaningful notice and an opportunity to present a fear-based claim. In standard removal proceedings under 8 U.S.C. § 1229a, the regulations mandate that the immigration judge (IJ) "shall notify" the individual of the designated country of removal, and "shall also identify for the record" all alternative countries to which the person may be removed. 8 C.F.R. § 1240.10(f). Likewise, DHS officers can issue an administrative removal order to nonpermanent residents with an aggravated felony conviction. *See* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1. In this process, the noncitizen may designate "the country to which he or she chooses to be deported," 8 C.F.R. § 238.1(b)(2)(ii), and the "deciding [DHS] officer shall designate *the* country of removal." *Id*. § 238.1(f)(2) (emphasis added). Consistent with the United States' commitment to non-refoulement, DHS must provide individuals who express a fear of return to the designated country an opportunity to demonstrate a reasonable fear of persecution or torture to an asylum officer, and those who pass this threshold are eligible to apply for withholding under 8 U.S.C. § 1231(b)(3) and/or CAT protection in withholding-only proceedings. *See id.* §§ 241.8(e), 238.1(f)(3); *see also id.* §§ 208.31, 1208.31.

---

[4] Individuals are eligible for CAT protection no matter the basis of their removal order. *See* 8 C.F.R. §§ 208.16-208.18, 208.31, 241.8(e), 1208.16-1208.18.

33.     On March 30, 2025, DHS issued a memorandum outlining its policy on third country removals. Memorandum, U.S. Dep't of Homeland Sec., Guidance Regarding Third Country Removals (Mar. 30, 2025) ("March 30 Memo"). The policy states that before the government can remove a non-citizen to a country that had not previously been designated as the country of removal, DHS must determine whether that country has provided diplomatic assurances that non-citizens removed from the U.S. will not be persecuted or tortured. If the government does not receive such assurances, then it must follow the procedures outlined in the March 30 Memo, which includes providing the non-citizen with notice and a reasonable fear interview.

34.     Accordingly, because Defendants did not provide Plaintiffs with notice or a reasonable fear interview, they were required to have credible diplomatic assurances from Ghana that Plaintiffs would not be subjected to torture or persecution. But as the declaration of Plaintiff K.S. illustrates, any diplomatic assurances provided by the Ghanaian government (if provided at all) could not have been reliable, as Ghana has within days of receiving non-citizens deported from the U.S. transported at least one to a country that an Immigration Judge determined he was likely to be tortured or persecuted in.

35.     As a result, even if Plaintiffs are not ultimately transported to their countries of origin, Defendants' actions of deporting Plaintiffs to Ghana violates their statutory and constitutional rights.

## CAUSES OF ACTION

### COUNT I
### Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C)

36.     The allegations in the above paragraphs are realleged and incorporated herein.

37. The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review." 5 U.S.C. § 702.

38. The APA compels a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary [or] capricious, . . . or otherwise not in accordance with law," *id.* § 706(2)(A), or "short of statutory right." *Id.* § 706(2)(C).

39. Defendants' decision to deport Plaintiffs to Ghana with the intention that they be removed to their countries of origin is arbitrary and capricious. It endangers Plaintiffs' lives and safety by subjecting them to the very persecution and torture that immigration judges determined warranted protection under the INA and CAT.

40. Defendants' actions are also not in accordance with law, short of statutory right, and violate the INA, FARRA, and implementing regulations, all of which mandate that Defendants refrain from removing Plaintiffs to a country where they will likely be persecuted or tortured.

## COUNT II
## Fifth Amendment Due Process Clause

41. The allegations in the above paragraphs are realleged and incorporated herein.

42. The Fifth Amendment of the U.S. Constitution provides that no person be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Removing a person to a country without giving them the opportunity to address their fear of persecution in that country violates due process. "The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (Frankfurter, J., concurring)); *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 517 (D. Md. 2025) ("the statutory scheme which conferred

withholding of removal also entitled [petitioner] to not be returned to El Salvador absent process.").

43.     Defendants' decision to deport Plaintiffs to Ghana with the intention that they be removed to their countries of origin violates their due process rights under the Fifth Amendment. It endangers their lives and safety by subjecting them to the very persecution and torture that immigration judges determined warranted protection under the INA and CAT.

44.     Even if Plaintiffs are ultimately not transported to their countries of origin, deporting them to Ghana in the absence of credible diplomatic assurances and without providing them with a reasonable fear interview violates their due process rights under the Fifth Amendment.

### COUNT III
### Declaratory Judgment, 28 U.S.C. § 2201

45.     The allegations in the above paragraphs are realleged and incorporated herein.

46.     Under 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such declaration."

47.     Plaintiffs seek a declaration that Defendants' actions violate the Immigration and Nationality Act, the Foreign Affairs Reform and Restructuring Act of 1998, implementing regulations, the Due Process Clause of the Fifth Amendment, and the treaty obligations of the United States.

48.     Accordingly, Plaintiffs request that the Court declare their rights and legal relations under the INA, the FARRA and implementing regulations, and the Due Process Clause of the Fifth Amendment.

### COUNT IV
### VIOLATION OF THE WITHHOLDING OF REMOVAL STATUTE,
### 8 U.S.C. § 1231(b)(3)(A)

**(Plaintiffs D.A. and D.S.)**

49.    The allegations in the above paragraphs are realleged and incorporated herein.

50.    The Withholding of Removal statute, 8 U.S.C. § 1231(b)(3)(A), prohibits Defendants from removing a noncitizen to any country from which they have been granted withholding of removal, unless such grant is formally terminated by lawful means.

51.    As set forth above, Defendants have arranged for the removal, by way of Ghana, of Plaintiffs D.A. and D.S. to the countries from which they have been granted withholding of removal, without formally terminating their grant of withholding of removal, thus violating the Withholding of Removal statute.

52.    Defendants' violation of law, as set forth herein, is causing Plaintiffs D.A. and D.S. irreparable harm with each day that they spend outside the United States and detained in Dema Camp, where they face removal to their countries of origin.

53.    Even if Plaintiffs were released from Dema Camp, they would still be suffering irreparable harm in the form of remaining at risk of removal to their countries of origin, where they fear persecution or torture.

54.    Plaintiffs ask the Court to immediately order Defendants to take all steps reasonably available, and proportionate to the gravity of the ongoing harm, to return Plaintiffs to the United States.

**COUNT V**
**VIOLATION OF THE CONVENTION AGAINST TORTURE and**
**IMPLEMENTING REGULATIONS,**
**8 C.F.R. § 208.18**
**(Plaintiffs T.L., I.O., and K.S.)**

55.    The allegations in the above paragraphs are realleged and incorporated herein.

56.     The Convention Against Torture and its implementing regulations, § 208.18, prohibit Defendants from removing a noncitizen to any country from which they have been granted deferral of removal, unless such grant is formally terminated by lawful means.

57.     As set forth above, Defendants have arranged for the removal, by way of Ghana, of Plaintiffs T.L., I.O., and K.S.  to the countries from which they have been granted deferral of removal, without formally terminating their grant of deferral of removal, and Plaintiff K.S.'s removal to The Gambia has already been fully effectuated. These acts violate the Convention Against Torture.

58.     Defendants' violations of law, as set forth herein, are causing Plaintiffs T.L., I.O., and K.S. irreparable harm with each day that they spend outside the United States and in Dema Camp and, in the case of K.S., The Gambia.

59.     Even if Plaintiffs were released from Dema Camp, they would still be suffering irreparable harm in the form of remaining at risk of removal to their countries of origin, where they fear persecution or torture.

60.     Plaintiffs ask the Court to immediately order Defendants to take all steps reasonably available to them, and proportionate to the gravity of the ongoing harm, to return Plaintiffs to the United States.

**COUNT VI**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Proactively Disclose Records**
**(Against Defendant DHS)**

61.     The allegations in the above paragraphs are realleged and incorporated herein.

62.     Defendant DHS is obligated under 5 U.S.C. § 552(a)(2)(B) and (a)(2)(C) to proactively disclose "those statements of policy and interpretations which have been adopted by

15

the agency and are not published in the Federal Register" and "administrative staff manuals and instructions to staff that affect a member of the public."

63.    Defendant DHS may not "rel[y] on, use[], or cite[] as precedent" any "final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public" against a party unless the material is "indexed and either made available or published as provided by [5 U.S.C. § 552(a)(2)(E)]" or "the party has actual and timely notice of the terms thereof." 5 U.S.C. § 552(a)(2)(E).

64.    The agreement that exists between Defendant and the government of Ghana ("the Ghana Agreement") is a statement of policy adopted by DHS but not published in the Federal Register and an instruction to staff which affects members of the public. On information and belief, Defendant DHS has similar statements of policy, instruction, or guidance covered by 5 U.S.C. § 552(a)(2)(E) related to Defendants' increased efforts to deport noncitizens to third countries.

65.    Defendant DHS has failed to proactively disclose the Ghana Agreement and/or related statements of policy, instruction, or guidance covered by 5 U.S.C. § 552(a)(2)(E), and no legal basis exists for Defendant DHS's failure to proactively disclose these materials.

66.    Defendant DHS has nonetheless relied upon the Ghana Agreement, and has possibly relied on other statements of policy or instruction or guidance covered by 5 U.S.C. § 552(a)(2)(E), against Plaintiffs.

67.    Defendant DHS's failure to proactively disclose the Ghana Agreement and other statements of policy, instruction, or guidance covered by 5 U.S.C. § 552(a)(2)(E), is in violation of 5 U.S.C. § 552(a)(2). Defendant DHS's reliance on these materials against Plaintiffs is a violation of 5 U.S.C. § 552(a)(2)(E).

68.    For these reasons, Defendants cannot rely on or use the Ghana Agreement to detain people in Ghana prior to their removal to their country of origin or another third country.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.  Assume jurisdiction over this action;

b.  Immediately enjoin Defendants from removing—or facilitating, enabling, or encouraging the removal—of Plaintiffs to their countries of origin;

c.  Declare that Defendants have violated Plaintiffs' statutory, regulatory, and constitutional rights by facilitating their removal to their countries of origin;

d.  Declare that Defendants had, and have, a mandatory duty to provide Plaintiffs with meaningful notice and opportunity to present a fear-based claim to an immigration judge prior to deportation to Ghana;

e.  Preliminarily and permanently enjoin Defendants from failing to provide Plaintiffs with written notice and a meaningful opportunity to present a fear-based claim under 8 U.S.C. § 1231(b)(3) and/or under the Convention Against Torture to an immigration judge prior to deportation to Ghana;

f.  Order Defendants to immediately facilitate the return of Plaintiffs to the United States and provide them with written notice and a meaningful opportunity to present a fear-based claim under 8 U.S.C. § 1231(b)(3) and/or under the Convention Against Torture to an immigration judge prior to any effort to again deport them to Ghana;

g.  Enjoin Defendants from relying on or using Ghana as a transit hub in removal proceedings pursuant to 5 U.S.C. § 552(a)(2);

h.  Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28

U.S.C. § 2412; and

i.  Order all other relief that the Court deems just and proper.

Dated: September 11, 2025                    Respectfully submitted,

_/s/ Noah Baron_____

Meredyth Yoon*                               Noah Baron (D.C. Bar No. 1048319)
Samantha C. Hamilton*                        ASIAN AMERICANS ADVANCING
Alexandra M. Smolyar*                        JUSTICE-AAJC
ASIAN AMERICANS ADVANCING                    1620 L Street, NW, Suite 1050
JUSTICE - ATLANTA                            Washington, D.C. 200036
5680 Oakbrook Parkway, Suite 148             Telephone: (202) 296-2300
Norcross, GA 30093                           nbaron@advancingjustice-aajc.org
Telephone: (470) 816-3319
shamilton@advancingjustice-atlanta.org
myoon@advancingjustice-atlanta.org
asmolyar@advancingjustice-atlanta.org

Patrick Taurel (D.C. Bar No.741700)
Gianna Borroto (D.C. Bar No.
90023071)*
GROSSMAN YOUNG & HAMMOND,
LLC
4922 Fairmont Avenue
Ste. 200
Bethesda, MD 20814
Telephone: (240) 403-0913
ptaurel@grossmanyoung.com
gborroto@grossmanyoung.com

* _Motions for admission_ pro hac vice _forthcoming_

18