UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A., T.L., I.O., D.S., and K.S.;<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; PAMELA BONDI, Attorney General, in her official capacity; and MARCO RUBIO, Secretary of State, in his official capacity<br>*Defendants*. | Civil Action No. _____ |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

In the dark of night, Defendants roused Plaintiffs from their beds in a U.S. Immigration and Customs Enforcement ("ICE") holding facility and secreted them away to Ghana, to which none has any connection. Defendants did this without providing Plaintiffs notice of the removal or an opportunity to contest it. This alone violated Plaintiffs' rights. Then Defendants compounded that harm: they removed Plaintiffs to Ghana specifically to effectuate Plaintiffs' eventual removal from Ghana to their countries of origin, where Plaintiffs fear persecution and torture. Defendants undertook this process with the purpose of circumventing U.S. and international law, which bars refoulement of persons, like Plaintiffs, who have been granted immigration relief by U.S. immigration courts. **Plaintiffs face removal from Ghana at an unknown time during the day of September 12, 2025.**

1

Accordingly, Plaintiffs, by counsel, pursuant to Federal Rule of Civil Procedure 65(b)(1), hereby move this Court for an emergency ex parte temporary restraining order pursuant to Counts I (Administrative Procedure Act) and II (Due Process Clause) of their Complaint, and to (1) enjoin Defendants from removing, facilitating, enabling, or encouraging the removal of Plaintiffs from their countries of origin and (2) order Defendants to facilitate Plaintiffs' return to the custody of the United States. In the alternative, Plaintiffs move that the Court order Defendants to notify the Ghanaian government not to remove Plaintiffs to their countries or origin or other countries where they fear persecution or torture nor subject them to unreasonable conditions until a preliminary injunction motion can be briefed and decided by this Court.

In support of this motion, Plaintiffs respectfully represent as follows.

**FACTUAL BACKGROUND**

As set forth in the Complaint, Dkt. 1, and evidence attached thereto, Plaintiffs are noncitizens who have been deported to Ghana. No Plaintiff is a citizen of Ghana; has ties to Ghana; and upon information and belief, no Plaintiff has had Ghana designated as a possible country for removal. Plaintiffs all have either withholding of removal under the Immigration and Nationality Act or deferral of removal under the Convention Against Torture ("CAT"). These grants of immigration relief are mandatory and unequivocal: Plaintiffs cannot be removed to their countries of origin. Yet that is exactly what Defendants seek to do by circumventing their obligation to prevent refoulement in violation of both U.S. and international law in sending Plaintiffs to Ghana, where they will then be removed to the countries where they fear persecution or torture.

In the middle of the night, on or about September 5, 2025, Plaintiffs were suddenly taken from their beds at the Alexandria Staging Facility in Alexandria, Louisiana, placed in

2

straitjackets or other restraints, and put on a U.S. military plane to an undisclosed location, which turned out to be Ghana. At no point were Plaintiffs informed where they were being taken or given an opportunity to express fear of torture in Ghana, nor could they, as Plaintiffs could not have possibly known they were going to Ghana. Plaintiffs had no way of knowing whether they were being transferred to another U.S. detention facility; the country for which their removal was designated; or to yet another location, where they could be held incommunicado at the behest of the U.S. government.[1]

None of the Plaintiffs received any process whatsoever with respect to their deportation to Ghana. Upon information and belief, Plaintiffs are currently detained in Dema Camp, a remote, open-air detention camp surrounded by heavily armed military guards. At Dema Camp, conditions are abysmal. Plaintiffs detained there have been forced to wear the same clothes they were wearing when they were extracted from their cells in ICE custody over five days ago, they are forced to spend every minute in the sweltering heat, the camp has no air conditioning, and there is little running water. Plaintiffs have described the camp as being "in the middle of nowhere."

Upon information and belief, of the Plaintiffs who are still detained in Ghana, their custodians intend to remove them to their respective countries of origin on Friday, September 12, 2025. By deporting Plaintiffs to Ghana with the express intention that Plaintiffs will be deported to their countries of origin, Defendants violate both U.S. and international law by perpetuating chain refoulement.

---

[1] *See, e.g.*, Camilo Montoya-Galvez, *Trump administration using Guantanamo to detain foreigners from 26 countries, including criminal detainees*, CBS News (July 8, 2025, 8:56), https://www.cbsnews.com/news/trump-guantanamo-detain-foreigners-from-26-countries/; Osmary Hernandez & Michael Rios, *'It was a nightmare': Venezuelans deported from US describe conditions in Salvadoran prison*, CNN (July 23, 2025), https://www.cnn.com/2025/07/23/americas/venezuela-el-salvador-prison-conditions-cecot-deportees-intl-latam.

Plaintiffs have been granted some form of immigration relief. Plaintiffs have received either withholding or deferral of removal under CAT. Plaintiffs were granted relief just this year—some as recently as July 2025. Two Plaintiffs have been granted withholding of removal, while two Plaintiffs were granted CAT deferral. Not only were Plaintiffs removed to Ghana in direct violation of federal law, but to make matters worse, upon information and belief, Defendants are paying the government of Ghana a sum of money to incarcerate them in Dema Camp, an open-air detention site, as a means to facilitate their eventual removal to countries where Plaintiffs have been granted withholding of removal or CAT deferral.

Upon information and belief, the Ghanaian government is detaining Plaintiffs at Defendants' behest. Plaintiffs were transported to Ghana via U.S. military flight. Upon information and belief, U.S. government officers instructed Ghanaian officials to facilitate the transport of Plaintiffs to their countries of origin. *See* K.S. Decl. 9. By removing Plaintiffs to their countries of origin by way of Ghana, Defendants attempt to circumvent U.S. and international law prohibiting refoulement.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(b)(1) authorizes courts to issue a temporary restraining order ("TRO") without written or oral notice to the adverse party when the movant can show "immediate and irreparable injury, loss, or damage… before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

To obtain temporary and preliminary injunctive relief, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Hanson v.*

*District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (citing *Winter*, 555 U.S. at 20). These factors are a "continuum, with more of one factor compensating for less of another." *Sterling Commer. Credit - Mich., LLC v. Phoenix. Indus. I*, LLC, 762 F. Supp. 2d 8, 12 (D.D.C. 2011) (citing *Davis v. Pension Benefit Guar. Corp*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)).

## ARGUMENT

This Court should grant Plaintiffs' emergency temporary restraining order in order to prevent irreparable harm caused by chain refoulement. At the time of filing, to undersigned counsel's knowledge, four of the five Plaintiffs remain detained at the Dema Camp in Ghana. Upon information and belief, within 24 hours—or less—Plaintiffs could be removed to their countries of origin, where U.S. immigration judges determined they were more likely than not to face persecution, torture, or death, in violation of U.S. and international law.

I.  **Plaintiffs are Likely to Succeed on the Merits.**

Plaintiffs move for temporary injunctive relief as to Counts I and II of their Complaint. Plaintiffs are likely to succeed on all of those claims—more than Plaintiffs need to show because where, as here, "the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a 'substantial' case on the merits." *Sterling Commer. Credit - Mich., LLC v. Phoenix. Indus. I*, LLC, 762 F. Supp. 2d 8, 12 (D.D.C. 2011) (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843-45 (D.C. Cir. 1977) and *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).

A.  **Count I**

Defendants' practice of removing persons to Ghana without either meaningful notice or opportunity to be heard is arbitrary and capricious and not in accordance with law, pursuant to the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A), (C).

The practice is arbitrary and capricious because Defendants have "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence" before them. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Specifically, on information and belief, Defendants have dictated Plaintiffs' ultimate destination to the Ghanaian government. *See* Declaration of K.S. ("K.S. Decl.") at ¶7 ("[T]he apparent head ICE official on the plane . . . told me that those on the plane were being sent to Ghana and that Ghana would send us to our home countries."). The Ghanaian government physically detains Plaintiffs at Dema Camp at the behest of the United States government. The Ghanaian government will facilitate Plaintiffs' deportation to their countries of origin at the direction of the United States government. Defendants' acts are arbitrary and capricious, and run afoul of both U.S. and international law.

At a minimum, Defendants knew, or reasonably should have known, that the Ghanaian government would, upon taking custody of Plaintiffs, remove them to their country of origin, regardless of any determination by immigration judges. In fact, the government of Ghana has confirmed publicly that it has agreed to accept people deported from the United States *and to facilitate their return to their country of origin*. *See* Thomas Naadi, *Ghana agrees to accept West Africans deported from US*, BBC News (Sept. 11, 2025), https://www.bbc.com/news/articles/c9v7m0pgv8no. And, upon information and belief, there has been no determination that Ghana has made any "assurances" otherwise; to the extent such assurances were made, they fly in the face of available evidence.

The practice is contrary to law or short of right because it violates ratified treaties, statutory protections, existing regulations, and Defendants' own policies. *See Sissel v. Wormuth*, 77 F.4th 941, 947 (D.C. Cir. 2023) (agency action contrary to law when not "in accordance with the law governing" it).[2]

Here, the Convention Against Torture and its implementing regulations, 8 C.F.R. § 208.18, prohibit Defendants from removing a noncitizen to any country from which they have been granted deferral of removal, unless such grant is formally terminated by lawful means. And federal law imposes a similar requirement. 8 U.S.C. § 1231(b)(3)(A); *see also* Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105-227, Div. G, § 2242(a), 112 Stat. 2681, 2681-822 (1998) (codified as statutory note to 8 U.S.C. § 1231) (directing that the U.S. government may not "expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture."). Yet Defendants have arranged for the removal, by way of Ghana, of Plaintiffs T.L. and I.O. to the countries from which they have been granted deferral of removal, without formally terminating their grant of deferral of removal.

Beyond that, DHS policy allows removal of noncitizens to a third country without any notice or process *only if* DHS has received "diplomatic assurances that [noncitizens] removed from the United States will not be persecuted or tortured." *See* Memorandum, U.S. Dep't of Homeland Sec., Guidance Regarding Third Country Removals (Mar. 30, 2025). Those assurances must be deemed "credible" by the Department of State. *Id.* Otherwise, noncitizens are entitled to state a fear of removal to a particular country and receive a CAT interview. Yet, as described *supra*, Defendants' practice is not in conformity with that policy: Plaintiffs were not

---

[2] The practice also violates the Fifth Amendment's Due Process clause for the reasons set forth *infra*.

7

afforded an opportunity to state a fear of removal to Ghana, nor given a CAT interview. And to the extent any assurance has been given, it cannot be credible, as at least one Plaintiff has been removed from Ghana to their country of origin despite having been granted deferral of removal by an Immigration Judge.

### B. Count II

Plaintiffs are also likely to succeed on Count II, as Defendants have violated Plaintiffs' rights under the Fifth Amendment's Due Process Clause.

Procedural due process requires, at minimum, "notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). *See also Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (holding that "[t]he fundamental requisite of due process of law is the opportunity to be heard," which includes "timely and adequate notice.") (quotations omitted); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (recognizing that an opportunity to be heard must be afforded "at a meaningful time and in a meaningful manner"); *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) [hereinafter *J.G.G. III*]. As all nine Supreme Court justices agreed less than six months ago, this means that "notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek ... relief in the proper venue before such removal occurs." *J.G.G. III*, 145 S. Ct. at 1006; *see also id*. (Kavanaugh, J., concurring) ("[A]ll nine Members of the Court agree that judicial review is available."); *id*. at 1012 (Sotomayor, J., dissenting) ("That means, of course, that the Government cannot usher any detainees ... onto planes in a shroud of secrecy.").

Plaintiffs also have a due process right not to be deported to a country that an Immigration Judge has determined Plaintiffs are likely to be tortured or persecuted in. "The

essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (Frankfurter, J., concurring)); *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 517 (D. Md. 2025) ("the statutory scheme which conferred withholding of removal also entitled [petitioner] to not be returned to El Salvador absent process.").

Congress clearly established the right to deferral or withholding of removal based on a legitimate fear-based claim. *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (explaining that individuals who "face persecution or other mistreatment in the country designated" as their place of removal "have a number of available remedies," by statute, regulation, and under international law, to "ensur[e] their humane treatment"). Non-citizens have a right to meaningful notice and opportunity to present fear-based claims to an immigration judge before being deported to a third country. *See, e.g., Aden v. Nielsen*, 409 F. Supp. 3d 998, 1004 (W.D. Wash. 2019). They also have a due process right to a procedure that allows them to actually seek these protections. *See, e.g., McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991). For these reasons, Plaintiffs are likely to succeed on their due process claim.

C. **Counts IV and V**

Plaintiffs are likely to succeed on the merits of Counts IV and V. As explained *supra*, the Withholding of Removal statute, 8 U.S.C. § 1231(b)(3)(A), prohibits Defendants from removing a noncitizen to any country from which they have been granted withholding of removal, unless such grant is formally terminated by lawful means. Similarly, the Convention Against Torture and its implementing regulations, § 208.18, prohibit Defendants from removing a noncitizen to

9

any country from which they have been granted deferral of removal, unless such grant is formally terminated by lawful means.

Plaintiffs D.A. and D.S. were granted withholding of removal, and Plaintiffs T.L. and I.O. were granted deferral under the Convention Against Torture. None of these grants has been formally terminated by lawful means. Removal of Plaintiffs to their countries of origin thus violates the Withholding of Removal statute and Convention Against Torture and should be enjoined.

## II.     Plaintiffs are Likely to Suffer Irreparable Harm Without Injunctive Relief.

Absent injunctive relief, Plaintiffs risk severe and imminent risk to their lives by being removed to their countries of origin. Courts in this District have recognized that the threat of removal in violation of statutory immigration protections is an irreparable injury. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (expulsion to a place where a noncitizen will be persecuted or tortured constitutes irreparable harm); *see also Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 57 (D.D.C. 2020); *A.B.-B. v. Morgan*, 548 F. Supp. 3d 209, 221-22 (D.D.C. 2020); *PJ.E.S. v. Wolf*, 502 F. Supp. 3d 492, 545-46 (D.D.C. 2020).

If Plaintiffs are deported to their countries of origin, Plaintiffs' harm will be immediate and irreparable. Congress provided that the Department of Homeland Security ("DHS") "may not remove [a noncitizen] to a country if the Attorney General decides that [the noncitizen's] life or freedom would be threatened in that country because of [the noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also* 8 C.F.R. §§ 208.16(b), 1208.16(b). Protection under the Convention Against Torture is mandatory and cannot be denied to eligible individuals in the exercise of discretion. Moreover, Plaintiffs have all already credibly established before an immigration judge

that they are more likely than not to be persecuted or tortured if returned to their country of origin. Accordingly, it is more than a mere possibility that Plaintiffs will immediately face severe and lasting threats to their life if Defendants facilitate chain refoulement to their countries of origin.

It was unlawful in the first instance for the United States to remove Plaintiffs to Ghana without process to ensure that they are not deported to persecution or torture, and it is unlawful for Defendants to knowingly facilitate Plaintiffs' deportation to countries from which they are protected.

"[T]he threatened harm is clear and simple: persecution, torture, and death. It is hard to imagine harm more irreparable." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 391 (D. Mass), *appeal docketed*, No. 25-1393 (1st Cir. 2025); *Vaskanyan v. Janecka*, No. 5:25-CV-01475-MRA-AS, 2025 WL 2014208, at *7 (C.D. Cal. June 25, 2025) (finding that "[p]etitioner's removal to a third country without due process . . . *is* likely to result in irreparable harm" (emphasis in original)). As discussed *supra*, Plaintiffs are in Defendants' constructive custody. If this Court grants injunctive relief, this injury would be redressed by preventing Defendants from facilitating Plaintiffs' removal to countries where they are likely to face irreparable harm, including persecution, torture, or death.

### III. The Balance of Equities Tips in Plaintiffs' Favor and an Injunction is in the Public Interest.

Where the non-moving party for preliminary injunctive relief is the government, the two final factors merge. *See Nken v. Holder*, 556 U.S. 418, 435; *A.B.-B.*, 548 F. Supp. 3d at 222. Here, the balance of equities weighs strongly in Plaintiffs' favor. The requested relief here does no harm to the government. Granting relief is in the public's interest, as it would protect the rights of people afforded critical protection by U.S. immigration judges and support the rule of

law. *See Nken*, 556 U.S. at 436 (describing the "public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm"); *see also Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977) (recognizing that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate.").

## CONCLUSION

For all of the reasons stated herein, Plaintiffs, by counsel, respectfully request that this Court to (1) enjoin Defendants from removing, facilitating, enabling, or encouraging the removal of Plaintiffs from their countries of origin and (2) order Defendants to facilitate Plaintiffs' return to the custody of the United States. In the alternative, Plaintiffs move that the Court order Defendants to notify the Ghanaian government not to remove Plaintiffs to their countries or origin or other countries where they fear persecution or torture nor subject them to unreasonable conditions until a preliminary injunction motion can be briefed and decided by this Court.[3]

Dated: September 11, 2025            Respectfully submitted,

                                     */s/ Noah Baron*


                                     [Signature blocks on following page]

---

[3] Plaintiffs are indigent and lack financial means to pay a TRO bond. Fed. R. Civ. P. 65(c) (generally requiring the movant to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"). Undersigned counsel will make all reasonable efforts to give notice to the Defendants of the Complaint, this motion, and the Proposed Order.

Meredyth Yoon*
Samantha C. Hamilton*
Alexandra M. Smolyar*
ASIAN AMERICANS ADVANCING
JUSTICE - ATLANTA
5680 Oakbrook Parkway, Suite 148
Norcross, GA 30093
Telephone: (470) 816-3319
shamilton@advancingjustice-atlanta.org
myoon@advancingjustice-atlanta.org
asmolyar@advancingjustice-atlanta.org

Noah Baron (D.C. Bar No. 1048319)
ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
1620 L Street, NW, Suite 1050
Washington, D.C. 200036
Telephone: (202) 296-2300
nbaron@advancingjustice-aajc.org

Patrick Taurel (D.C. Bar No.741700)
Gianna Borroto (D.C. Bar No. 90023071)*
GROSSMAN YOUNG & HAMMOND, LLC
4922 Fairmont Avenue
Ste. 200
Bethesda, MD 20814
Telephone: (240) 403-0913
ptaurel@grossmanyoung.com
gborroto@grossmanyoung.com

\* *Motions for admission* pro hac vice *forthcoming*

13