UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A., T.L., I.O., D.S., and K.S.;<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; PAMELA BONDI, Attorney General, in her official capacity; and MARCO RUBIO, Secretary of State, in his official capacity<br>*Defendants*. | Civil Action No. 1:25-cv-03135 |

**PLAINTIFFS' EMERGENCY MOTION FOR INTERIM RELIEF**

Counsel files this Emergency Motion for Interim Relief in light of the **imminent removal of Plaintiffs to their countries of origin on Saturday, September 13, 2025**.[1] Absent immediate intervention by this Court, Plaintiffs face the prospect of torture and persecution; further, their removal threatens to deprive this Court of its jurisdiction. Accordingly, **Plaintiffs respectfully request that the Court enter an interim temporary restraining order to allow for the conclusion of briefing**. The Court has authority to do so pursuant to the All Writs Act, 28 U.S.C. § 1651. *See, e.g., J.A.V. v. Trump*, No. 1:25-CV-072, 2025 WL 1064009, at *1 (S.D. Tex. Apr. 9, 2025) ("A federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established."). "When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the

---

[1] Defendants have declined to provide assurances that Plaintiffs will not be removed from Ghana during the pendency of the Motion for Temporary Restraining Order. *See* ECF No. 17.

court will be in a position to exercise it." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978).

I. **The All Writs Act Confers Broad Power to Preserve the Integrity of Court Proceedings.**

The All Writs Act ("AWA") provides federal courts with a powerful tool to preserve the integrity of their jurisdiction to adjudicate claims before them. *See* 28 U.S.C. § 1651(a) (authorizing federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); *TBG v. Bendis*, 36 F.3d 916, 925 (10th Cir. 1994). The Act encompasses a federal court's power "to preserve [its] jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels," *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966), and courts have found that the Act should be broadly construed to "achieve all rational ends of law," *California v. M&P Investments*, 46 F. App'x 876, 878 (9th Cir. 2002) (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)).

Whereas a traditional preliminary injunction requires a party to state a claim, an injunction based on the AWA requires only that a party identify a threat to the integrity of an ongoing or prospective proceeding, or of a past order or judgment. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (a court may enjoin almost any conduct "'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion'") (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (1978)) . Thus, to issue an injunction pursuant to the AWA—simply preserving the Court's jurisdiction over the pending litigation—this Court need not find that there is a likelihood of success on the merits of the underlying claims. See *Wagner v. Taylor*, 836 F.2d 566, 571–72 (D.C. Cir. 1987) (showing of irreparable injury suffices); *Arctic Zero, Inc. v. Aspen Hills, Inc.*, 2018 WL 2018115,

at *5 (S.D. Cal. May 1, 2018) (distinguishing AWA injunction from traditional preliminary injunction). Rather, it is sufficient for the Court to find that a party has identified a threat to the integrity of or "natural conclusion" of an ongoing proceeding such as the instant action.

Courts have explicitly relied upon the AWA to enjoin proceedings commenced after the court's assertion of jurisdiction in order to prevent even a risk that a respondent's actions will diminish the court's capacity to adjudicate claims before it. *See Kurnaz v. Bush*, No. 04-cv-1135, 2005 WL 839542, *1–2 (D.D.C. Apr. 12, 2005) (enjoining Defense Department from transferring Guantánamo detainee with pending habeas petition, absent notice, outside the jurisdiction of the court); *Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995) (using the AWA to stay an order of deportation "in order to safeguard the court's appellate jurisdiction" and preserve its ability to hear subsequent appeals by the petitioner).

At a minimum, the AWA authorizes the Court to ensure that the to-be-transferred detainees are not put in a worse legal position by virtue of their transfer. *See Al Otro Lado v. McAleenan*, 423 F. Supp. 3d 848, 874–78 (S.D. Cal. 2019) (enjoining application of Trump administration "transit ban" which would categorically bar consideration of class members' asylum claims who would only be subject to that categorical ban because of the alleged unlawful delays created by the government and subject to adjudication before the court); *U.S. v. N.Y. Tel. Co.*, 434 U.S. 159, 173 (1977) (holding that AWA allows a federal court to "'avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it'") (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942)).

Thus, the AWA confers this Court with considerable authority to issue a modest injunction preventing Plaintiffs' transfer to their countries of origin, thereby protecting the

integrity of this Court's jurisdiction and this Court's ability to fully adjudicate Plaintiffs' pending proceedings.

## II. The Court Has Authority to Preserve its Jurisdiction Over this Case Through the AWA.

The Court should exercise its authority under the AWA by entering emergency interim relief until such a time that it can issue an order on Plaintiffs' Motion for a Temporary Restraining Order, Doc. 2, which necessarily entails determining whether it has jurisdiction. Courts have done this in other cases similar to the one at bar. *See, e.g.*, *J.A.V.*, 2025 WL 1064009, at *1; *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (relying on AWA to prevent deportation of group of immigrant detainees until constitutional claims could be heard on merits; noting that "we had the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve our jurisdiction over the matter") (citing 28 U.S.C. § 1651(a)); *see also Ozturk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (affirming district court's equitable authority under the AWA to order the return of an immigration detainee from Louisiana to Vermont); *Perez Parra v. Castro*, 765 F. Supp. 3d 1241, 1243 (D.N.M. 2025) (finding that AWA provided the court with the authority to temporarily enjoin the transfer of petitioners to Guantanamo Bay to maintain the status quo until the conclusion of the matter); *Arostegui-Maldonado v. Baltazar*, ⸺ F. Supp.3d ⸺⸺, No. 25-cv-2205, 2025 WL 2280357, at *16 (D. Colo. Aug. 8, 2025) (relying on AWA to enter an injunction preventing immigration detainee's transfer out of the District of Colorado during the pendency of his habeas action).

There is undoubtedly a "substantial" question of jurisdiction here, at a minimum. "Substantial question" is a low bar, as even a contrary "decision of a court of appeals" does not "foreclos[e]" satisfying the standard. *Belbacha v. Bush*, 520 F.3d 452, 457 (D.C. Cir. 2008).

The mere fact that Plaintiffs are no longer in the United States does not deprive the Court of jurisdiction. *See, e.g.*, *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (*Abrego-Garcia II*) (Sotomayor, J., concurring) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 447, n.16 (2004) and *Boumediene v. Bush*, 553 U.S. 723, 732 (2008)) (explaining it is "plainly wrong" that "United States courts cannot grant relief once a deportee crosses the border[.]"). Indeed, "Defendants can and do return wrongfully removed migrants as a matter of course." *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 512 (D. Md. 2025) (discussing *Lopez-Sorto v. Garland*, 103 F.4th 242, 248-53 (4th Cir. 2024) and *Nken v. Holder*, 556 U.S. 418, 436 (2009)). To be sure, *Abrego Garcia* concerned the wrongful removal of an individual due to an administrative error, while the instant case concerns the wrongful removal of Plaintiffs intentionally—but that makes it no less wrongful.

Similarly, in *Melgar-Salmeron v. Bondi*, the court ordered the government to "facilitate the return of Petitioner to the United States as soon as possible to 'ensure that his case is handled as it would have been had he not been improperly sent to El Salvador[.]'" No. 23-7792, Doc. 49 (2d. Cir. June 25, 2025) (quoting *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025)). The *Melgar-Salmeron* court also directed the Government to file "a supplemental declaration from an individual with personal knowledge, addressing the following: (1) the current physical location and custodial status of Petitioner; and (2) what steps the Government will take, and when, to facilitate his return to the United States." *Id*.

Jurisdiction here is far from hypothetical: Plaintiffs have adduced affirmative evidence in support of jurisdiction; that evidence suggests that the United States exerts at least some control over Plaintiffs' ultimate destination. Doc. 1-1, Declaration of K.S. ("K.S. Decl.") at 7 ("While at the fuel stop in the U.S. Virgin Islands, the apparent head ICE official on the plane … told me

5

that those on the plane were being sent to Ghana and that Ghana would send us to our home countries."),   9 ("I told [Ghanaian officials] that I wanted to stay in Ghana for my safety. The official Ibrahim just told me that my final destination was The Gambia, based on orders from ICE officials and his Ghanaian superiors."). And the President of Ghana has himself indicated that Ghana's agreement with the United States contemplates the repatriation of all persons removed to Ghana from the United States. *Ghana agrees to accept West Africans deported from US, president says*, Reuters (Sept. 11, 2025) https://www.reuters.com/world/africa/ghana-agrees-accept-west-africans-deported-us-president-says-2025-09-10/; Thomas Naadi, *Ghana agrees to accept West Africans deported from US*, BBC News (Sept. 10, 2025), https://www.bbc.com/news/articles/c9v7m0pgv8no.

    The fact that this case may involve scrutinizing an agreement between the U.S. and a foreign nation does not deprive this Court from jurisdiction—and it certainly does not make the prospect of jurisdiction "insubstantial" within the meaning of the AWA. Courts routinely exercise jurisdiction to protect individual rights, including in immigration cases, without impinging on the Executive's ability to conduct foreign affairs. "[A]n area concerning foreign affairs that has been uniformly found appropriate for judicial review is the protection of individual or constitutional rights from government action." *Flynn v. Shultz*, 748 F.2d 1186, 1191 (7th Cir. 1984) (collecting authorities).

    As the Court recognized earlier this afternoon by granting discovery into the agreement between the U.S. and Ghana from the bench, the existence of this Court's jurisdiction might be further assured by the Government's production of that agreement. Yet if Plaintiffs are removed from Ghana, jurisdiction would be destroyed. The Court must act quickly to preserve its own jurisdiction.

Dated: September 12, 2025

Respectfully submitted,

*/s/ Samantha C. Hamilton*

Samantha C. Hamilton
Meredyth Yoon
Alexandra M. Smolyar
ASIAN AMERICANS ADVANCING JUSTICE - ATLANTA
5680 Oakbrook Parkway, Suite 148
Norcross, GA 30093
Telephone: (470) 816-3319
shamilton@advancingjustice-atlanta.org
myoon@advancingjustice-atlanta.org
asmolyar@advancingjustice-atlanta.org

Noah Baron (D.C. Bar No. 1048319)
ASIAN AMERICANS ADVANCING JUSTICE-AAJC
1620 L Street, NW, Suite 1050
Washington, D.C. 200036
Telephone: (202) 296-2300
nbaron@advancingjustice-aajc.org

Patrick Taurel (D.C. Bar No.741700)
Gianna Borroto (D.C. Bar No. 90023071)*
GROSSMAN YOUNG & HAMMOND, LLC
4922 Fairmont Avenue
Ste. 200
Bethesda, MD 20814
Telephone: (240) 403-0913
ptaurel@grossmanyoung.com
gborroto@grossmanyoung.com