UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A., T.L., I.O., D.S., and K.S.,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; PAMELA BONDI, Attorney General, in her official capacity; and MARCO RUBIO, Secretary of State, in his official capacity,<br><br>*Defendants*. | Civil Action No. 1:25-cv-03135 |

**RENEWED MOTION FOR PROVISION OF COURT-ORDERED DECLARATION AND FOR EXTENSION OF TIME FOR SUPPLEMENTAL BRIEFING**

Plaintiffs respectfully renew their request for an extension of time for supplemental briefing until Plaintiffs have had an opportunity to review Defendants' declaration filed *in camera* and *ex parte* last night. At the time of filing, Plaintiffs have yet to receive that declaration. Defendants' submission of that declaration to the Court *in camera* and *ex parte* without notice is contrary to the well-established requirement that all parties have access to proffered evidence in litigation. It is essential that Plaintiffs' counsel have immediate access to the declaration in order to respond and advocate for Plaintiffs on this urgent timeline, where Plaintiffs face deportation as early as tomorrow. Parties regularly receive such information in similar litigation against the government, including on matters touching on foreign policy, and may do so pursuant to a protective order. *E.g.*, *J.G.G. v. Trump*, No. 1:25-cv-00766, ECF No. 116 (Chief Judge Boasberg ordering discovery, provided under seal, notwithstanding the fact that

1

it might "implicate matters of the most delicate diplomacy"); *Abrego Garcia v. Noem*, No. 8:25-cv-00951 (D. Md.); *J.O.P. v. United States Dep't of Homeland Sec.*, No. 8:19-cv-01944 (D. Md.); *M.A. v. Noem*, No. 1:23-cv-01843-TSC (D.D.C.).

"It is a hallmark of our adversary system that we safeguard party access to the evidence tendered in support of a requested court judgment." *Abourezk v. Reagan*, 785 F.2d 1043, 1060 (D.C. Cir. 1986); *see also U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) ("*ex parte* communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them"). Accordingly, the D.C. Circuit has long been clear that "[i]t is therefore the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions." *Id.* at 1061. The rare exceptions to this rule are "tightly contained," and "court reliance upon *ex parte* evidence to decide the merits of a dispute" is permissible "only in the most extraordinary circumstances." *Id.*

Basic fairness requires that Plaintiffs have access to the evidence provided by the government to press their claims that Defendants are violating prohibitions on the return of Plaintiffs to countries where U.S. immigration judges have determined that they face persecution and torture. The Court required Defendants to submit a declaration by 9:00 PM ET last night "setting forth the government's efforts, in light of Ghana's transfer of at least one Plaintiff to his home country, to keep Plaintiffs from being removed to their countries of origin or other countries where they fear persecution or torture." Sept. 13 Minute Order. The Court extended the supplemental briefing schedule "[i]n light of" that deadline. But without seeing Defendants' submission, Plaintiffs cannot evaluate their efforts and respond.

The nature and scope of any efforts by the U.S. government so far are plainly relevant to the temporary restraining order that Plaintiffs seek, including the precise nature of the relief that Plaintiffs will require in such an order. Again, Plaintiffs are at grave, imminent risk of being removed to danger in their countries of origin. Indeed, as the Court is aware, one Plaintiff has already been taken to The Gambia notwithstanding his protection from return under the Convention Against Torture, after being informed by an ICE official that he was "being sent to Ghana and that Ghana would send us to our home countries." ECF No. 1-1 (K.S. Decl.) ¶¶ 3, 7, 9-13. He is "now living in hiding with the help of [his] sister" and "seeking a way out of the country as soon as possible for the sake of [his] life." *Id.* ¶ 13. Another Plaintiff fled Nigeria after being beaten, then tortured and "kept . . . locked in a dog cage for three days" until he was released with the threat that his tormentors, members of Nigeria's ruling party, would "kill [him] if they ever saw [him] again." ECF No. 21-1 (D.A. Decl.) ¶¶ 5-6. Ghanaian authorities informed that Plaintiff that they have already provided his name and identity to Nigerian officials, along with the names and identities of the other Plaintiffs to officials in their countries of origin. *Id.* ¶¶ 19, 21.

The D.C. Circuit has recognized three exceptions to the general rule barring *ex parte* submissions, none of which are applicable here. *Id.* at 1061; *see also United States v. Libby*, 429 F. Supp. 2d 18, 21 (D.D.C. 2006) (describing *Abourezk* exceptions); *Berntsen v. CIA*, 511 F. Supp. 2d 108, 110 (D.D.C. 2007) (same); *Chekkouri v. Obama*, 158 F. Supp. 3d 4, 6 (D.D.C. 2016) (same). First, *ex parte* submissions are permissible where a party "seeking to *block* consideration of relevant matter asserts an evidentiary privilege" and the court inspects the evidence "for the limited purpose of determining whether the asserted privilege is genuinely applicable." *Abourezk*, 785 F.2d at 1061. But in such a case, "no party will be faced . . . with a

decision against him based on evidence he was never permitted to see and rebut." *Id.* Second, *ex parte* submissions provided for under statute may be permissible, although the D.C. Circuit has "been vigilant to confine to a narrow path" such submissions. *Id.* Neither of these exceptions applies here: Defendants' declaration is directly relevant to Plaintiffs' emergency motion and ultimately their claims on the merits and has been requested for the Court's consideration in light of that relevance.

Finally, *ex parte* submissions *may* be permitted "in the most extraordinary circumstances," when a party has "proper[ly] invo[ked]" privilege, provided "a demonstration of compelling national security concerns" and provided "public disclosure . . . prior to any *in camera* examination, of as much of the material as it could divulge without compromising the privilege." *Id.* (invoking state secrets privilege); *accord Libby*, 429 F. Supp. 2d at 21; *Chekkouri*, 158 F. Supp. 3d at 6. No such invocation of privilege, demonstration of compelling national security concerns, or prior disclosure of as much material as possible occurred here. There was not even any notice at all, so that this important matter could be promptly litigated without prejudicing Plaintiffs threatened with deportation to danger *tomorrow*.

Defendants' counsel broadly cited to Plaintiffs' counsel "the sensitive nature of the diplomatic relations contained" in the declaration to justify their course of action, but this does not meet the stringent requirements for *ex parte* submissions. First, Defendants did not invoke state secrets privilege, or indeed any privilege. In fact, they did not take a position *against* Plaintiffs' access to the declaration: Defendants' counsel stated only that they lacked "authorization" at the time and needed to "ask the agency if we can share the declaration with you." ECF No. 26-1 (Ex. A to Plaintiffs' Motion for Provision of Court-Ordered Declaration).

4

Failure to take a position on Plaintiffs' access to evidence surely cannot form a basis for the denial of a fair hearing for individuals in grave danger of persecution and torture.

Second, courts have regularly found that litigants require access to evidence, even sensitive evidence, that touches on foreign relations and that protective orders are sufficient to safeguard such information. For example, a court within this district found that there was no demonstration of a "compelling national security concern" where a protective order "prohibit[ed] petitioner's counsel from releasing the filing, or any information contained therein," including "to the public" and to "the Moroccan government or courts." *Chekkouri*, 158 F. Supp. 3d at 6. Notwithstanding the government's assertion of "significant Government interests," the "strong presumption against *ex parte* submissions" was not overcome. *Id.* The D.C. Circuit has stressed, even in the face of national security assertions by the government, "the overriding importance of assuring plaintiffs' receipt of the most complete information and explanation permissible." *Abourezk*, 785 F.2d at 1061.

Where Defendants have made *ex parte*, *in camera* submissions, district courts within this district have declined to rely on them absent provision of the information to all parties. *E.g.*, *Berntsen*, 511 F. Supp. 2d at 109-110 (rejecting *ex parte* classified submission in case involving security classification redactions for a book by an ex-CIA employee); *Chekkouri*, 158 F. Supp. 3d at 6. As Plaintiffs described in their motion last night, the government regularly provides materials that touch on foreign policy issues in litigation subject to protective orders. *See* ECF No. 26 at 2.

Plaintiffs accordingly respectfully renew their request for an order, in light of the exigent circumstances, that Defendants <u>immediately</u> provide the declaration provided to the Court *in*

*camera* and *ex parte* and for a reasonable extension of time as to their supplemental briefing after they receive that declaration, so that they have an opportunity to review it and respond.

Date: Sept. 14, 2025                                   Respectfully submitted,

| | |
|---|---|
| Meredyth Yoon* | /s/ *Noah Baron* |
| Samantha C. Hamilton* | Noah Baron (D.D.C. Bar No. 1048319) |
| Alexandra M. Smolyar* | ASIAN AMERICANS ADVANCING JUSTICE- |
| ASIAN AMERICANS ADVANCING | AAJC |
| JUSTICE - ATLANTA | 1620 L Street, NW, Suite 1050 |
| 5680 Oakbrook Parkway, Suite 148 | Washington, D.C. 200036 |
| Norcross, GA 30093 | Telephone: (202) 296-2300 |
| Telephone: (470) 816-3319 | nbaron@advancingjustice-aajc.org |
| shamilton@advancingjustice-atlanta.org | |
| myoon@advancingjustice-atlanta.org | |
| asmolyar@advancingjustice-atlanta.org | |
| | |
| Patrick Taurel (D.C. Bar No.741700) | Lee Gelernt (D.D.C. Bar No. NY0408) |
| Gianna Borroto (D.C. Bar No. 90023071)** | Judy Rabinovitz** |
| Grossman Young & Hammond, LLC | Omar C. Jadwat** |
| 4922 Fairmont Avenue | AMERICAN CIVIL LIBERTIES |
| Ste. 200 | UNION FOUNDATION |
| Bethesda, MD 20814 | 125 Broad Street, 18th Floor |
| Telephone: (240) 403-0913 | New York, NY 10004 |
| ptaurel@grossmanyoung.com | (212) 549-2660 |
| gborroto@grossmanyoung.com | lgelernt@aclu.org |
| | jrabinovitz@aclu.org |
| | ojadwat@aclu.org |

My Khanh Ngo (D.D.C. Bar No. CA00219)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org

* *Admitted* pro hac vice
** *Pro bono representation certificates forthcoming*