UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A., T.L., I.O., D.S., and K.S.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; PAMELA BONDI, Attorney General, in her official capacity; and MARCO RUBIO, Secretary of State, in his official capacity,<br><br>    *Defendants*. | Civil Action No. 1:25-cv-03135 |

**SUPPLEMENTAL BRIEF IN SUPPORT OF**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

    The Pratt Declaration is the first time in this litigation that Defendants have submitted any information or response to Plaintiffs' emergency motion in a sworn statement. █████

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████

1

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████

This Court's Saturday night emergency order asked that Defendants set forth, in a sworn declaration, the steps they have taken to prevent the transfer of Plaintiffs. Minute Order, Sept. 13, 2025, 6:04PM EST. ████████████████████████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████

As set forth below, the Supreme Court, Chief Judge Boasberg, and the Fourth Circuit have all, in conceptually identical situations, required the government to make an effort to prevent harm.to individuals detained in foreign countries  As in those cases, Plaintiffs recognize that this Court cannot dictate the precise steps Defendants must take, nor can it dictate the outcome of those efforts. ████████████████████████████████

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████

I. **This Court Has Authority to Grant the Relief Requested**

In several recent cases, plaintiffs have obtained relief similar in form to that Plaintiffs here seek: that the Government facilitate a remedy. In those cases, courts ordered the Government to take affirmative steps to "facilitate" the plaintiffs' return. Yet Plaintiffs at this juncture ask less

than did those in these precedents, as for now they seek not facilitation of return to the United States but facilitation of preservation of the *status quo*.

In *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (per curiam), the plaintiff, a Salvadoran national, was sent to the CECOT prison in El Salvador despite an Immigration Order prohibiting his removal to El Salvador. The district court ordered the government to "facilitate and effectuate the return of [the plaintiff]."[1] *Abrego Garcia v. Noem*, No. 8:25-CV-00951-PX, 2025 WL 1024654, at *1 (D. Md. Apr. 4, 2025). Critically, although the Supreme Court ultimately stated that the "scope of the term 'effectuate' in the District Court's order is . . . unclear, and may exceed the District Court's authority," it squarely held that the district court "properly require[d] the Government to 'facilitate' release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Abrego Garcia*, 145 S. Ct. at 1018. The Court also required that the government "be prepared to share what it can concerning the steps it has taken and the prospect of further steps." *Id.* (emphasis added). Thus, while the Supreme Court was unwilling to dictate the precise steps the government had to undertake or require the government to "effectuate" the return of Abrego Garcia, it left little doubt that the government could not simply wash its hands of the matter simply because another country was involved or it implicated foreign relations.

Indeed, as the Fourth Circuit subsequently explained on remand, "[t]he Supreme Court's decision does not . . . allow the government to do essentially nothing. . . . 'Facilitate' is an active

---

[1] The government has never officially conceded that the removal was an administrative mistake. *See Abrego Garcia*, 2025 WL 1135112, at *2 ("The government asserts that Abrego Garcia is a terrorist and a member of MS-13. Perhaps, but perhaps not."). Regardless, whether or not it was a mistake or an unlawful order, that went to the merits of the case, not the jurisdiction or authority of the court to order the government to take steps to return the plaintiff.

verb. It requires that steps be taken as the Supreme Court has made perfectly clear." *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025).

Based on the Supreme Court's and Fourth Circuit's guidance in *Abrego Garcia*, the district court in a separate case also ordered the government to "facilitate" the return of an individual who had been deported to CECOT. *See J.O.P. v. U.S. Dep't of Homeland Sec.*, 779 F. Supp. 3d 570, 582 (D. Md. 2025). Specifically, the district court's order for facilitation of return "include[d], but [was] not limited to, Defendants making a good faith request to the government of El Salvador to release [the individual] to U.S. custody for transport back to the United States . . . ." Id. (emphasis added). The Fourth Circuit notably denied the government's request to stay the J.O.P. facilitation order, despite the government's invocation of foreign policy and national security concerns, and the Alien Enemies Act to justify the removal. *See J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 25-1519, 2025 WL 1431263, at *2–3 (4th Cir. May 19, 2025) (Benjamin, J., concurring, joined by Gregory, J.). The Fourth Circuit underscored the lesson from *Abrego Garcia* that while a court could not "demand," it could order the government to "facilitate" the turn of an improperly deported individual, and repeated that "'facilitate' is 'an active verb' and 'requires that steps be taken' to achieve the relief." *Id.* at *5 (quoting *Abrego Garcia*, 2025 WL 1135112, at *1). Moreover, the court emphasized that the government's request to the foreign government must be "'a good faith' one," which was "the minimum that the Government must do." *Id.* at *6.

Finally, Chief Judge Boasberg of this District recently likewise ordered "facilitation" in the Alien Enemies Act case involving individuals at the CECOT prison. *J.G.G. v. Trump*, No. 1:25-cv-766, 2025 WL 1577811 (D.D.C. June 4, 2025), *vacated and remanded on other grounds*, No. 25-5217, 2025 WL 2317650 (D.C. Cir. Aug. 8, 2025). *J.G.G.* held that noncitizens detained at the CECOT prison in El Salvador "must be allowed the practical opportunity to seek habeas relief that

4

they were previously denied, such that their cases are 'handled as [they] would have been had [they] not been improperly sent to El Salvador.'" 2025 WL 1577811 at *7 (quoting *Abrego Garcia*, 145 S. Ct. at 1018). The Court explained that it would "begin by allowing the Government to propose how it will ensure that the [class members] receive[] the process" and required that "[t]hat process must nonetheless be forthcoming." *Id.* Modeling its relief on the Supreme Court's requirements in *Abrego Garcia*, *J.G.G.* likewise required that "Defendants must facilitate" Plaintiffs' ability to access remedies otherwise available to them "and ensure that their cases are handled as they would have been" had the Government not acted unlawfully. *Id.* at *31.

The relief that Plaintiffs request here *is even more modest.* Plaintiffs seek an order requiring the government to take steps to facilitate the necessary relief: that Defendants tell the Court that it will take immediate steps to prevent Plaintiffs' transfer to their home counties. But Plaintiffs ask even less of Defendants at this juncture than in those cases, because for purposes of this interim relief Plaintiffs are not seeking full return to the United States, but simply that the status quo be frozen, so they at least not be removed to their countries of origin.[2]

## II. The Assertion of the Executive's Power Over Foreign Affairs Does Not Preclude the Court From Ordering Relief Here.

---

[2] Non-citizens who prevail in litigation challenging their removal "can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Return is routinely ordered as the appropriate remedy when a removal is found to be unlawful. *See, e.g.*, *Walters v. Reno*, 145 F.3d 1032, 1050–51 (9th Cir. 1998) (requiring parole into country or other arrangement for hearing attendance for class of non-citizens); *Singh v. Waters*, 87 F.3d 346, 350 (9th Cir. 1996) (ordering government to permit return for immigration hearing following unlawful removal); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 144–45 (D.D.C. 2018) (ordering return of non-citizen plaintiffs entitled to further process prior to removal), *aff'd in relevant part, rev'd in part and remanded sub nom. Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 403 F. Supp. 3d 853, 860–61, 863–68 (S.D. Cal. 2019) (ordering government to allow return of parents wrongfully prevented from petitioning for asylum); *Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 408 (S.D.N.Y. 2004) (ordering non-citizen "be returned to the United States" after unlawful removal); *Dennis v. INS*, No. 01-cv-279, WL 295100, at *4 (D. Conn. Feb. 19, 2002) (same); *see also Lopez-Sorto v. Garland*, 103 F.4th 242, 249–50 (4th Cir. 2024) (ICE can bring a prevailing party back to the United States if that party prevails on their appeal).

The Court should reject Defendants' assertion that their wrongdoing is beyond judicial remedy. If accepted, their position would permit the Government to "deport and incarcerate any person, including U.S. citizens, without legal consequence, so long as it does so before a court can intervene." *Abrego Garcia*, 145 S. Ct. at 1019 (Sotomayor, J., concurring); *Abrego Garcia*, 2025 WL 1135112 at *2 (Wilkinson, J., joined by King, J. and Thacker, J.) ("If today the Executive claims the right to deport without due process and in disregard of court orders, what assurance will there be tomorrow that it will not deport American citizens and then disclaim responsibility to bring them home? And what assurance shall there be that the Executive will not train its broad discretionary powers on its political enemies.").

As evident from *Abrego Garcia*, *J.O.P.*, and the other cases referenced above, this Court has authority to order relief. The type of relief Plaintiffs seek here, as in *Abrego Garcia*, "leaves the Executive Branch with options in the execution[,]" and accordingly affords "due regard for the deference owed to the Executive Branch in the conduct of foreign affairs." *Abrego Garcia*, 2025 WL 1135112 at *1; *J.O.P.*, 2025 WL 1431263, at *8 (Benjamin, J., concurring) (rejecting separation of powers argument because "our obligation to 'say what the law is' forces us to intervene. The task is delicate, but cannot be shirked[.]") (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).

While Defendants argued in the Joint Status Report, ECF No. 17, against redressability, Defendants' own authorities suggest that courts lack jurisdiction only where redressability is "*totally* dependent upon the actions of a nonparty sovereign authority." *Al Joudi v. Bush*, 2008 WL 821884, at *1 (D.D.C. Mar. 26, 2008) (emphasis added). Again, courts have repeatedly found that facilitation is an available remedy, ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

Finally, contrary to Defendants' suggestion, Plaintiffs are not seeking jurisdiction so that this Court may inquire into a recipient country's legal procedures. ECF No. 17 at 4. Nor are Plaintiffs challenging freestanding detention or prosecution in Ghana on the basis of Ghanaian law, as petitioners were in *Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009). Rather, Plaintiffs are challenging their chain refoulement to persecution, torture, or death, in clear violation of the United States' obligations under the Convention Against Torture and immigration laws.

### III. Conclusion

This Court should grant Plaintiffs emergency interim relief by ordering the Government to take reasonable steps to prevent their transfer to their countries of origin.

Dated: September 14, 2025              Respectfully submitted,

                                       */s/ Noah Baron*

---

[3] Moreover, even if Plaintiffs needed to demonstrate constructive custody at this stage (which they do not), there is no record evidence commensurate with cases like *In re Petitioners Seeking Habeas Corpus Relief*, 700 F. Supp. 2d 119 (D.D.C. 2010). ████████████████████████████████████████ Plaintiffs have provided evidence—including their own sworn declarations—indicating that Defendants do retain constructive custody. Notably, there was no finding of constructive custody in *Abrego Garcia*, *J.O.P.* or *J.G.G.*

| | |
|---|---|
| Meredyth Yoon* <br> Samantha C. Hamilton* <br> Alexandra M. Smolyar* <br> ASIAN AMERICANS ADVANCING JUSTICE - ATLANTA <br> 5680 Oakbrook Parkway, Suite 148 <br> Norcross, GA 30093 <br> Telephone: (470) 816-3319 <br> shamilton@advancingjustice-atlanta.org <br> myoon@advancingjustice-atlanta.org <br> asmolyar@advancingjustice-atlanta.org | Noah Baron (D.D.C. Bar No. 1048319) <br> ASIAN AMERICANS ADVANCING JUSTICE-AAJC <br> 1620 L Street, NW, Suite 1050 <br> Washington, D.C. 200036 <br> Telephone: (202) 296-2300 <br> nbaron@advancingjustice-aajc.org |
| Patrick Taurel (D.C. Bar No.741700) <br> Gianna Borroto (D.C. Bar No. 90023071)* <br> GROSSMAN YOUNG & HAMMOND, LLC <br> 4922 Fairmont Avenue <br> Ste. 200 <br> Bethesda, MD 20814 <br> Telephone: (240) 403-0913 <br> ptaurel@grossmanyoung.com <br> gborroto@grossmanyoung.com | Lee Gelernt (D.D.C. Bar No. NY0408) <br> Judy Rabinovitz** <br> Omar C. Jadwat** <br> AMERICAN CIVIL LIBERTIES UNION FOUNDATION <br> 125 Broad Street, 18th Floor <br> New York, NY 10004 <br> (212) 549-2660 <br> lgelernt@aclu.org <br> jrabinovitz@aclu.org <br> ojadwat@aclu.org |
| My Khanh Ngo (D.D.C. Bar No. CA00219) <br> AMERICAN CIVIL LIBERTIES UNION FOUNDATION <br> 425 California Street, Suite 700 <br> San Francisco, CA 94104 <br> (415) 343-0770 <br> mngo@aclu.org | |

\* *Admitted* pro hac vice