UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A., T.L., I.O., D.S., and K.S.;<br><br>*Plaintiffs,*<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, *et al.,*<br><br>*Defendants.* | Civil Action No. 1:25-cv-03135<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND EMERGENCY MOTION FOR INTERIM RELIEF** |

**INTRODUCTION**

"[W]hen [the Supreme] Court issues a decision, it constitutes a precedent that commands respect." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. —, 2025 WL 2415669, at *4 (U.S. Aug. 21, 2025) (Gorsuch, J., concurring in part and dissenting in part). This includes stay decisions, which "squarely control[]" in "like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

Plaintiffs' Motion for a Temporary Restraining Order (ECF No. 2) and Emergency Motion for Interim Relief (ECF No. 18) are a misguided attempt to circumvent an order from the Supreme Court in *D.V.D.*—which is plainly a "like case[]"—and impermissibly interfere with the Executive Branch's plenary authority to conduct the nation's relations with foreign governments. Defendants maintain that Plaintiffs were removed in accordance with the third-country removal procedures that the Supreme Court in *D.V.D.* permitted to take effect pending litigation over their sufficiency

1

and legality. Pursuant to those procedures, Defendants secured the appropriate diplomatic assurances regarding Ghana's treatment of those aliens. Those assurances are not reviewable and even if they were, Plaintiffs' claims here are effectively challenging *Ghana's* compliance with those assurances. Plaintiffs have not substantiated their claims that Ghana will wholly fail to abide by their obligations, but, regardless, such claims provide no basis for judicial relief. Defendants complied with the applicable procedures; binding precedent precludes the court from second-guessing the government's determination that a foreign state's assurances are sufficient and reliable; the removals were thus entirely lawful; and the court obviously cannot grant any relief against Ghana. The TRO should be denied and the case should either be transferred to the *D.V.D.* court or dismissed.

## PROCEDURAL HISTORY

Plaintiffs are five aliens with final orders of removal who were removed to Ghana on or around September 5, 2025. They are not citizens or nationals of Ghana and Ghana was not specifically designated as a country of removal during their removal proceedings. They are therefore all class members in the certified nationwide Rule 23(b)(2)[1] class in *D.V.D. v. DHS*, 1:25-cv-10676 (D. Mass.).[2] On April 18, 2025, the district court in the District of Massachusetts

---

[1] "Multiple courts of appeal have approved the practice of staying a case, or dismissing it without prejudice, on the ground that the plaintiff is a member of a parallel class action." *Wynn v. Vilsack*, No. 3:21-CV-514-MMH-LLL, 2021 WL 7501821, at *3 (M.D. Fla. Dec. 7, 2021) (collecting cases) (internal quotations omitted). As the Eighth Circuit stated, "[a]fter rendition of a final judgment, a class member is ordinarily bound by the result of a class action. If a class member cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982).
[2] The *D.V.D.* class is defined as: "All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceeding as a country to which the individual would be removed." *D.V.D. v. United States Dep't of Homeland Sec.,* 778 F. Supp. 3d 355, 378 (D. Mass. 2025).

entered a classwide preliminary injunction requiring, *inter alia,* written notice of the country to which ICE seeks to remove the alien and an opportunity to raise a fear-based claim. It did so after finding that the Department of Homeland Security's (DHS) March 30, 2025 Guidance Regarding Third Country Removals (March Guidance) was constitutionally insufficient. Specifically, the district court found that the blanket diplomatic assurances the March Guidance relies upon do not satisfy due process because they are not individualized and "offer no protection against either torture by non-state actors or chain refoulment, whereby the third country proceeds to return an individual to his country of origin." *D.V.D.,* 778 F. Supp. 3d at 390 (citing Plaintiffs' complaint discussing chain refoulment). The Court also held that the March Guidance was insufficient because it did not provide sufficient notice and opportunity for class members to be heard regarding any fear of return to the third country. *Id.*

The Government appealed and sought a stay of the preliminary injunction before the First Circuit Court of Appeals. After the First Circuit denied the Government's request for a stay, the Government applied for a stay of the preliminary injunction in the Supreme Court. *DHS v. D.V.D.*, Application for a Stay, 24A1153 (May 2, 2025) (attached hereto as Exhibit 1).[3] In its motion, the Government argued, *inter alia,* the following:

1. The district court lacked jurisdiction to consider Plaintiffs' claims under 8 U.S.C. § 1252(a)(4), (a)(5), (b)(9), (g) and Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA).

2. The district court's classwide injunction enjoining the third country removal statute (8 U.S.C. § 1231) violated 8 U.S.C. § 1252(f)(1).

---

[3] The Government's Stay Application conveniently includes the relevant orders from Judge Murphy in *D.V.D.* as well as the March Guidance in the appendix. It also includes the Government's legal arguments presently before the First Circuit.

    3. The March Guidance satisfies the Constitution despite Plaintiffs' argument that it does not provide sufficient procedures to comport with the Due Process Clause and argument that the March Guidance does not adequately protect Plaintiffs from chain refoulment.

    4. The preliminary injunction is causing irreparable harm to the Government's foreign relations with countries with whom it is seeking to negotiate third country removals.

*Id.*

On June 23, 2025, the Supreme Court granted the requested stay its entirety as to both named Plaintiffs and classwide relief. *DHS v. D.V.D.,* 145 S. Ct. 2153 (2025). That same day, despite the Supreme Court's stay, the district court nonetheless purported to enforce its since-stayed injunction as to eight class members in DHS custody in Djibouti. *D.V.D.,* ECF No. 176 (June 23, 2023). It ordered the Government to carry out the procedures the Supreme Court found the district court was precluded from requiring. *Id.* The Government immediately moved to clarify the Supreme Court's stay. *DHS v. D.V.D.*, Motion for Clarification, 24A1153 (June 24, 2025).

On July 3, 2025, the Supreme Court granted the Government's motion. *Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2627 (2025). The Supreme Court held that their "June 23 order stayed the April 18 preliminary injunction in full" and therefore the district court could not "enforce an injunction that [their] stay rendered unenforceable." *Id.* at 2; *see also N.I.H. v. American Public Health Assn.,* Order on Application for Stay, 25A103 (August 21, 2025) (Gorsuch, J., concurring) (criticizing the district court's efforts to enforce the already-stayed preliminary injunction, and stating that the Supreme Court's clarification order "should have been unnecessary" in light of "the hierarchy of the federal court system created by the Constitution and Congress.").

4

On July 4, 2025, the eight aliens in custody in Djibouti filed a complaint and motion for temporary restraining order in the district court for the District of Columbia. They argued that their removal was unlawful under the Fifth, Sixth and Eighth Amendments. The complaint alleged that DHS had not followed the March Guidance and that plaintiffs were at risk of being subject to chain refoulment. *Phan v. DHS*, 25-2147, ECF No. 1 at ¶¶ 97-100 (D.D.C. 2025.). Judge Moss, recognizing that plaintiffs were attempting to engage in improper claim splitting, transferred the case to Judge Murphy in the District of Massachusetts. *Phan,* Minute Order (July 4, 2025). Judge Murphy denied the Temporary Restraining Order and the eight aliens were removed to South Sudan.

Despite the Supreme Court's order staying the *D.V.D.* injunction requiring additional procedures prior to third country removal, numerous *D.V.D.* class members have filed individual habeas petitions seeking the *same relief* stayed by the Supreme Court. Numerous courts have appropriately dismissed those petitions due to the Supreme Court's stay of the preliminary injunction. *See, e.g.*, *Ghamelian v. Baker*, No. 25-cv-02106-SAG, 2025 WL 2049981, at *3 (D. Md. July 22, 2025), *reconsideration denied*, 2025 WL 2074155 (D. Md. July 23, 2025) (denying relief because of petitioner's status as a D.V.D. class member); *I.V.I. v. Baker*, No. 25-cv-1572-JKB, 2025 WL 1519449, at *2 (D. Md. May 27, 2025) ("Even stripped of any reference to the District of Massachusetts' order, these claims are the same as (or substantially related to) the class claims being litigated in that district." (citation omitted)); *Tanha v. Warden, Baltimore Det. Facility*, No. 1:25-cv-02121-JRR, 2025 WL 2062181, at *5 (D. Md. July 22, 2025) ("The court finds that Petitioner is a member of the D.V.D. Class."); *Sanchez v. Bondi*, No. 1:25-cv-02287-CNS, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) ("[B]ecause Mr. Sanchez is a member of D.V.D.'s Rule 23(b)(2) class, he has failed to show a likelihood of success on the merits of his

5

claim."). Other courts have disregarded a binding Supreme Court order and Rule 23(b)(2) to issue individual injunctions requiring additional procedures prior to third country removal. *See, e.g.*, *Nguyen v. Scott*, 2025 WL 2419288, at *20–21 (W.D. Wash. Aug. 21, 2025) (holding that petitioner's ability to seek relief related to third-country removal was not impacted).

Plaintiffs—all *D.V.D.* class members—now file a motion for temporary restraining order seeking that this Court issue relief emanating from what Plaintiffs allege was an unlawful third country removal. As in *D.V.D.,* Plaintiffs argue that "Defendants' practice of removing Plaintiffs to Ghana [a third country] without either meaningful notice or opportunity to be heard is arbitrary and capricious and not otherwise in accordance with law." ECF No. 2-1 at 6; *D.V.D.,* 778 F. Supp. 3d at 369 ("Plaintiffs challenge Defendants' policy or practice of failing to provide notice and an opportunity to be heard prior to removal to a country that was not designated in their removal orders, which Plaintiffs allege violates the INA, FARRA, regulations implementing the two statutes, and the Due Process Clause of the Fifth Amendment."). Also, as with in *D.V.D.,* Plaintiffs seek an order requiring that the Government "facilitate Plaintiffs' return to the custody of the United States." ECF No. 2 at 1; *see D.V.D.,* 1:25-cv-10676, ECF No. 1 at 37 (D. Mass).

## LEGAL STANDARD

A temporary restraining order is governed by the same standards as a preliminary injunction. *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003) ("The same standards apply for both temporary restraining orders and preliminary injunctions."). "'A preliminary injunction is an extraordinary remedy never awarded as of right,' but 'only when the party seeking the relief, by a clear showing, carries the burden of persuasion[.]'" *Cal. Ass'n of Private Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 166 (D.D.C. 2018) (Moss, J.) (denying motion for preliminary injunction) (quoting *Winter v. NDRC*, 555 U.S. 7, 24 (2008), and *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)). "To secure a preliminary injunction, a plaintiff 'must

establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Cal. Ass'n,* 344 F. Supp. 3d at 166 (quoting *Winter*, 555 U.S. at 20). "Of these factors, likelihood of success on the merits and irreparable harm are particularly crucial." *Aracely R. v. Nielsen*, 319 F. Supp. 3d 110, 125 (D.D.C. 2018) (Contreras, J.) (denying, in part, preliminary injunction).

While courts in this Circuit before the Supreme Court's decision in *Winter* applied a sliding scale in evaluating requests for provisional relief, "the continued viability of the sliding scale approach is uncertain as the Supreme Court and the D.C. Circuit have strongly suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction." *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 20 (D.D.C. 2018) (Chutkan, J.) (denying preliminary injunction) (quotation marks omitted) (citing, among others, *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'")); *accord Cal. Ass'n*, 344 F. Supp. 3d at 167.

Regardless of whether the sliding-scale approach remains good law, "[t]he power to issue a preliminary injunction . . . should be sparingly exercised." *Mott Thoroughbred Stables, Inc. v. Rodriguez*, 87 F. Supp. 3d 237, 243 (D.D.C. 2015) (Walton, J.) (denying preliminary injunction) (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969)). Moreover, "a party seeking a preliminary injunction must clear two, non-negotiable hurdles[,]" namely (i) establish that the Court has subject matter jurisdiction over the plaintiff's claims, and (ii) demonstrate that the party will "likely" suffer irreparable harm if the injunction is not entered—"a mere 'possibility' of harm will not suffice." *Cal Ass'n*, 344 F. Supp. 3d at 167 (collecting citations).

**ARGUMENT**

Plaintiffs fail to demonstrate a likelihood of success on the merits of their claims—particularly since *none* of the Plaintiffs are in the actual or constructive custody of the Executive—because the injuries they allege cannot be redressed by this Court and the extraordinary interim relief they seek would violate the separation of powers by inserting the judiciary into sensitive issues of foreign affairs.

Even setting aside these clear issues of redressability, Plaintiffs' claims are foreclosed by a binding order from the Supreme Court and numerous jurisdictional bars in the Immigration and Nationality Act. Plaintiffs are members of the certified class in *D.V.D. v. DHS,* 1:25-cv-10676 (D. Mass.), and their claims challenging the Government's third country removal procedures are already being litigated in the District of Massachusetts and in the First Circuit Court of Appeals. Furthermore, the Supreme Court has already determined the proper interim status quo for *D.V.D.* class members while that litigation unfolds. Its *D.V.D.* decision thus "squarely controls" this "like case[]." *Boyle*, 145 S. Ct. at 2654.

Now Plaintiffs are trying yet another end-run by seeking relief from a different District Court. That is forbidden by the most basic principles of civil procedure. And their efforts to evade a clear directive from the Supreme Court and insert this Court into foreign relations threatens a constitutional crisis. The Supreme Court has already determined the appropriate status quo for members of the *D.V.D.* class and determined that the balance of equities tip in favor of the Government. For all of these reasons, Plaintiffs' motions must be denied.

**I.      Plaintiffs are Not Likely to Succeed on the Merits of their Claims Because their Alleged Injury is Not Redressable.**

As Plaintiffs concede, they are in the custody of the Republic of Ghana. ECF No. 1 at 3. They are not in the actual or constructive custody of the United States. Accordingly, this Court lacks the power to grant Plaintiffs the relief they seek—an order "preventing Plaintiffs' transfer to

8

their countries of origin," ECF No. 18 at 3, or directing the Government to "facilitate Plaintiffs' return to the custody of the United States," ECF No. 2-1 at 2. *See., e.g.*, *In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 132 (D.D.C. 2010), *aff'd sub nom. Chaman v. Obama*, No. 10-5130, 2012 WL 3797596 (D.C. Cir. Aug. 10, 2012) (holding the court has no authority over foreign governments to redress petitioners' claims, as such their claims are moot); *Al Joudi v. Bush,* 2008 WL 821884, at *1 (D.D.C. Mar. 26, 2008) (finding injuries are not redressable if they are "totally dependent upon the actions of a nonparty sovereign authority beyond the control of this Court."). Among other things, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). When "existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

First, this Court cannot issue an order requiring the Government to compel Plaintiffs' return to the United States or take any specific diplomatic action regarding Plaintiffs. Such an extraordinary order would violate the separation of powers by inserting the judiciary into sensitive issues of foreign affairs. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (an order to "effectuate" an alien's return from the custody of a foreign nation went too far, and ordering the district court to clarify its order "with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs"). Matters of foreign affairs are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."

*Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). The President's power to speak for the country "in the field of international relations" is both "plenary and exclusive." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936).

Moreover, it is completely speculative that Ghana would release Plaintiffs upon a request from the United States. In anticipating that the United States would be able to regain custody simply by asking, mere "guesswork" is all Plaintiffs have. *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665–66 (D.C. Cir. 2025). Plaintiffs have no evidence to the contrary, so any redress is speculative. It is simply beyond the scope of this Court's power to direct the actions of a foreign government. *See Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009) ("Judicial inquiry into a recipient country's basis or procedures for prosecuting or detaining a transferee from Guantanamo would implicate not only norms of international comity but also . . . separation of powers principles.").

Nor could this Court grant Plaintiffs' alternative request to maintain the status quo by requiring Ghana to maintain Plaintiffs D.A., T.L., I.O., and D.S. in their current physical location. *See* ECF No. 18 at 3. This too is purely speculative, as it would require both nations—the United States and Ghana—to reach an agreement regarding Plaintiffs, who are not citizens or nationals of the United States and are solely in the control and custody of Ghana. This Court certainly cannot broker a deal with a foreign sovereign, which is a clear-cut foreign relations matter outside the purview of the Judiciary. *See generally Harisiades*, 342 U.S. at 588–89 ("any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] largely immune from judicial inquiry or interference."). Even if the remedy were just to *request* that Ghana maintain Plaintiffs in their current location, this would still intrude on the President's Article II powers, which "authorize[] the Executive to engag[e] in direct

diplomacy with foreign heads of state and their ministers," *Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015). The Supreme Court has "taken care to avoid 'the danger of unwarranted judicial interference in the conduct of foreign policy,'" *Biden v. Texas*, 597 U.S. 785, 805 (2022). Even to ask the Government to broker such a deal would significantly interfere with the President's core foreign affairs responsibilities. And there is no basis for concluding that such efforts would likely bear fruit.

Plaintiffs' claims also suffer from another insurmountable justiciability hurdle: they raise claims that the federal Judiciary lacks authority to entertain. The crux of Plaintiffs' claim is a desire to second-guess the adequacy of the diplomatic assurances the Government obtained from Ghana. But this entire enterprise is squarely foreclosed by binding precedent from both the D.C. Circuit and the Supreme Court, and it is well-established that diplomatic assurances are not judicially reviewable. "The Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." *Munaf v. Geren*, 553 U.S. 674, 702 (2008). As a result, *"*the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba,* 561 F.3d at 514-516. Instead, "*Munaf* precludes the district court from barring the transfer of a [party] on the ground that he is likely to be tortured or subject to further prosecution or detention in the recipient country." *Id.* at 516. This Court simply cannot review Ghana's diplomatic assurances or second-guess the Government's determination that those assurances are credible. Accordingly, the Court cannot redress Plaintiffs' alleged injury.

Plaintiffs' counterarguments are unavailing. Because Plaintiffs are in Ghanaian custody, this case is nothing like the cases Plaintiffs reference in which courts entered interim relief to

11

prevent the transfer or removal of individuals who were in the custody or control of the United States at the time the lawsuit was filed. *See, e.g.*, *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (enjoining removal of group of immigrant detainees until constitutional claims could be heard on merits); *Ozturk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (ordering the return of an immigration detainee from Louisiana to Vermont); *Perez Parra v. Castro*, 765 F. Supp. 3d 1241, 1243 (D.N.M. 2025) (temporarily enjoining the transfer of petitioners to Guantanamo Bay); *Arostegui-Maldonado v. Baltazar*, No. 25-cv-2205, 2025 WL 2280357, at *16 (D. Colo. Aug. 8, 2025) (enjoining an immigration detainee's transfer out of the District of Colorado during the pendency of his habeas action).

Moreover, as discussed below, this case is clearly distinguishable from the cases where courts have ordered the Government to facilitate an individual's return to the United States. As Plaintiffs acknowledge in a footnote in their supplemental brief, aliens "*who prevail in litigation challenging their removal* 'can be afforded effective relief by facilitation of their return[.]'" ECF No. 32 at 5 n.2 (emphasis added) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Here, Plaintiffs ask this Court to put the cart before the horse: order the Government to "facilitate" particular arrangements with a foreign nation for the benefit of an alien *before* there has been any finding that the alien's removal was unlawful or otherwise erroneous.[4] And as this Court has repeatedly noted, the cases upon which Plaintiffs principally rely involved situations where the Government had *conceded* that the alien's removal had been erroneous. *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 507 n.3 (D. Md. 2025) (order to facilitate alien's return to the United States where an "administrative error" led to his removal to El Salvador); *Melgar-Salmeron v.*

---

[4] And, for the reasons explained below, Plaintiffs' claims challenging the propriety of their removals to Ghana must be brought, if at all, as part of the *D.V.D.* litigation in the District of Massachusetts.

12

*Bondi*, No. 23-7792, Doc. 49 (2d. Cir. June 25, 2025) (order to facilitate alien's return to the United States where he had been "improperly sent to El Salvador"). Conversely, the Government maintains that Plaintiffs' removals to Ghana were lawfully executed pursuant to DHS's statutory third country removal authority under 8 U.S.C. § 1231(b) and the March Guidance. Furthermore, their removals were entirely consistent with not one but two binding decisions from the Supreme Court. *Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2153 (2025); *Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2627 (2025).

> **II.     Plaintiffs' Claims are Indistinguishable from those in *D.V.D.* and Should be Dismissed or Transferred.**

To the extent this Court does not dismiss Plaintiffs claims due to lack of standing, it should transfer them to Judge Murphy. Whether Plaintiffs' claims are identical to those brought in *D.V.D.* (which they are) or a meager attempt to claim split (which they also are), their claims do not belong in this Court. As Judge Moss recently recognized, claims related to the propriety of the third country removal process—whatever the constitutional flavor—belong before Judge Murphy. *See Steele v. United States,* 144 F.4th 316, 2025 U.S. App. LEXIS 17784 *14 (D.C. Cir. 2025) ("Consistent with long-standing precedent we hold that the claim-splitting rule provides a valid, independent basis for dismissal."). This case is not distinguishable from *Pham.* If anything, the aliens in *Pham* had a better argument that their case was distinguishable from *D.V.D.* because it raised claims under the Sixth and Eighth Amendment. Here, if Plaintiffs' claims belong anywhere, they belong before Judge Murphy because they arise from the *exact factual scenario* Plaintiffs and Judge Murphy used to justify the classwide injunction. Judge Murphy, if anyone, is in the best position to decide the issues raised in this complaint based on facts he anticipated could occur months ago.

13

### III. Plaintiffs' Claims are Foreclosed by a Binding Supreme Court Order and Numerous Jurisdictional Bars.

#### A. The Supreme Court has Already Determined that Plaintiffs Are Not Presently Entitled to Relief.

All of the arguments Plaintiffs make in their motion have been reviewed, and rejected, by the Supreme Court by virtue of their membership in the certified Rule 23(b)(2) class in *D.V.D.* Counsel for the nationwide class in both their opposition to the Government's application for a stay of the preliminary injunction and motion for clarification raised all of the arguments Plaintiffs make here. *See generally DHS v. D.V.D.*, Opposition to Application to Stay ("Stay Opp"), 24A1153 (June 4, 2025); *DHS v. D.V.D.*, Opposition to Motion for Clarification ("Clarification Opp"), 24A1153 (June 24, 2025). They expressed their concern that the Government's procedures risk chain refoulment. Stay Opp at 27-28, 32. They complained about the lack of visibility into the Government's diplomatic assurance process. *Id.* at 27-30. They argued that class members were entitled under the Fifth Amendment to meaningful notice and an opportunity to be heard on any fear-based claims. *Id.* at 33-36. They argued that the Government was failing to follow the March Guidance. Clarification Opp. at 5 ("The eight class members in Djibouti have not yet received even the process provided for under Defendants' own policy, its March 30, 2025 policy memorandum."); *id.* at 1-2 (alleging that class members had received "not even the process afforded by the government's own policy memorandum"). They also objected to the Government's claims of irreparable harm and mounted numerous arguments about the harm that would befall their class members who, at the time of briefing, included eight aliens who the Government intended to send to South Sudan and who class counsel cited news articles they claimed demonstrated these eight aliens would be returned to their countries of origin. Stay Opp at 36-40; Clarification Opp at 3-5. Despite all of these arguments, the Supreme Court sided with the Government *twice.*

14

Plaintiffs' attempt to avoid the Supreme Court's orders are without merit. Their assumption that the Supreme Court ruled in favor of the Government only because the classwide injunction violated Section 1252(f)(1)'s prohibition of classwide relief is just that: an assumption—and one squarely at odds with the Supreme Court's stay grant as to *named plaintiffs* (for whom Section 1252(f)(1) was no impediment to relief). The Supreme Court's stay grant as to the named Plaintiffs in *D.V.D.* thus "squarely controls" this "like case[]."*Boyle*, 145 S. Ct. at 2654.

Morover, the Supreme Court, by granting the stay, necessarily concluded that the balance of equities and public interest tipped in the Government's favor. *See Hollingsworth v. Perry,* 558 U.S. 183, 190 (2010) (setting the standard for an appellate stay). The Government argued that it was suffering an "ongoing irreparable injuring in the diplomatic, immigration, and foreign policy spheres." Exhibit 1 at 1. The Government explained that "[f]inding third countries willing and able to accept aliens is a delicate diplomatic endeavor. By interjecting itself into that process, and disrupting those carefully negotiated arrangements, the court's actions have already caused major and irremediable harm to U.S. foreign policy." *Id.* at 8. It is indisputable that, regardless of the Supreme Court's opinion on the merits arguments, it found that this irremediable harm justified the granting of a stay. Plaintiffs nonetheless ask this Court to *go beyond* what Judge Murphy ordered (relief limited to aliens in U.S. custody) which caused the harm the Supreme Court found sufficiently grievous to merit a stay. Plaintiffs ask this Court to directly interject itself into the United States' diplomatic discussions with a foreign sovereign nation. Whatever this Court's opinion of the Supreme Court's stay, it cannot openly defy the Supreme Court's order by visiting more *direct* harm to the diplomatic process than the Supreme Court found objectionable. For this reason alone, this Court must deny Plaintiffs' motion.

**B. Plaintiffs' Claims are Foreclosed by Numerous Jurisdictional Bars.**

Even if Plaintiffs were not members of the mandatory *D.V.D.* class, numerous sections of the INA preclude this Court from issuing the relief Plaintiffs seek.

*First*, this Court would still lack jurisdiction under 8 U.S.C. § 1252(g) to review Plaintiffs' claims because their claims arise from the execution of their removal orders. Section 1252(g), as amended by the REAL ID Act, bars claims arising from three discrete actions, including, as relevant here, the decision or action to "execute removal orders." *Id.* In enacting § 1252(g), Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. *Id.*; *accord, Elgharib v. Napolitano,* 600 F.3d 597, 605 (6th Cir. 2010) (holding that Section 1252(g) precludes jurisdiction under the All Writs Act); *Sadhvani v. Chertoff,* 460 F.Supp.2d 114, 122 (D.D.C. 2006) (same). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("AADC"), 525 U.S. 471, 482 (1999); *see also Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (holding that attempt to "employ[] a habeas petition effectively to challenge the validity and execution of [a] removal order," even "indirectly," is "jurisdictionally barred"). The decision to execute a removal order is committed to the discretion of the Executive Branch, and § 1252(g) was designed to protect that discretion and to avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." AADC, 525 U.S. at 487.

Section 1252(g) also applies to constitutional claims arising from the execution of a final order of removal, as the language barring "any cause or claim" made it "unnecessary for Congress

16

to enumerate every possible cause or claim[.]" *AADC*, 525 U.S. at 487; *accord Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017). Further, *AADC* established that § 1252(g) is "designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Alvarez v. ICE*, 818 F.3d 1194, 1205 (11th Cir. 2016) (quoting, *AADC*, 525 U.S. at 485). Section 1252(g) therefore precludes "[e]fforts to challenge the refusal to exercise [favorable] discretion on behalf of specific aliens[.]" *Id.* (quoting *AADC*, 525 at 485).

Here, Section 1252(g)'s prohibition is particularly pronounced. Plaintiffs action not only plainly arises from the execution of their final orders of removal to Ghana, the remedy they seek falls firmly within the Executive's "plenary and exclusive" authority to speak for the country "in the field of international relations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). All three branches of Government have made clear that the claims Plaintiffs raise are outside this Court's control; this Court should dismiss Plaintiffs' complaint and deny their motion for emergency relief.

*Second,* claims are barred in district courts by Section 1252(a)(5) and (b)(9). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2). This explicitly excludes "section 2241 of title 28, or any other habeas corpus provision." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. "Taken together, §[§] 1252(a)(5) and [(b)(9)] mean that *any* issue— whether legal

or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Section 1252(b)(9) thus eliminates this Court's jurisdiction over Plaintiffs' claims by channeling "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" to the courts of appeals. Accordingly, this Court lacks jurisdiction under §§ 1252(a)(5) and (b)(9) to review Plaintiffs' request to "undo" their removals.[3] *See J.E.F.M.*, 837 F.3d at 1031; *see also, Mata v. DHS*, 426 F. App'x 698, 700 (11th Cir. 2011); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257-58. (11th Cir. 2020); *Camarena v. ICE,* 988 F.3d 1268, 1272 (11th Cir. 2021); *Linares v. DHS*, 529 F. App'x 983 (11th Cir. 2013); *Themeus v. DOJ*, 643 F. App'x 830 (11th Cir. 2016).

Plaintiffs focus on the lack of notice regarding the country of removal as if their fear depends on receiving that notice. It does not. Plaintiffs know the countries to which they have a fear of removal, *particularly* in West Africa, and they could have made those fear claims during their initial removal proceedings or moved to reopen their proceedings at any time prior to their removal. To the extent Plaintiffs claim that due process requires notice of removal to the third country, they could have also made that claim through the administrative process. Plaintiffs know that this process is available *and* of the likelihood that they would be removed to a third country in light of the highly publicized nature of third country removals, but are still seeking emergency relief in this Court. This is precisely the scenario Congress intended to preclude with §1252(b)(9). This Court should give effect to Congress' plain intent and deny Plaintiffs' motion.

*Third,* FARRA and 8 U.S.C. § 1252(a)(4) also preclude this Court from issuing the requested relief. The Convention Against Torture (CAT) is not self-executing. *See Medellin v. Texas*, 552 U.S. 491, 505, 520 (2008); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003).

Rather, it is only operative domestically insofar as Congress implements it by statute. Congress, in its discretion, implemented it by directing the issuance of regulations, expressly depriving courts of jurisdiction to review those regulations, and channeling all review of individual CAT claims into review of final orders of removal. FARRA § 2242(d); *see also* 8 U.S.C. § 1252(a)(4) (explaining that "a petition for review" is the "sole and exclusive means for judicial review of any cause or claim under the [CAT]").

To the extent Plaintiffs argue that they do not seek to rewrite or challenge the CAT regulations, that is simply untrue. Plaintiffs request that this Court order the Executive Branch to attempt to *force* a foreign sovereign to comply with their own treaty obligations. This is far beyond what the district court in *D.V.D.* even issued. This Court lacks jurisdiction to rewrite the CAT regulations and require *any* additional action by the Government to comply with its obligations under the CAT, and this Court certainly lacks jurisdiction to require the Executive Branch to strong-arm Ghana into complying with Ghana's CAT obligations. Because FARRA § 2242(d) and 8 U.S.C. § 1252(a)(4) together make clear that this Court is without authority to force the Executive Branch to take diplomatic action—which is far beyond what is in DHS's regulations—this Court should deny Plaintiffs' motion.

**IV.    This Court Should Stay Any Order Issuing Relief.**

As Plaintiffs seem to admit, their motion for a temporary restraining order seeks the ultimate relief they request in this Court. Accordingly, any relief issued by this Court on this motion would be an appealable order. Without a stay of the order, Defendants could be effectively precluded from obtaining relief on appeal. Accordingly, should this Court issue any relief, it should stay such relief pending any appeal. At a minimum, it should stay any decision14 days to allow Defendants to seek an orderly stay from the D.C. Circuit.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Temporary Restraining Order (ECF No. 2) and Emergency Motion for Interim Relief (ECF No. 18).

| | |
|---|---|
| Respectfully submitted, | MATTHEW P. SEAMON<br>Senior Litigation Counsel |
| BRETT A. SHUMATE<br>Assistant Attorney General | /s/ *Mary L. Larakers*<br>MARY L. LARAKERS |
| ELIANIS N. PEREZ<br>Assistant Director | (Texas Bar # 24093943)<br>Senior Litigation Counsel<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>P.O. Box 868, Ben Franklin Station<br>Washington, DC 20044<br>(202) 353-4419<br>(202) 305-7000 (facsimile)<br>mary.l.larakers@usdoj.gov |