```
 1                      IN THE UNITED STATES DISTRICT COURT
                             DISTRICT OF COLUMBIA
 2

 3    D.A., et al.,                    ) CIVIL NO.:
                                       ) 25-3135-TSC
 4              Plaintiff,             )
           vs.                         )
 5                                     )
      KRISTI NOEM, et al.,             )
 6                                     ) September 13, 2025
                Defendant.             ) Washington, D.C.
 7    _____ ) 3:00 p.m.

 8

 9                     Transcript of Motions Hearing
                  Before the Honorable Tanya S. Chutkan
10                     United States District Judge

11    APPEARANCES:

12    For the Plaintiff:

13         Lee Gelernt, Esquire
           Judy Rabinovitz, Esquire
14         American Civil Liberties Union
           125 Broad St.
15         18th Floor
           New York, NY 10004
16
           Noah Baron, Esquire
17         Asian Americans Advancing Justice, AAJC
           1620 L Street NW
18         Suite 1050
           Washington, DC 20036
19
      For the Defendant:
20
           Elianis N. Perez, Esquire
21         Matthew P. Seamon, Esquire
           U.S. Department of Justice
22         P.O. Box 868
           Washington, DC 20044
23
      Reported by:   Christine T. Asif, RPR, FCRR
24                    Federal Official Court Reporter
                      333 Constitution Avenue, NW
25                    Washington, D.C. 20001
                      (202) 354-3247
```

Proceedings recorded by machine shorthand;
transcript produced by computer-aided transcription

```
 1                      P R O C E E D I N G S

 2              THE CLERK:  Your Honor, we are on the record in

 3      civil case 25-3135, D.A., et al versus Noem, et al.

 4              Starting with plaintiff's counsel please introduce

 5      yourselves for the record.

 6              MR. GELERNT:  Good afternoon.  This is Lee Gelernt

 7      from the National Office of the ACLU for plaintiffs

 8      petitioners.  We just entered an appearance today.

 9              MR. BARON:  This is Noah Baron with Asian Americans

10      Advancing Justice, AAJC, also for plaintiffs.

11              MS. RABINOVITZ:  This is Judy Rabinovitz also with

12      the ACLU for plaintiffs.

13              THE CLERK:  And for defendants.

14              MS. PEREZ:  Good afternoon, Your Honor.  This is

15      Elianis Perez on behalf of the government.

16              MR. SEAMON:  Good afternoon, Your Honor.  Matthew

17      Seamon on behalf of the government.

18              THE COURT:  All right.  Good afternoon, everyone.

19      Thanks for getting here on time on a really lovely Saturday

20      afternoon, but time appears to be of the essence.

21              Ahead of today's hearing I read the joint status

22      report, which is ECF No. 17, and the emergency notice No. 18.

23      We were having some issues with the PACER system, but I

24      believe we've received the declaration that was submitted

25      earlier by plaintiff D.A.
```

1              I, obviously, don't have full briefing yet since

2      we're in the middle of that.  So I guess the first thing,

3      yesterday afternoon we had a hearing in this case.  So I won't

4      repeat the relevant background that's already been discussed.

5      Two or three hours after yesterday's hearing, plaintiff's

6      counsel notified the Court that they would be filing an

7      emergency notice given that they were informed that there

8      would be -- the plaintiffs would be removed from Ghana to

9      their home countries, even though they had been granted

10     protections barring their removal to those countries, and even

11     though the parties had just had a hearing in front of this

12     court and set briefing on that very issue.

13             I asked the parties to see if they could come to an

14     agreement regarding the status quo, and I -- the parties could

15     not do that and said that defendant -- defendants said they

16     were not in a position to agree to maintain the status quo or

17     maintain the plaintiffs in their current location.  So

18     consequently, I set today's hearing.

19             So before we go any further, let me ask you,

20     whoever's going to speak on behalf of the plaintiffs, do you

21     know what plaintiff's status is at the moment?

22             MR. GELERNT:  Good afternoon, Your Honor.  This is

23     Lee Gelernt from the ACLU.  I will be principally addressing

24     the Court.  We have texted with our clients very recently.

25     They are still in Ghana, but they are being specifically

1    told -- and that's in the declaration we filed just within the

2    last couple of hours from D.A., the initials D.A. -- that they

3    have been visited by people from their home country.  So

4    that's already very scary.  And they have been told that by

5    Monday they will be sent to their home country.  They appear

6    to be still in Ghana, so there is still time to act.

7            THE COURT:  All right.  Sorry, this is a

8    housekeeping matter.  Ms. Love, is there a public line?

9            THE CLERK:  Yes, Your Honor.

10           THE COURT:  Good.  Okay.  So I guess who -- who will

11   be speaking for the -- Ms. Perez, will be you be speaking for

12   the Government.

13           MS. PEREZ:  Yes, Your Honor.

14           THE COURT:  So yesterday we had a hearing and you

15   agreed with me that the United States Government was aware

16   that the plaintiffs in this matter, even though they had an

17   order of removal or they're in removal -- kind of removal

18   status, could not be returned to their home country.  Do you

19   agree with me that that -- you agree with that?

20           MS. PEREZ:  Yes.

21           THE COURT:  Okay.  And the next thing you assured me

22   was that the agreement with Ghana was reached at-- you know,

23   as a result of high-level diplomatic discussions.  And that

24   the government had reached -- had received assurances from

25   Ghana that Ghana would comply with the convention against

1    torture; is that correct?

2          MS. PEREZ:  That is correct.

3          THE COURT:  Now, despite those representations that

4    you made to me, it appears that -- well, at the time we had

5    this hearing at least one -- I'm sorry, I'm trying to get the

6    camera back -- at least one plaintiff was already in Gambia,

7    and then we received notice last night that it appears that

8    the other plaintiffs are being -- getting ready to be moved to

9    their home country, in direct contravention of what the United

10   States is aware of their obligations and what they were

11   assured of by Ghana.  How is the okay?

12         MS. PEREZ:  Your Honor, the United States is not

13   saying that this is okay.  What the United States is saying,

14   what the government has been trying to explain to the Court,

15   is that the United States does not have the power to tell

16   Ghana what to do.

17         THE COURT:  And isn't that -- the lack of that power

18   appears to be by design.  Because what this appears to be is

19   an end run around the United States's obligations.  You sent

20   these individuals knowing you can't send them -- you can't

21   repatriate them, you sent them to Ghana.  And you say, oh, but

22   Ghana says they're not going to send them home.  And Ghana

23   immediately prepares to sent them home with what appears to be

24   your full awareness.  How is this not a violation of your

25   obligation?  Just because you say, well, we don't have the

1    power, we don't control what Ghana does, we don't have the

2    power to control Ghana, this flies in the face of your

3    representation to me that the government received assurances

4    from the Ghanaian government that they wouldn't do exactly

5    what they're doing.

6              MS. PEREZ:  Your Honor.

7              THE COURT:  Let me ask you this:  Does Ghana appear

8    to be violating the assurances that it gave the U.S.

9    government.

10             MS. PEREZ:  Assuming the plaintiffs -- based on the

11   plaintiffs' allegations it seems that that is correct.

12             THE COURT:  And does the United States plan to take

13   any action in light of this?  For example, taking them back to

14   the United States given that Ghana's intent -- Ghana says

15   they're going to send them home tomorrow or Monday.  In light

16   of that -- in light of that intent is the United States taking

17   them back to -- is the United States taking them back to the

18   U.S. where they will be safe from torture and persecution?

19             MS. PEREZ:  Your Honor, there is no obligation by

20   international laws or by United States that the United States

21   do anything.  In fact, the United States does not have the

22   ability to tell Ghana what to do with these individuals.

23             Again, I will say, Your Honor, that the information

24   that I did receive from the State Department, and I understand

25   that the Court is very frustrated with what is going on and it

1    is a frustrating situation, but that --

2         THE COURT:  -- it's a frustrating situation for the

3    United States Government, this appears to be exactly what they

4    intended to happen.  And I'm not making that assessment

5    lightly.  This appears to be a specific plan or design to make

6    an end run around these obligations.  Because how can you tell

7    me that you were given specific assurances by the government

8    of Ghana that this wouldn't happen and it's immediately

9    happening.  And now you're throwing your hands up in the air

10   and saying there's nothing we can do.

11        MS. PEREZ:  Your Honor, my client, the Department of

12   State has told me they have an actual diplomatic note from the

13   Ghanaian government indicating that they were going to abide

14   by those assurances.  And I can provide that note to the

15   Court --

16        THE COURT:  -- indicating that Ghana was not going

17   to abide by this --

18        MS. PEREZ:  No, it will.  And I can provide that

19   note to the court ex parte in camera.

20        THE COURT:  That note does not appear to be worth

21   the paper on which it is written, because they May be sending

22   you a diplomatic note but they're acting in flagrant violation

23   of the intent conveyed in that note.  So my question is in

24   light of that, I know you're not a diplomat, Ms. Perez, you're

25   the lawyer, but you have a client which you're speaking for --

1  in light of that apparent contradiction what does the
2  government intend to do?

3          And please don't tell me you don't have any control
4  over Ghana, because I know that.  But you control these
5  plaintiffs in that you sent them to Ghana.  You turned them
6  over to the government of Ghana with the express
7  understanding, as you told me, that they would not be
8  repatriated.  And now Ghana has expressed its intent to
9  repatriate them.  And you're saying, well, there's nothing we
10 can do.

11         But there are things you can do.  For one thing you
12 can take custody of those individuals and bring them back to
13 the United States or to somewhere where they won't be sent to
14 their home country.  You can instruct Ghana -- or I should not
15 say instruct.  You can communicate to the government of Ghana
16 that they are in violation of the assurances that they gave
17 you.  So there are things you can do.

18         So my question is, what does the United States
19 Government intend to do in the face of this apparent violation
20 of the assurances that you were given?

21         MS. PEREZ:  Your Honor, my understanding that moving
22 forward this will have an impact on the way that the United
23 States and Ghana view these diplomatic relations and these
24 diplomatic assurances and agreements.  But at this point the
25 United States is not in a position to tell Ghana to give these

1  individuals back.  And again, there is nothing that the United

2  States can do about what the sovereignty of Ghana is going to

3  do with those individuals.

4       THE COURT:  Look, let's not be disingenuous here.

5  Sure, the government of the United States can't order the

6  government of Ghana to do anything.  But the government of the

7  United States has entered into this agreement, which I still

8  haven't seen, with Ghana.  And certainly there are -- there

9  are -- the government has ways of conveying to the government

10  of Ghana that this isn't what we agreed to.  This is not what

11  you agreed -- you said you wouldn't do this, and you're doing

12  it, so you're violating our agreement.  We strongly suggest

13  you adhere to the terms of our agreement or there will be

14  consequences.  There's nothing that stops the United States

15  Government from expressing that to the government of Ghana.

16  But, frankly, it appears that this is the result the

17  government wants, or it doesn't object to.

18       MS. PEREZ:  Your Honor, again, these diplomatic

19  relations -- and we are aware we're getting into the realm of

20  interfering in diplomatic relations, which the Court cannot

21  do.  And I understand that it is a frustrating situation, but

22  the Supreme Court and this district -- the D.C. Circuit has

23  explicitly said that this is a -- something that only the

24  executive has power to do.  And in this situation we -- just

25  to clarify, I believe yesterday the plaintiffs told the Court

there was some sort of agreement.  I have confirmed with the

client and there is no agreement.  The only thing in place

here are the diplomatic assurances on the note that I have

told the Court that I can provide in camera and ex parte.  But

other than that --

THE COURT:  I would like that provided in camera and

ex parte.  But again, your representation just now that

there's no agreement does nothing to assuage my concern.  In

fact, it makes the whole -- this whole scenario, this whole

situation reeks.

That being said, I'm not sure what or how much I can

do about it.  And let me hear from you.  I'm sorry, Ms. Perez,

I know I asked you questions, did you want to complete your

answer?  I don't mean to just cut you off as often as I

have.

MS. PEREZ:  No, Your Honor, I think that in this

case there are two distinct questions, right.  It's the

credibility of the diplomatic assurances, which I believe

that's something that the unreviewable by this Court.  But

also there's the issue of whether we're in this situation, or

the individuals are in the situation based on the procedures

that DHS took in order to remove them to a third country.  And

I think that that particular question is a question that's

addressed in the D.V.D. Class action.  And if, to the extent

that the Court is going to delve into that aspect of the case,

1   to see whether or not these individuals have received due

2   process or whether the March guidance was, in fact, followed,

3   that question is the question that was -- that is before judge

4   Murphy in the nationwide class action in D.V.D.  So at a

5   minimum -- at a minimum and we understand the Court's

6   frustration, we ask that the Court at a minimum transfer this

7   case to Judge Murphy to see what if anything Judge Murphy

8   wants to do.  He has been dealing with these issues since

9   February of this year.

10          THE COURT:  At which time the plaintiffs in this

11  case will be back in Gambia and Nigeria and beyond the reach

12  of any court.  And who knows whether they will have been

13  tortured, assaulted, these are not speculative concerns.  The

14  concerns are really that the United States Government agreed

15  they shouldn't be sent back to their home countries.  And yet

16  through an agreement, an unwritten agreement with Ghana it's

17  happening almost immediately.

18          Mr. Gelernt, are you speaking here for the

19  plaintiff.

20          MR. GELERNT:  Yes, it's Mr. Gelernt.  Yes, I --

21          THE COURT:  Gelernt, I'm sorry.  I should have

22  known.  You were in front of me all the time.  It's been a

23  while.

24          MR. GELERNT:  I know.  I -- Your Honor, I'm going to

25  be candid, I'm not sure I can do much better than what you

1    have laid out.  But let me just make a--

2              THE COURT:  The problem and I'm an equal opportunity

3    interrupter.  I'm an equal opportunity interrupter.  The

4    problem is, as much as you may agree with what I laid out, my

5    hands may be tied.  And so maybe you can address what I can do

6    and also Ms. Perez's point about where this case -- whether

7    this case should be with Judge Murphy.

8              MR. GELERNT:  Absolutely, Your Honor.  That's

9    exactly what I want to address, because I think Your Honor has

10   drilled down to the exact right question.  There seems to be

11   something wrong here.  It's not clear to me why the U.S. is

12   not equally outraged as we are, that if they genuinely did not

13   want these people sent to a third country, they're not taking

14   a step.

15             Let me specifically address what you can do.  You

16   can ask the government, order the United States Government to

17   quote, unquote, facilitate their return back to the U.S., or

18   at a minimum not to transfer.  Now, that's not taking a step

19   of saying the U.S. will be held in contempt if Ghana does it

20   any way.  But you can say the U.S. Government should put in a

21   declaration, because I would note they have not put in

22   anything under oath yet to you that they can put -- that they

23   should put something under oath to you that they have

24   immediately after this hearing told Ghana that the individuals

25   have orders from U.S. courts that they cannot go to their home

country, and Ghana should not transfer them.  And then if
Ghana does it any way, they should put in a declaration to you
saying that Ghana did it.

Here's what I want to stress:  You don't need to
find that the U.S. has complete control over Ghana.  In *Abrego
Garcia*, which was different under the merits, as Your Honor
pointed out last, there was no finding of constructive custody
much less full control, but the Court said the U.S. Government
should facilitate the return.  Judge Boasberg did the same
thing in the Alien Enemies Act case and the 4th Circuit did
the same thing under the J.O.P. case.

And the reason why it's so critical here is not just
because of the imminence of the harm, but because the Ghana
president has said repeatedly, we'll take people from West
Africa for 90 days and allow them to go to other countries.
Ghana is indifferent to where they go.  This is obviously the
U.S. controlling it.  So the U.S. is saying they can't do
anything.  But they have not even asked the Ghana president
can you please send these individuals back, or at least not
send them to their home country.  It's not Ghana who wants to
do that.

So the U.S. is saying we can't do anything, without
even giving you a sworn declaration that they have asked Ghana
and Ghana has said no.  That's exactly what the Supreme Court
said in *Abrego*.  It's exactly what Chief Judge Boasberg said

1    in your court.  And it's exactly what the 4th Circuit said in

2    J.O.P., facilitate.  Now, if the government puts in a sworn

3    affidavit saying we have immediately asked Ghana not to send

4    these individuals there because -- and the U.S. Government

5    recognizing that they shouldn't be sent there, and Ghana did

6    it over our objection and they put a sworn affidavit in, then

7    I think Your Honor was right that your hands are tied.

8          But we're at step one now.  The U.S. Government is

9    saying we won't even try to ask Ghana.  I don't even

10   understand, forgetting the legal obligation, I don't

11   understand why the U.S. Government is not outraged.  They

12   claim they have a diplomatic assurance that people will not

13   only be tortured -- not be tortured in Ghana or persecuted in

14   Ghana, but they won't be sent on to their home countries where

15   they have orders, and yet the United States Government is not

16   outraged and calling Ghana immediately on the phone saying

17   please don't do this.

18          MR. BARON:  And your --

19          THE COURT:  But the problem with those cases --

20   sorry, I'm going to let you speak in a minute and maybe you

21   can address this point.  The problem is that in Chief Judge

22   Boasberg's case the plaintiffs were on American soil.  So

23   Chief Judge Boasberg had jurisdiction over them.  And with

24   *Abrego Garcia* the Supreme Court stayed the lower court

25   decision.  And there's no point in getting decisions from me

1    that are going to be immediately stayed.

2        MR. GELERNT:  Well, Your Honor, I would like to

3    address that very specifically.  Chief Judge Boasberg -- and

4    this has gotten complicated because he has so many iterations

5    of this Alien Enemies Act case.  The original case was when

6    they were on U.S. soil.  But then he issued another order in a

7    companion case where they were already in El Salvador.  And

8    what he said is facilitate the return.  The government made

9    the exact same arguments it's making here.  Well, that's a

10   foreign country.  This is foreign affairs.  We don't control

11   everything El Salvador does.

12       The same thing in J.O.P. where the individual was,

13   again, in CECOT, El Salvador prison.  And in *Abrego* remember,

14   the Court differentiated between two things.  And this is what

15   I think is critical for you, Your Honor.  The lower court said

16   effectuate and facilitate.  The Court said we struck out

17   effectuate because that would suggest that the U.S. Government

18   a hundred percent can get it done and if they don't get it

19   done they're in contempt.  But the Court left facilitate.

20   That has not been stayed.  That's why the U.S. Government

21   ultimately had to bring *Abrego Garcia* back for criminal

22   prosecution.  That's what the U.S. Government left in place,

23   facilitate.  That's all --

24       THE COURT:  -- but you're mixing up the two cases,

25   Mr. Gelernt, because *Abrego Garcia* was -- that was a mistake,

that was an error.  These plaintiffs have -- are in removal

proceedings.  So they can be deported, it's a matter of where

they can be deported to.

MR. GELERNT:  Exactly and that's the same with

*Abrego Garcia*.  He can be removed to a third country, but not

El Salvador.  But I think the mistake part, which the

government has never conceded it was a mistake, goes as Your

Honor knows to the merits not your authority to order the

facilitation.  And so that's why I don't think it matters.

But in Judge Boasberg's case, of course, there was

no mistake.  The government was arguing we have the absolute

right to use the Alien Enemies Act.  The same thing in the

J.O.P. Case from the 4th Circuit.  All we are saying is you

can do the same thing they did there.  And I think you're in

even a better position because what -- they have plenty of

time to gather facts.  You're in a position, as you said last

time, the government's coming to you with no facts, no sworn

affidavit, and all we're asking you to do is use the All Writs

Act to preserve your jurisdiction so they're not sent into

danger and order the government to try.

The government shockingly is not even saying they're

going to try.  I don't understand why the government for its

own reasons wouldn't be trying.  We've already had one person

that the K.S. plaintiff who has already been sent back.  So

that shows that the declaration -- the sorry, the diplomatic

1    assurance is being violated.  And these four, the government's

2    not disputing that these four will be transferred.

3           So all we're asking is a temporary order.  So let's

4    find the facts and see if the government will get Ghana to

5    stop.  We're not saying that if Ghana sends back something, a

6    formal note, we refuse to bring them back.  We refuse not to

7    transfer them.  We don't care what the U.S. government wants.

8    And the government puts in an affidavit to that effect.  Then

9    I think your probably hands are tied.  But right now there's

10   no question under *Abrego*, under Chief Judge Boasberg's

11   decision under J.O.P., that under basic sort of law, that you

12   can say to the Government, please try.

13          THE COURT:  Why shouldn't you be bringing this

14   argument to Judge Murphy?

15          MR. GELERNT:  Well, so that -- sorry, I apologize.

16          THE COURT:  Let me, and I'm -- I'm not -- I don't

17   usually allow double teaming but Mr. Baron if you wanted to

18   add anything on that point before I move over to the other

19   issues.

20          MR. BARON:  Yes.  Before moving on to the D.V.D.

21   Case I did want to add a couple brief points.  In relation to

22   the All Writs Act, all plaintiffs need, or all you need to

23   find is there's a substantial question of jurisdiction.  And

24   as my colleague noted and you noted, there's absolutely

25   nothing in the record from the government, no evidence, no

1    sworn statements, no anything.  They haven't even provided any

2    evidence regarding the agreement or the diplomatic assurances

3    ordered by the Court yesterday.

4            And by contrast plaintiffs have adduced two sworn

5    declarations regarding the potential control or likely control

6    the United States Government is exercising here, including one

7    statement to the effect that the -- a Ghanaian official

8    informed one of the plaintiffs that he was under orders from

9    ICE officials to remove that plaintiff to the Gambia.  So I

10   think that there is, at a minimum, a substantial question of

11   the Court's jurisdiction in the instant case.  And that is

12   enough for the Court to act to preserve its jurisdiction

13   before plaintiffs are removed from Ghana and before they are

14   subjected to further irreparable harm.  Thank you.

15           THE COURT:  All right.  I'm going to hear from Mr.

16   Gelernt just --

17           MR. GELERNT:  D.V.D.

18           THE COURT:  -- only on the issue of whether this

19   should go to Judge Murphy.

20           MR. GELERNT:  Understood, Your Honor.  The D.V.D.

21   Case is about a broad challenge to whether you can use

22   diplomatic assurances country-by-country.  This case is very

23   specific.  It is -- even assuming that plaintiffs lose in

24   D.V.D. and diplomatic assurances can be used, it's exactly

25   what Your Honor has pointed out, it's specific to Ghana that

1    it's not worth the paper it's written on, that Ghana is

2    violating it, the U.S. -- we think it's more than that, we

3    think the U.S. is using this as a concocted scheme to get

4    around these sending people directly back to their countries.

5    But regardless, this is about whether, even assuming D.V.D.,

6    the plaintiffs lose, and diplomatic assurances can be used.

7    Is this diplomatic assurance being violated.  Is this

8    diplomatic assurance a scam.  Judge Murphy is not going to be

9    looking at every single country's situation.  He is looking --

10           THE COURT:  He might be.  I mean, if -- you know, he

11   might be.  That's why these cases are being brought as class

12   actions.  It may be that he has to look at them on a

13   country-by-country basis.

14           MR. GELERNT:  But, Your Honor, it's possible the

15   case broadens, but right now it's not.  And so there's no

16   obligation for it to be sent to judge Murphy.  And as Your

17   Honor pointed out, time is of the essence.  Right now he has

18   not said he will look case -- country-by-country, he doesn't

19   intend to do that, according to the plaintiff's counsel we

20   have been in touch with.  And they have not brought in the

21   case to say it is strictly a facial challenge can you use

22   diplomatic assurances at all.  And that's why there are

23   already some individual cases outside of D.V.D. where it's

24   about the individual circumstances.

25           So that's all we're saying here is time is of the

1    essence.  There is enough evidence to assume that more

2    jurisdictional discovery would be helpful.  And we think if

3    the United States sends a genuine -- a genuine note and said

4    they did under oath to Ghana, we can't see Ghana saying we're

5    going to disobey that.  Everything the Ghanaian president has

6    said is we're taking them because the U.S. has asked us.

7    We're fine with taking West Africans for 90 days.  But as my

8    colleague said, ICE has been telling all these individuals

9    you're going on to your home country.  Ghana is not making a

10   decision where they need to be sent to.

11          THE COURT:  Do you have a declaration or affidavit

12   or some something other than we're hearing from ICE officials

13   that the plaintiffs are really being sent to their home

14   countries?  Do you have anything other than your

15   representation?

16          MR. GELERNT:  We have the declarations that have

17   already been submitted where individuals have said -- the one

18   that was submitted today, for example, we apologize it just

19   came in a couple hours ago, but that's when we were able to

20   reach our client, that they were visited by their home

21   country.  They're being told they're going to be sent to their

22   home country.  So that's in the declaration.  As Your Honor

23   has already pointed out, one of them has already been sent.

24   But this is as of this morning they're being -- they've been

25   visited and been told that by Monday they will be in their

home countries.

And so the government doesn't seem to be disputing that Ghana is going to send them.  So I think that's a fact that you can pocket, Your Honor, that these individuals are going to be sent.  If the government wants to say no, they're not going to be and we'll give you assurances, then we're in a different ball game, but I don't hear the government saying that.

THE COURT:  Well, in Ghamelian versus baker G-h-a-m-e-l-i-a-n versus Baker in the District Court in Maryland, the Court there decided that in a similar scenario that plaintiffs belong with the D.V.D. Case.  The class certification is pretty clear.  And whether Judge Murphy is going case by -- country-by-count is not really dispositive. This -- my problem here -- it's is not my problem -- your problem here is that this case does seem to fit with -- the plaintiffs in this case do seem to fit within the class certification description.

MR. GELERNT:  Your Honor, I think that they don't fit within the claims, because I don't think anything is going to come out of D.V.D. other than one determination, can the government use diplomatic assurances or not as a general matter.

THE COURT:  Wasn't that -- but if that's the determination, that's going to effect this case.  Because the

1    government here is saying we've got diplomatic assurances and,

2    you know, we can't control what Ghana does.  If D.V.D.

3    ultimately decides that you cannot engage in this kind of

4    transfer based merely on diplomatic assurances, then it's

5    going to effect the plaintiffs in this case; right?

6        MR. GELERNT:  Your Honor, that's correct.  If

7    ultimately, after it goes all the way to the Supreme Court,

8    potentially years from now, they say you can't use diplomatic

9    assurances then it absolutely will.

10        THE COURT:  But in other words, you can't -- what

11    you're doing looks like, rather than filing D.V.D., you've

12    come here to try and get action that is not permitted that you

13    can't get through D.V.D.

14        I mean, look, I understand the exigency here.  And

15    I've not been shy about saying I think this whole thing is

16    very suspicious scheme.  But again, I, you know, there's no

17    point in me issuing an order only to get it stayed and that

18    case -- and an order sending that case to Judge Murphy.

19        MR. GELERNT:  Your Honor, let me -- let me just try

20    one more time.  I think you're absolutely right, putting your

21    finger on, if the plaintiffs prevail in D.V.D., and diplomatic

22    assurances cannot be used at all, then that would be relief

23    for our clients.  But if D.V.D. goes the other way, we would

24    still have our claim and Judge Murphy would not be focusing on

25    that, because even if diplomatic assurances can be used

1    generally, this one, as Your Honor said, doesn't appear to be

2    worth the paper it's written on.

3          So in order for us to get -- to insure that D.V.D.

4    would give us relief either way, we would have to broaden the

5    D.V.D. claim.  And there's been no indication that Judge

6    Murphy wants to go beyond the facial claim.  And the

7    plaintiff's control, obviously, what claims they're bringing,

8    and they have limited it to just that facial claim.  But I

9    want to stress one other thing, so I really do think this is

10   outside D.V.D. for that reason.

11         But I do want to stress, Your Honor, that if you

12   ultimately are inclined to transfer it to Judge Murphy, and we

13   hope you will not, at a minimum you have the ability to insure

14   that something doesn't happen to our clients during that

15   transfer process.  And that's why I think today, as soon as

16   possible, you can tell the government, send something formal

17   to Ghana and ask whether Ghana will stop the transfer to their

18   home countries and/or bring them back to the U.S.

19         You can certainly do that.  The Supreme Court did in

20   *Abrego*, Chief Judge Boasberg did it in the Alien Enemies Act

21   cases, J.O.P., I think the could should want to do it, but it

22   doesn't appear they want to do it because they always intended

23   to have this circumvention.  But you can certainly tell them,

24   given all the facts, the preliminary facts before you, that in

25   order to preserve your jurisdiction, or Judge Murphy's, they

1    need to try and do that.  Let them come back and say no, Ghana

2    is intent on sending these people to torture or persecution.

3    I would be shocked if Ghana says that.  Hopefully Ghana

4    doesn't, but it may depend on whether the U.S. writes a clear

5    note, these people legally should not be sent to their home

6    countries.

7              THE COURT:  Ms. Perez, why can't I at least at a

8    minimum require the government to, obviously, the State

9    Department, the United States Government cannot tell Ghana

10   what to do, but to make it clear to the Ghanaian government

11   that these plaintiffs are not to be moved, and to request

12   assurances from the Ghanaian government that that won't

13   happen.  Ghanaian government can tell them to go pound sand,

14   but you're asking me to rely on -- you keep saying high-level

15   diplomatic assurances without any written agreement.  And

16   that -- those assurances are fly in the face of the actions

17   the Ghanaian government is actually taking.  So why can't the

18   U.S. Government do that?  What -- why can't I ask the

19   government to provide such a declaration?

20             MS. PEREZ:  Your Honor, I just want to clarify, I do

21   have a declaration that I will provide indicating that --

22   discussing issues with Ghana, talking about the diplomatic

23   note, and indicating that there are no other agreements with

24   Ghana.

25             THE COURT:  But when was that, because as of today

1    we're being told that the Ghanaian government is allowing, is

2    going to allow these plaintiffs to be moved.  So what Ghana's

3    told the U.S. Government in negotiating this agreement,

4    doesn't seem to be worth very much.  So when was this

5    assurance made?

6         MS. PEREZ:  Your Honor, again, the declaration that

7    I have was -- is discussing about the assurances that have

8    been or the communications that have been within the couple of

9    weeks in which the government of Ghana and the government of

10    United States were in negotiations.  The declaration doesn't

11    go into detail about what the negotiations were, but it

12    basically addresses the Court's concern in that there is no

13    other agreement and that the United States did receive a

14    diplomatic note that's what the declaration --

15         THE COURT:  Okay.  So why can't I ask the government

16    to remind Ghana of its assurances to say -- to basically

17    encourage Ghana not to move these individuals until a court

18    has had a chance to rule on their status and maintain

19    jurisdiction.  Why can't -- I know you can't order Ghana to do

20    anything, and I know this has diplomatic implications, but

21    given what's -- given your concession that Ghana appears to be

22    in -- not complying with its assurances, why can't I ask the

23    government for a declaration saying, yes, we will request that

24    Ghana not move these people or we have requested and Ghana

25    says no.  Why can't I ask for that?

1          MS. PEREZ:  Well, Your Honor, I'm not sure the Court

2    is familiar with what happened with Judge Moss a couple of

3    months ago, I believe it was in July.  We were in front of him

4    in that hearing.  In that case there were eight individuals

5    that were in Djibouti and who were actually part of the D.V.D.

6    class.  And they were going to be removed to South Sudan.  And

7    there was an emergency motion that Judge Moss heard on July

8    the 4th and we were on the phone until about 6:00 p.m. in the

9    evening.  He eventually ended up transferring that case to

10   Judge Murphy in D.V.D.

11         The relief sought in that case was very similar to

12   the relief that plaintiffs are seeking here.  The day before

13   the TRO was issued the Supreme Court had actually stayed the

14   D.V.D. injunction, which required certain procedures that the

15   government had to follow before removing an individual to a

16   third country.  The Court enjoined the preliminary injunction,

17   made the government follow certain procedures, we sort of

18   stayed that injunction to the Supreme Court.  The Supreme

19   Court stayed the injunction.  Thereafter there was a -- the

20   government sought to remove those eight individuals to South

21   Sudan and then there ensued the preliminary injuction -- the

22   TRO was filed.

23         In seeking clarification of the -- of the stay of

24   the preliminary injunction, the Supreme Court said that in

25   allowing the Courts to tell the executive what to do in

 1    matters of foreign and diplomatic relations is going to harm

 2    U.S. foreign policy.  And the Supreme Court clarified that the

 3    stay actually allowed -- that the stay of the supreme -- of

 4    the preliminary injunction allowed the United States to remove

 5    those individuals to South Sudan and those individuals were

 6    actually removed to South Sudan.

 7            And so that the Supreme Court has already said in

 8    not one, but two orders, that allowing a court to get into or

 9    be involved in matters of foreign relation, that it's really

10    within the (Indiscernible) of the executive, that that is

11    something the Court should not do.  And I do have the

12    decision, I think we cited the stay in the status report that

13    we filed with the Court yesterday.  And that is the reason why

14    we believe that the Court does not have the authority to even

15    tell the executive what to do with regard to issuing any sort

16    of notice or warning or any -- an order of any -- covering any

17    of it.

18            THE COURT:  All right.  Mr. Gelernt.

19            MR. GELERNT:  Yeah, Your Honor, a few things.  One I

20    just wanted to circle back to the *Ghamelian* case, I hope I'm

21    pronouncing that correctly, that Your Honor had brought up in

22    Maryland.  That case has different parts.  The part that was

23    sent to Judge Murphy was because that part was specifically

24    challenging whether there could be the procedure that the

25    government wants as a general matter.  But as I understand it,

the rest of it was not sent.  And I think to the government's
more -- Judge Moss's decision was specifically because those
individuals were D.V.D. plaintiffs and had to be brought --
were making the same claims as in D.V.D.  I haven't heard the
government talk about the specific claims in this case.  And I
think that's the difference.

          In terms of the government's general points and
platitudes about this is foreign affairs --

          THE COURT:  Let me just stop you.  What is the
effect of the D.V.D. stay on the class itself?  Can the class
take anymore members now?

          MS. PEREZ:  Yes, the class is still certified.

          THE COURT:  Okay.

          MS. PEREZ:  So what is stayed is the preliminary
injunction.  And so now what DHS is following is the March
guidance that plaintiffs are saying were not followed in this
case.  And again, the D.V.D. is a nationwide class and these
individuals, if anything, are members of that class.  And
plaintiff's counsel is trying to limit D.V.D.  We tried to
explain to Judge Murphy that each third-country removal is
different, right.  But Judge Murphy certified a nationwide
class of all third-country removals, not just one country or
two countries.  And also he -- D.V.D. is about notice and
opportunity to be heard and assurances, it's not just about
assurances, it's about the whole entire process.

1          So for plaintiff's counsel to say that D.V.D. is

2     very specific that is not true, D.V.D. is actually a -- you

3     know, it's a challenge to the whole process that the

4     government uses to remove an individual to a third country.

5     And it includes both the notices -- whether the notice is

6     appropriate, whether there's an opportunity to be heard, and

7     whether the assurances are reliable.

8          THE COURT:  All right.  Mr. Gelernt, why -- why

9     can't I send this to Judge Murphy and you ask Judge Murphy for

10    the same emergency relief you're asking me for.

11         MR. GELERNT:  Your Honor, let me.

12         THE COURT:  The class can take more members.

13         MR. GELERNT:  Let me take that question first and

14    then return to why I think the government is really not being

15    clear about what D.V.D. is about.

16         Your Honor, can send it to Judge Murphy.  I think

17    Judge Murphy may send it back to you and say, no, this is not

18    part of D.V.D.  As the government itself just described,

19    that's about general procedures, are the general procedures

20    okay.  Judge Murphy is not looking at is a particular

21    diplomatic assurance being violated with the acquiescence or

22    at the deliberate direction of the United States.

23         But if Your Honor wants to ask Judge Murphy, we

24    would implore you to do some kind of relief now, because by

25    the time we get Judge Murphy -- we're obviously, as Your Honor

noted in the beginning, we're on a Saturday afternoon -- by the time we reach Judge Murphy, by the time he gets up to speed on this, these individuals are going to be back in their home countries.  And the declaration we put in today from one of the -- he is going to be in serious, serious trouble in Nigeria.  There is no question about that.

So at a minimum if Your Honor's insisting on sending it to Judge Murphy, we ask that Your Honor tell U.S. Government to take steps immediately when we get off the phone to tell Ghana not to do anything.  There is no question Your Honor can do that.

The Supreme Court in *Abrego*, notwithstanding the government's platitudes about foreign affairs, specifically said the United States Government should take steps to facilitate their return.  That's where El Salvador was claiming they had an interest in these individuals in *Abrego Garcia*.  Ghana is not claiming any interest in these third countries.  They're simply saying we'll do the U.S. a favor for 90 days, these are West Africans.  Why is the U.S. refusing, knowing these individuals may be harm, to do the simple step to try and facilitate it while the case goes to Judge Murphy?

But I do want to take one more shot at saying why this is outside of D.V.D., the government has specifically said, as you just heard, it's about the class-wide procedure.

1    Judge Murphy cannot possibly look at every case and every
2    country.  It would just be impossible and it would be
3    impossible to get emergency relief.

4            This is about a very specific issue that's outside
5    of D.V.D., where it appears the government has said to Ghana,
6    please do us a favor, we can't send them directly to the
7    Gambia or to Nigeria, do us a favor and send them, or at a
8    minimum it's with the acquiescence, knowledge and acquiescence
9    of the government.  The government knows right now this is
10   going to happen and they're still fighting you saying we won't
11   do it.  I don't understand why the government is not doing it
12   without an order.  But certainly Your Honor can issue an order
13   saying do that.  What harm -- that's exactly what *Abrego*
14   *Garcia* said in the Supreme Court.  I would defy the government
15   to say the Supreme Court didn't say, please try to facilitate
16   the return of these individuals from El Salvador.

17           So that's, I think, where we are.  I do not think
18   Judge Murphy intends to deal with every emergency situation
19   where a particular country is violating the diplomatic
20   assurance and the government knows it.  If Your Honor's going
21   to send it, we implore you to try and do something right now
22   before these individuals end up in serious danger by Monday
23   morning.

24           THE COURT:  All right.  Thank you all.  I realize
25   that time is of the essence and I'll try and get something out

32

1        as soon as I can.  Thank you for gathering here.

2                Yes, Ms. Perez.

3                MS. PEREZ:  Yes, I just wanted to say something.

4        Last time when Judge Moss sent the case over to Judge Murphy,

5        it was on July the 4th.  And I believe he sent it over to

6        Judge Murphy around 4:30.  And Judge Murphy issued a decision

7        around 6:00, 6:30 that evening.  So Judge Murphy is -- Judge

8        Murphy certified a nationwide class because he wanted to

9        address this on a nationwide level.  And he has already

10       addressed these types of issues when it comes to South Sudan,

11       Mexico, Guatemala.  This is not his first rodeo.  This is not

12       his first -- first time addressing individual issues.  And

13       that's the reason why he certified the class.  And the class

14       definition is that big.

15               MR. GELERNT:  Your Honor I would just -- I know Your

16       Honor wants to get off and time is of the essence, but the

17       government knows very well that the issues that Judge Moss

18       sent to Judge Murphy were about the process and the exact same

19       issues that they were class members in D.V.D., existing class

20       members.  That's not really the issue.  The claims were

21       exactly in D.V.D.  Judge Murphy is not intending to go and

22       deal with emergency situations where the government knows --

23       and I just want to end with this, I wish the government would

24       say on the record why they do not want to ask Ghana, why the

25       U.S. Government itself is not outraged by the violation of

1    their own diplomatic assurance and are willing to have these

2    people go to persecution or torture.

3              So with that, Your Honor, thank you very much.

4              THE COURT:  Thank you.  All right.  Thanks everyone.

5    I'll try to get something out as soon as possible.  Appreciate

6    your making yourself available.  All right.  We're

7    adjourned.

8              MR. GELERNT:  Thank you, Your Honor.

9              (The proceedings were concluded at 3:46 p.m.)

10

11              I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
     record of proceedings in the above-entitled matter.

12

                     _____/s/_____
13                        Christine T. Asif
                         Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25

< Dates >.
February of
   11:9.
July  26:7,
   32:5.
March  11:2,
   28:15.
May  7:21.
.
.
< 0 >.
00 26:8,
   32:7.
.
.
< 1 >.
10004 1:29.
1050 1:34.
125 1:27.
1620 1:33.
17 2:22.
18 2:22.
18th 1:28.
.
.
< 2 >.
20001 1:48.
20036 1:35.
20044 1:43.
202 1:49.
2025 1:11.
25-3135 2:3.
25-3135-TSC
   1:6.
.
.
< 3 >.
3 33:9.
30 32:6,
   32:7.
333 1:47.
354-3247
   1:49.
3:00 p.m.
   1:13.
.
.
< 4 >.
4 32:6.
46 33:9.

4th 13:10,
   14:1, 16:13,
   26:8, 32:5.
.
.
< 6 >.
6 26:8, 32:7.
.
.
< 8 >.
868 1:42.
.
.
< 9 >.
90 13:15, 20:7,
   30:19.
_____/s/___
‾‾‾‾‾‾‾‾‾‾‾
   33:15.
.
.
< A >.
a-- 12:1.
A. 2:3, 2:25,
   4:2.
AAJC 1:32,
   2:10.
abide 7:13,
   7:17.
ability 6:22,
   23:13.
able 20:19.
above-entitled
   33:13.
Abrego 13:5,
   13:25, 14:24,
   15:13, 15:21,
   15:25, 16:5,
   17:10, 23:20,
   30:12, 30:16,
   31:13.
absolute
   16:11.
Absolutely
   12:8, 17:24,
   22:9,
   22:20.
according
   19:19.
ACLU 2:7, 2:12,

3:23.
acquiescence
   29:21,
   31:8.
Act 4:6, 13:10,
   15:5, 16:12,
   16:19, 17:22,
   18:12,
   23:20.
acting 7:22.
action 6:13,
   10:24, 11:4,
   22:12.
actions 19:12,
   24:16.
actual 7:12.
actually 24:17,
   26:5, 26:13,
   27:3, 27:6,
   29:2.
add 17:18,
   17:21.
address 12:5,
   12:9, 12:15,
   14:21, 15:3,
   32:9.
addressed
   10:24,
   32:10.
addresses
   25:12.
addressing
   3:23,
   32:12.
adduced 18:4.
adhere 9:13.
adjourned
   33:7.
Advancing 1:32,
   2:10.
affairs 15:10,
   28:8,
   30:13.
affidavit 14:3,
   14:6, 16:18,
   17:8,
   20:11.
Africa 13:15.
Africans 20:7,
   30:19.

afternoon 2:6,
   2:14, 2:16,
   2:18, 2:20,
   3:3, 3:22,
   30:1.
ago 20:19,
   26:3.
agree 3:16,
   4:19, 12:4.
agreed 4:15,
   9:10, 9:11,
   11:14.
agreement 3:14,
   4:22, 9:7,
   9:12, 9:13,
   10:1, 10:2,
   10:8, 11:16,
   18:2, 24:15,
   25:3,
   25:13.
agreements
   8:24,
   24:23.
Ahead 2:21.
air 7:9.
al 2:3.
Alien 13:10,
   15:5, 16:12,
   23:20.
allegations
   6:11.
allow 13:15,
   17:17,
   25:2.
allowed 27:3,
   27:4.
allowing 25:1,
   26:25,
   27:8.
almost 11:17.
already 3:4,
   4:4, 5:6,
   15:7, 16:23,
   16:24, 19:23,
   20:17, 20:23,
   27:7, 32:9.
American 1:26,
   14:22.
Americans 1:32,
   2:9.

and/or 23:18.
answer 10:14.
apologize
   17:15,
   20:18.
apparent 8:1,
   8:19.
appear 4:5,
   6:7, 7:20,
   23:1,
   23:22.
appearance
   2:8.
APPEARANCES
   1:20.
appears 2:20,
   5:4, 5:7,
   5:18, 5:23,
   7:3, 7:5,
   9:16, 25:21,
   31:5.
Appreciate
   33:5.
appropriate
   29:6.
arguing
   16:11.
argument
   17:14.
arguments
   15:9.
around 5:19,
   7:6, 19:4,
   32:6, 32:7.
Asian 1:32,
   2:9.
Asif 1:45,
   33:11,
   33:16.
aspect 10:25.
assaulted
   11:13.
assessment
   7:4.
assuage 10:8.
assume 20:1.
Assuming 6:10,
   18:23,
   19:5.
assurance

14:12, 17:1,
   19:7, 19:8,
   25:5, 29:21,
   31:20,
   33:1.
assured 4:21,
   5:11.
at-- 4:22.
authority 16:8,
   27:14.
available
   33:6.
Avenue 1:47.
aware 4:15,
   5:10, 9:19.
awareness
   5:24.
.
.
< B >.
back 5:6, 6:13,
   6:17, 8:12,
   9:1, 11:11,
   11:15, 12:17,
   13:19, 15:21,
   16:24, 17:5,
   17:6, 19:4,
   23:18, 24:1,
   27:20, 29:17,
   30:3.
background
   3:4.
Baker 21:9,
   21:10.
ball 21:7.
Baron 1:31,
   2:9, 14:18,
   17:17.
barring 3:10.
based 6:10,
   10:21,
   22:4.
basic 17:11.
basically
   25:12,
   25:16.
basis 19:13.
beginning
   30:1.
behalf 2:15,

2:17, 3:20.
believe 2:24,
   9:25, 10:18,
   26:3, 27:14,
   32:5.
belong 21:12.
better 11:25,
   16:15.
beyond 11:11,
   23:6.
big 32:14.
Boasberg 13:9,
   13:25, 14:22,
   14:23, 15:3,
   16:10, 17:10,
   23:20.
Box 1:42.
brief 17:21.
briefing 3:1,
   3:12.
bring 8:12,
   15:21, 17:6,
   23:18.
bringing 17:13,
   23:7.
Broad 1:27,
   18:21.
broaden 23:4.
broadens
   19:15.
brought 19:11,
   19:20, 27:21,
   28:3.
.
.
< C >.
C. 1:12, 1:48,
   9:22.
calling
   14:16.
camera 5:6,
   7:19, 10:4,
   10:6.
candid 11:25.
care 17:7.
cases 14:19,
   15:24, 19:11,
   19:23,
   23:21.
CECOT 15:13.

certain 26:14,
   26:17.
certainly 9:8,
   23:19, 23:23,
   31:12.
certification
   21:13,
   21:18.
certified
   28:12, 28:21,
   32:8,
   32:13.
certify
   33:11.
challenge
   18:21, 19:21,
   29:3.
challenging
   27:24.
chance 25:18.
Chief 13:25,
   14:21, 14:23,
   15:3, 17:10,
   23:20.
Christine 1:45,
   33:11,
   33:16.
circle 27:20.
Circuit 9:22,
   13:10, 14:1,
   16:13.
circumstances
   19:24.
circumvention
   23:23.
cited 27:12.
Civil 1:5,
   1:26, 2:3.
claim 14:12,
   22:24, 23:5,
   23:6, 23:8.
claiming 30:16,
   30:17.
claims 21:20,
   23:7, 28:4,
   28:5,
   32:20.
clarification
   26:23.
clarified

27:2.
clarify 9:25,
  24:20.
Class 10:24,
  11:4, 19:11,
  21:12, 21:17,
  26:6, 28:10,
  28:12, 28:17,
  28:18, 28:22,
  29:12, 32:8,
  32:13,
  32:19.
class-wide
  30:25.
clear 12:11,
  21:13, 24:4,
  24:10,
  29:15.
CLERK 2:2,
  2:13.
client 7:11,
  7:25, 10:2,
  20:20.
clients 3:24,
  22:23,
  23:14.
colleague
  17:24,
  20:8.
COLUMBIA 1:2.
comes 32:10.
coming 16:17.
communicate
  8:15.
communications
  25:8.
companion
  15:7.
complete 10:13,
  13:5.
complicated
  15:4.
comply 4:25.
complying
  25:22.
conceded
  16:7.
concern 10:8,
  25:12.
concerns 11:13,

11:14.
concession
  25:21.
concluded
  33:9.
concocted
  19:3.
confirmed
  10:1.
consequences
  9:14.
consequently
  3:18.
Constitution
  1:47.
constructive
  13:7.
contempt 12:19,
  15:19.
contradiction
  8:1.
contrast
  18:4.
contravention
  5:9.
control 6:1,
  6:2, 8:3,
  8:4, 13:5,
  13:8, 15:10,
  18:5, 22:2,
  23:7.
controlling
  13:17.
convention
  4:25.
conveyed
  7:23.
conveying
  9:9.
correct 5:1,
  5:2, 6:11,
  22:6,
  33:12.
correctly
  27:21.
counsel 2:4,
  3:6, 19:19,
  28:19,
  29:1.
countries 3:9,

3:10, 11:15,
  13:15, 14:14,
  19:4, 20:14,
  21:1, 23:18,
  24:6, 28:23,
  30:4,
  30:18.
country 4:3,
  4:5, 4:18,
  5:9, 8:14,
  10:22, 12:13,
  13:1, 13:20,
  15:10, 16:5,
  19:9, 20:9,
  20:21, 20:22,
  26:16, 28:22,
  29:4, 31:2,
  31:19.
country-by-coun
  t 21:14.
country-by-coun
  try 18:22,
  19:13,
  19:18.
couple 4:2,
  17:21, 20:19,
  25:8, 26:2.
course 16:10.
Courts 12:25,
  26:25.
covering
  27:16.
credibility
  10:18.
criminal
  15:21.
critical 13:12,
  15:15.
current 3:17.
custody 8:12,
  13:7.
cut 10:14.
.
.
< D >.
D.A., et al.
  1:5.
danger 16:20,
  31:22.
day 26:12.

days 13:15,
  20:7,
  30:19.
DC 1:35,
  1:43.
deal 31:18,
  32:22.
dealing 11:8.
decided
  21:11.
decides 22:3.
decision 14:25,
  17:11, 20:10,
  27:12, 28:2,
  32:6.
decisions
  14:25.
declaration
  2:24, 4:1,
  12:21, 13:2,
  13:23, 16:25,
  20:11, 20:22,
  24:19, 24:21,
  25:6, 25:10,
  25:14, 25:23,
  30:4.
declarations
  18:5,
  20:16.
Defendant 1:12,
  1:37, 3:15.
defendants
  2:13, 3:15.
definition
  32:14.
defy 31:14.
deliberate
  29:22.
delve 10:25.
Department
  1:41, 6:24,
  7:11, 24:9.
depend 24:4.
deported 16:2,
  16:3.
described
  29:18.
description
  21:18.
design 5:18,

7:5.
despite 5:3.
detail 25:11.
determination
  21:21,
  21:25.
DHS 10:22,
  28:15.
difference
  28:6.
different 13:6,
  21:7, 27:22,
  28:21.
differentiated
  15:14.
diplomat
  7:24.
direct 5:9.
direction
  29:22.
directly 19:4,
  31:6.
discovery
  20:2.
discussed
  3:4.
discussing
  24:22,
  25:7.
discussions
  4:23.
disingenuous
  9:4.
disobey 20:5.
dispositive
  21:14.
disputing 17:2,
  21:2.
distinct
  10:17.
District 1:1,
  1:2, 1:18,
  9:22,
  21:10.
Djibouti
  26:5.
doing 6:5,
  9:11, 22:11,
  31:11.
done 15:18,

15:19.
double 17:17.
down 12:10.
drilled
  12:10.
due 11:1.
during 23:14.
.
.
.
< E >.
earlier 2:25.
ECF 2:22.
effect 17:8,
  18:7, 21:25,
  22:5,
  28:10.
effectuate
  15:16,
  15:17.
eight 26:4,
  26:20.
either 23:4.
El 15:7, 15:11,
  15:13, 16:6,
  30:15,
  31:16.
Elianis 1:39,
  2:15.
emergency 2:22,
  3:7, 26:7,
  29:10, 31:3,
  31:18,
  32:22.
encourage
  25:17.
end 5:19, 7:6,
  31:22,
  32:23.
ended 26:9.
Enemies 13:10,
  15:5, 16:12,
  23:20.
engage 22:3.
enjoined
  26:16.
enough 18:12,
  20:1.
ensued 26:21.
entered 2:8,
  9:7.

entire 28:25.
equal 12:2,
  12:3.
equally
  12:12.
error 16:1.
Esquire 1:24,
  1:25, 1:31,
  1:39, 1:40.
essence 2:20,
  19:17, 20:1,
  31:25,
  32:16.
et 2:3.
evening 26:9,
  32:7.
eventually
  26:9.
everyone 2:18,
  33:4.
Everything
  15:11,
  20:5.
evidence 17:25,
  18:2, 20:1.
ex 7:19, 10:4,
  10:7.
exact 12:10,
  15:9,
  32:18.
Exactly 6:4,
  7:3, 12:9,
  13:24, 13:25,
  14:1, 16:4,
  18:24, 31:13,
  32:21.
example 6:13,
  20:18.
executive 9:24,
  26:25, 27:10,
  27:15.
exercising
  18:6.
exigency
  22:14.
existing
  32:19.
explain 5:14,
  28:20.
explicitly

9:23.
express 8:6.
expressed
  8:8.
expressing
  9:15.
extent 10:24.
.
.
< F >.
face 6:2, 8:19,
  24:16.
facial 19:21,
  23:6, 23:8.
facilitate
  12:17, 13:9,
  14:2, 15:8,
  15:16, 15:19,
  15:23, 30:15,
  30:21,
  31:15.
facilitation
  16:9.
fact 6:21,
  10:9, 11:2,
  21:3.
facts 16:16,
  16:17, 17:4,
  23:24.
familiar
  26:2.
favor 30:18,
  31:6, 31:7.
FCRR 1:45,
  33:11.
Federal 1:46.
few 27:19.
fighting
  31:10.
filed 4:1,
  26:22,
  27:13.
filing 3:6,
  22:11.
find 13:5,
  17:4,
  17:23.
finding 13:7.
fine 20:7.
finger 22:21.

first 3:2,
29:13, 32:11,
32:12.
fit 21:16,
21:17,
21:20.
flagrant
7:22.
flies 6:2.
Floor 1:28.
fly 24:16.
focusing
22:24.
follow 26:15,
26:17.
followed 11:2,
28:16.
following
28:15.
foregoing
33:12.
foreign 15:10,
27:1, 27:2,
27:9, 28:8,
30:13.
forgetting
14:10.
formal 17:6,
23:16.
forward 8:22.
four 17:1,
17:2.
frankly 9:16.
front 3:11,
11:22,
26:3.
frustrated
6:25.
frustrating
7:1, 7:2,
9:21.
frustration
11:6.
full 3:1, 5:24,
13:8.
.
.
< G >.
G-h-a-m-e-l-i-a
-n 21:10.

Gambia 5:6,
11:11, 18:9,
31:7.
game 21:7.
Garcia 13:6,
14:24, 15:21,
15:25, 16:5,
30:17,
31:14.
gather 16:16.
gathering
32:1.
gave 6:8,
8:16.
Gelernt 1:24,
2:6, 3:23,
11:18, 11:20,
11:21, 15:25,
18:16, 27:18,
29:8.
general 21:22,
27:25, 28:7,
29:19.
generally
23:1.
genuine 20:3.
genuinely
12:12.
gets 30:2.
getting 2:19,
5:8, 9:19,
14:25.
Ghamelian 21:9,
27:20.
Ghanaian 6:4,
7:13, 18:7,
20:5, 24:10,
24:12, 24:13,
24:17,
25:1.
give 8:25,
21:6, 23:4.
given 3:7,
6:14, 7:7,
8:20, 23:24,
25:21.
giving 13:23.
gotten 15:4.
granted 3:9.
Guatemala

32:11.
guess 3:2,
4:10.
guidance 11:2,
28:16.
.
.
< H >.
hands 7:9,
12:5, 14:7,
17:9.
happen 7:4,
7:8, 23:14,
24:13,
31:10.
happened
26:2.
happening 7:9,
11:17.
harm 13:13,
18:14, 27:1,
30:20,
31:13.
hear 10:12,
18:15,
21:7.
heard 26:7,
28:4, 28:24,
29:6,
30:25.
hearing 2:21,
3:3, 3:5,
3:11, 3:18,
4:14, 5:5,
12:24, 20:12,
26:4.
held 12:19.
helpful 20:2.
hereby 33:11.
high-level
4:23,
24:14.
home 3:9, 4:3,
4:5, 4:18,
5:9, 5:22,
5:23, 6:15,
8:14, 11:15,
12:25, 13:20,
14:14, 20:9,
20:13, 20:20,

20:22, 21:1,
23:18, 24:5,
30:4.
Honorable
1:17.
hope 23:13,
27:20.
Hopefully
24:3.
hours 3:5, 4:2,
20:19.
housekeeping
4:8.
hundred
15:18.
.
.
< I >.
ICE 18:9, 20:8,
20:12.
immediately
5:23, 7:8,
11:17, 12:24,
14:3, 14:16,
15:1, 30:9.
imminence
13:13.
impact 8:22.
implications
25:20.
implore 29:24,
31:21.
impossible
31:2, 31:3.
inclined
23:12.
includes
29:5.
including
18:6.
indicating
7:13, 7:16,
24:21,
24:23.
indication
23:5.
indifferent
13:16.
Indiscernible
27:10.

individual
  15:12, 19:23,
  19:24, 26:15,
  29:4,
  32:12.
individuals
  5:20, 6:22,
  8:12, 9:1,
  9:3, 10:21,
  11:1, 12:24,
  13:19, 14:4,
  20:8, 20:17,
  21:4, 25:17,
  26:4, 26:20,
  27:5, 28:3,
  28:18, 30:3,
  30:16, 30:20,
  31:16,
  31:22.
information
  6:23.
informed 3:7,
  18:8.
initials 4:2.
injuction
  26:21.
injunction
  26:14, 26:16,
  26:18, 26:19,
  26:24, 27:4,
  28:15.
insisting
  30:7.
instant
  18:11.
instruct 8:14,
  8:15.
insure 23:3,
  23:13.
intend 8:2,
  8:19,
  19:19.
intended 7:4,
  23:22.
intending
  32:21.
intends
  31:18.
intent 6:14,
  6:16, 7:23,

8:8, 24:2.
interest 30:16,
  30:17.
interfering
  9:20.
international
  6:20.
interrupter
  12:3.
introduce
  2:4.
involved
  27:9.
irreparable
  18:14.
issue 3:12,
  10:20, 18:18,
  31:4, 31:12,
  32:20.
issued 15:6,
  26:13,
  32:6.
issues 2:23,
  11:8, 17:19,
  24:22, 32:10,
  32:12, 32:17,
  32:19.
issuing 22:17,
  27:15.
iterations
  15:4.
itself 28:10,
  29:18,
  32:25.
.
.
< J >.
joint 2:21.
Judy 1:25,
  2:11.
July 26:3.
jurisdiction
  14:23, 16:19,
  17:23, 18:11,
  18:12, 23:25,
  25:19.
jurisdictional
  20:2.
Justice 1:32,
  1:41, 2:10.

.
.
< K >.
keep 24:14.
kind 4:17,
  22:3,
  29:24.
knowing 5:20,
  30:20.
knowledge
  31:8.
known 11:22.
knows 11:12,
  16:8, 31:9,
  31:20, 32:17,
  32:22.
KRISTI NOEM, et
  al. 1:10.
.
.
< L >.
lack 5:17.
laid 12:1,
  12:4.
Last 4:2, 5:7,
  13:7, 16:16,
  32:4.
law 17:11.
laws 6:20.
lawyer 7:25.
least 5:5, 5:6,
  13:19,
  24:7.
Lee 1:24, 2:6,
  3:23.
left 15:19,
  15:22.
legal 14:10.
legally 24:5.
less 13:8.
level 32:9.
Liberties
  1:26.
light 6:13,
  6:15, 6:16,
  7:24, 8:1.
lightly 7:5.
likely 18:5.
limit 28:19.
limited 23:8.

line 4:8.
location
  3:17.
Look 9:4,
  19:12, 19:18,
  22:14,
  31:1.
looking 19:9,
  29:20.
looks 22:11.
lose 18:23,
  19:6.
Love 4:8.
lovely 2:19.
lower 14:24,
  15:15.
.
.
< M >.
maintain 3:16,
  3:17,
  25:18.
Maryland 21:11,
  27:22.
matter 4:8,
  4:16, 16:2,
  21:23, 27:25,
  33:13.
matters 16:9,
  27:1, 27:9.
Matthew 1:40,
  2:16.
mean 10:14,
  19:10,
  22:14.
members 28:11,
  28:18, 29:12,
  32:19,
  32:20.
merely 22:4.
merits 13:6,
  16:8.
Mexico 32:11.
middle 3:2.
minimum 11:5,
  11:6, 12:18,
  18:10, 23:13,
  24:8, 30:7,
  31:8.
minute 14:20.

mistake 15:25,
  16:6, 16:7,
  16:11.
mixing 15:24.
moment 3:21.
Monday 4:5,
  6:15, 20:25,
  31:22.
months 26:3.
morning 20:24,
  31:23.
Moss 26:2,
  26:7, 28:2,
  32:4,
  32:17.
motion 26:7.
Motions Hearing
  1:16.
move 17:18,
  25:17,
  25:24.
moved 5:8,
  24:11,
  25:2.
moving 8:21,
  17:20.
MR. BARON 2:9,
  17:20.
MR. GELERNT
  2:6, 3:22,
  11:20, 11:24,
  12:8, 15:2,
  16:4, 17:15,
  18:17, 18:20,
  19:14, 20:16,
  21:19, 22:6,
  22:19, 27:19,
  29:11, 29:13,
  32:15,
  33:8.
MR. SEAMON
  2:16.
Ms 4:8, 4:11,
  7:11, 7:18,
  7:24, 10:12,
  12:6, 24:7,
  32:2.
MS. PEREZ 2:14,
  4:13, 4:20,
  5:2, 5:12,

6:6, 6:10,
  6:19, 8:21,
  9:18, 10:16,
  24:20, 25:6,
  26:1, 28:12,
  28:14,
  32:3.
MS. RABINOVITZ
  2:11.
.
.
< N >.
N. 1:39.
National 2:7.
nationwide
  11:4, 28:17,
  28:21, 32:8,
  32:9.
need 13:4,
  17:22, 20:10,
  24:1.
negotiating
  25:3.
negotiations
  25:10,
  25:11.
New 1:29.
next 4:21.
Nigeria 11:11,
  30:6, 31:7.
night 5:7.
No. 1:5, 2:22,
  13:24,
  25:25.
Noah 1:31,
  2:9.
Noem 2:3.
note 7:12,
  7:14, 7:19,
  7:20, 7:22,
  7:23, 10:3,
  12:21, 17:6,
  20:3, 24:5,
  24:23,
  25:14.
noted 17:24,
  30:1.
nothing 7:10,
  8:9, 9:1,
  9:14, 10:8,

17:25.
notice 2:22,
  3:7, 5:7,
  27:16, 28:23,
  29:5.
notices 29:5.
notified 3:6.
notwithstanding
  30:12.
NW 1:33,
  1:47.
NY 1:29.
.
.
< O >.
O. 1:42.
oath 12:22,
  12:23,
  20:4.
object 9:17.
objection
  14:6.
obligation
  5:25, 6:19,
  14:10,
  19:16.
obligations
  5:10, 5:19,
  7:6.
obviously 3:1,
  13:16, 23:7,
  24:8,
  29:25.
Office 2:7.
Official 1:46,
  18:7,
  33:17.
officials 18:9,
  20:12.
often 10:14.
Okay 4:10,
  4:21, 5:11,
  5:13, 25:15,
  28:13,
  29:20.
One 5:5, 5:6,
  8:11, 14:8,
  16:23, 18:6,
  18:8, 20:17,
  20:23, 21:21,

22:20, 23:1,
  23:9, 27:8,
  27:19, 28:22,
  30:4,
  30:23.
opportunity
  12:2, 12:3,
  28:24,
  29:6.
order 4:17,
  9:5, 10:22,
  12:16, 15:6,
  16:8, 16:20,
  17:3, 22:17,
  22:18, 23:3,
  23:25, 25:19,
  27:16,
  31:12.
ordered 18:3.
orders 12:25,
  14:15, 18:8,
  27:8.
original
  15:5.
outraged 12:12,
  14:11, 14:16,
  32:25.
outside 19:23,
  23:10, 30:24,
  31:4.
own 16:23,
  33:1.
.
.
< P >.
P. 1:40, 13:11,
  14:2, 15:12,
  16:13, 17:11,
  23:21.
p.m. 26:8,
  33:9.
PACER 2:23.
paper 7:21,
  19:1, 23:2.
part 16:6,
  26:5, 27:22,
  27:23,
  29:18.
parte 7:19,
  10:4, 10:7.

particular
10:23, 29:20,
31:19.
parties 3:11,
3:13, 3:14.
parts 27:22.
people 4:3,
12:13, 13:14,
14:12, 19:4,
24:2, 24:5,
25:24,
33:2.
percent
15:18.
Perez 1:39,
2:15, 4:11,
7:11, 7:18,
7:24, 10:12,
12:6, 24:7,
32:2.
permitted
22:12.
persecuted
14:13.
persecution
6:18, 24:2,
33:2.
person 16:23.
petitioners
2:8.
phone 14:16,
26:8, 30:9.
place 10:2,
15:22.
Plaintiff 1:7,
1:22, 2:4,
2:25, 3:5,
3:21, 5:6,
11:19, 16:24,
18:9, 19:19,
23:7, 28:19,
29:1.
plan 6:12,
7:5.
platitudes
28:8,
30:13.
please 2:4,
8:3, 13:19,
14:17, 17:12,

31:6,
31:15.
plenty 16:15.
pocket 21:4.
point 8:24,
12:6, 14:21,
14:25, 17:18,
22:17.
pointed 13:7,
18:25, 19:17,
20:23.
points 17:21,
28:7.
policy 27:2.
position 3:16,
8:25, 16:15,
16:16.
possible 19:14,
23:16,
33:5.
possibly
31:1.
potential
18:5.
potentially
22:8.
pound 24:13.
power 5:15,
5:17, 6:1,
6:2, 9:24.
preliminary
23:24, 26:16,
26:21, 26:24,
27:4,
28:14.
prepares
5:23.
preserve 16:19,
18:12,
23:25.
president
13:14, 13:18,
20:5.
pretty 21:13.
prevail
22:21.
principally
3:23.
prison 15:13.
probably

17:9.
problem 12:2,
12:4, 14:19,
14:21, 21:15,
21:16.
procedure
27:24,
30:25.
procedures
10:21, 26:14,
26:17,
29:19.
proceedings
16:2, 33:9,
33:13.
process 11:2,
23:15, 28:25,
29:3,
32:18.
pronouncing
27:21.
prosecution
15:22.
protections
3:10.
provide 7:14,
7:18, 10:4,
24:19,
24:21.
provided 10:6,
18:1.
public 4:8.
put 12:20,
12:21, 12:22,
12:23, 13:2,
14:6, 30:4.
puts 14:2,
17:8.
putting
22:20.
.
.
< Q >.
question 7:23,
8:18, 10:23,
11:3, 12:10,
17:10, 17:23,
18:10, 29:13,
30:6,
30:10.

questions
10:13,
10:17.
quo 3:14,
3:16.
quote 12:17.
.
.
< R >.
Rabinovitz
1:25, 2:11.
rather 22:11.
reach 11:11,
20:20,
30:2.
reached 4:22,
4:24.
read 2:21.
ready 5:8.
realize
31:24.
really 2:19,
11:14, 20:13,
21:14, 23:9,
27:9, 29:14,
32:20.
realm 9:19.
reason 13:12,
23:10, 27:13,
32:13.
reasons
16:23.
receive 6:24,
25:13.
received 2:24,
4:24, 5:7,
6:3, 11:1.
recently
3:24.
recognizing
14:5.
record 2:2,
2:5, 17:25,
32:24,
33:13.
reeks 10:10.
refuse 17:6.
refusing
30:20.
regard 27:15.

regarding 3:14,
18:2, 18:5.
regardless
19:5.
relation 17:21,
27:9.
relations 8:23,
9:19, 9:20,
27:1.
relevant 3:4.
reliable
29:7.
relief 22:22,
23:4, 26:11,
26:12, 29:10,
29:24,
31:3.
rely 24:14.
remember
15:13.
remind 25:16.
removal 3:10,
4:17, 16:1,
28:20.
removals
28:22.
remove 10:22,
18:9, 26:20,
27:4, 29:4.
removed 3:8,
16:5, 18:13,
26:6, 27:6.
removing
26:15.
repatriate
5:21, 8:9.
repatriated
8:8.
repeat 3:4.
repeatedly
13:14.
report 2:22,
27:12.
Reported
1:45.
Reporter 1:46,
33:17.
representation
6:3, 10:7,
20:15.

representations
5:3.
request 24:11,
25:23.
requested
25:24.
require 24:8.
required
26:14.
rest 28:1.
result 4:23,
9:16.
return 12:17,
13:9, 15:8,
29:14, 30:15,
31:16.
returned
4:18.
rodeo 32:11.
RPR 1:45,
33:11.
rule 25:18.
run 5:19,
7:6.
.
.
< S >.
safe 6:18.
Salvador 15:7,
15:11, 15:13,
16:6, 30:15,
31:16.
sand 24:13.
Saturday 2:19,
30:1.
saying 5:13,
7:10, 8:9,
12:19, 13:3,
13:17, 13:22,
14:3, 14:9,
14:16, 16:13,
16:21, 17:5,
19:25, 20:4,
21:7, 22:1,
22:15, 24:14,
25:23, 28:16,
30:18, 30:23,
31:10,
31:13.
says 5:22,

6:14, 24:3,
25:25.
scam 19:8.
scary 4:4.
scenario 10:9,
21:11.
scheme 19:3,
22:16.
Seamon 1:40,
2:17.
seeking 26:12,
26:23.
seem 21:2,
21:16, 21:17,
25:4.
seems 6:11,
12:10.
seen 9:8.
send 5:20,
5:22, 6:15,
13:19, 13:20,
14:3, 21:3,
23:16, 29:9,
29:16, 29:17,
31:6, 31:7,
31:21.
sending 7:21,
19:4, 22:18,
24:2, 30:7.
sends 17:5,
20:3.
sent 4:5, 5:19,
5:21, 5:23,
8:5, 8:13,
11:15, 12:13,
14:5, 14:14,
16:19, 16:24,
19:16, 20:10,
20:13, 20:21,
20:23, 21:5,
24:5, 27:23,
28:1, 32:4,
32:5,
32:18.
September 13
1:11.
serious 30:5,
32:12.
set 3:12,
3:18.

shocked 24:3.
shockingly
16:21.
shot 30:23.
shouldn't
11:15, 14:5,
17:13.
shows 16:25.
shy 22:15.
similar 21:11,
26:11.
simple 30:21.
simply 30:18.
single 19:9.
situation 7:1,
7:2, 9:21,
9:24, 10:10,
10:20, 10:21,
19:9,
31:18.
situations
32:22.
soil 14:22,
15:6.
somewhere
8:13.
soon 23:15,
32:1, 33:5.
Sorry 4:7, 5:5,
10:12, 11:21,
14:20, 16:25,
17:15.
sort 10:1,
17:11, 26:17,
27:15.
sought 26:11,
26:20.
South 26:6,
26:20, 27:5,
27:6,
32:10.
sovereignty
9:2.
speaking 4:11,
7:25,
11:18.
specific 7:5,
7:7, 18:23,
18:25, 28:5,
29:2, 31:4.

specifically
  3:25, 12:15,
  15:3, 27:23,
  28:2, 30:13,
  30:24.
speculative
  11:13.
speed 30:3.
St. 1:27.
Starting 2:3.
State 6:24,
  7:12, 24:8.
statement
  18:7.
statements
  18:1.
status 2:21,
  3:14, 3:16,
  3:21, 4:18,
  25:18,
  27:12.
stay 26:23,
  27:3, 27:12,
  28:10.
stayed 14:24,
  15:1, 15:20,
  22:17, 26:13,
  26:18, 26:19,
  28:14.
stenographic
  33:12.
step 12:14,
  12:18, 14:8,
  30:21.
steps 30:9,
  30:14.
stop 17:5,
  23:17,
  28:9.
stops 9:14.
Street 1:33.
stress 13:4,
  23:9,
  23:11.
strictly
  19:21.
strongly
  9:12.
struck 15:16.
subjected

18:14.
submitted 2:24,
  20:17,
  20:18.
substantial
  17:23,
  18:10.
Sudan 26:6,
  26:21, 27:5,
  27:6,
  32:10.
suggest 9:12,
  15:17.
Suite 1:34.
Supreme 9:22,
  13:24, 14:24,
  22:7, 23:19,
  26:13, 26:18,
  26:24, 27:2,
  27:3, 27:7,
  30:12, 31:14,
  31:15.
suspicious
  22:16.
sworn 13:23,
  14:2, 14:6,
  16:17, 18:1,
  18:4.
system 2:23.
.
.
< T >.
T. 1:45,
  33:16.
Tanya S.
  Chutkan
  1:17.
teaming
  17:17.
temporary
  17:3.
terms 9:13,
  28:7.
texted 3:24.
Thanks 2:19,
  33:4.
THE CLERK
  4:9.
Thereafter
  26:19.

they've
  20:24.
third 10:22,
  12:13, 16:5,
  26:16, 29:4,
  30:17.
third-country
  28:20,
  28:22.
though 3:9,
  3:11, 4:16.
three 3:5.
throwing 7:9.
tied 12:5,
  14:7, 17:9.
today 2:8,
  2:21, 3:18,
  20:18, 23:15,
  24:25,
  30:4.
tomorrow
  6:15.
took 10:22.
torture 5:1,
  6:18, 24:2,
  33:2.
tortured 11:13,
  14:13.
touch 19:20.
Transcript
  1:16,
  33:12.
transfer 11:6,
  12:18, 13:1,
  17:7, 22:4,
  23:12, 23:15,
  23:17.
transferred
  17:2.
transferring
  26:9.
tried 28:19.
TRO 26:13,
  26:22.
trouble 30:5.
true 29:2.
try 14:9,
  16:20, 16:22,
  17:12, 22:12,
  22:19, 24:1,

30:21, 31:15,
  31:21, 31:25,
  33:5.
trying 5:5,
  5:14, 16:23,
  28:19.
turned 8:5.
Two 3:5, 10:17,
  15:14, 15:24,
  18:4, 27:8,
  28:23.
types 32:10.
.
.
< U >.
ultimately
  15:21, 22:3,
  22:7,
  23:12.
understand
  6:24, 9:21,
  11:5, 14:10,
  14:11, 16:22,
  22:14, 27:25,
  31:11.
understanding
  8:7, 8:21.
Understood
  18:20.
Union 1:26.
unquote
  12:17.
unreviewable
  10:19.
until 25:17,
  26:8.
unwritten
  11:16.
uses 29:4.
using 19:3.
.
.
< V >.
versus 2:3,
  21:9,
  21:10.
view 8:23.
violated 17:1,
  19:7,
  29:21.

violating 6:8,
  9:12, 19:2,
  31:19.
violation 5:24,
  7:22, 8:16,
  8:19,
  32:25.
visited 4:3,
  20:20,
  20:25.
vs 1:8.
.
.
< W >.
wanted 17:17,
  27:20, 32:3,
  32:8.
wants 9:17,
  11:8, 13:20,
  17:7, 21:5,
  23:6, 27:25,
  29:23,
  32:16.
warning
  27:16.
Washington
  1:12, 1:35,
  1:43, 1:48.
ways 9:9.
weeks 25:9.
West 13:14,
  20:7,
  30:19.
whether 10:20,
  11:1, 11:2,
  11:12, 12:6,
  18:18, 18:21,
  19:5, 21:13,
  23:17, 24:4,
  27:24, 29:5,
  29:6, 29:7.
whoever 3:20.
whole 10:9,
  22:15, 28:25,
  29:3.
will 3:23, 4:5,
  4:10, 4:11,
  6:18, 6:23,
  7:18, 8:22,
  9:13, 11:11,

11:12, 12:19,
  14:12, 17:2,
  17:4, 19:18,
  20:25, 22:9,
  23:13, 23:17,
  24:21,
  25:23.
willing 33:1.
wish 32:23.
within 4:1,
  21:17, 21:20,
  25:8,
  27:10.
without 13:22,
  24:15,
  31:12.
words 22:10.
worth 7:20,
  19:1, 23:2,
  25:4.
writes 24:4.
Writs 16:18,
  17:22.
written 7:21,
  19:1, 23:2,
  24:15.
.
.
< Y >.
year 11:9.
years 22:8.
yesterday 3:3,
  3:5, 4:14,
  9:25, 18:3,
  27:13.
York 1:29.
yourself
  33:6.
yourselves
  2:4.