# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

D.A., T.L., I.O., D.S., and K.S.;

      *Plaintiffs,*

v.

KRISTI NOEM, Secretary of Homeland Security, *et al.,*

      *Defendants.*

Civil Action No. 1:25-cv-03135

**DEFENDANTS' MOTION TO DISMISS**

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants, Kristi Noem, *et al.*, move to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' removal claims (Counts I-V) are not redressable by this Court and therefore Plaintiffs lack standing to bring them. Additionally, Plaintiffs are already litigating their third country removal claims in *D.V.D. v. DHS*, No. 1:25-cv-10676 (D. Mass.), a mandatory class action lawsuit, and this lawsuit is duplicative of the claims Plaintiffs are already pursuing in *D.V.D.* as class members. Furthermore, the Supreme Court has already determined that Plaintiffs are not presently entitled to relief. Moreover, even if Plaintiffs could demonstrate standing and were not already members of a mandatory class action, their claims should still be dismissed for lack of jurisdiction because they are barred by numerous provisions of the Immigration and Nationality Act (INA). Finally, Plaintiffs fail to state a valid claim under the Freedom of Information Act (FOIA) (Count VI).

Defendants base this motion on the attached memorandum of law in support, citations herein to pleadings and filings in this matter, and any oral argument the Court may request.

DATED: January 5, 2026                    Respectfully submitted,

                                          BRETT A. SHUMATE
                                          Assistant Attorney General

                                          ELIANIS N. PEREZ
                                          Assistant Director

                                          MARY L. LARAKERS
                                          Senior Litigation Counsel

                                          /s/ *Matthew P. Seamon*
                                          MATTHEW P. SEAMON
                                          (CA Bar # 309249)
                                          Senior Litigation Counsel
                                          U.S. Department of Justice, Civil Division
                                          Office of Immigration Litigation
                                          P.O. Box 868, Ben Franklin Station
                                          Washington, DC 20044
                                          (202) 598-2648
                                          (202) 305-7000 (facsimile)
                                          Matthew.Seamon2@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

D.A., T.L., I.O., D.S., and K.S.;

      *Plaintiffs,*

v.

KRISTI NOEM, Secretary of Homeland
Security, *et al.,*

      *Defendants.*

Civil Action No. 1:25-cv-03135

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

"[W]hen [the Supreme] Court issues a decision, it constitutes a precedent that commands respect." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. —, 2025 WL 2415669, at *4 (U.S. Aug. 21, 2025) (Gorsuch, J., concurring in part and dissenting in part). This includes stay decisions, which "squarely control[]" in "like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

Plaintiffs' entire Complaint is a misguided attempt to circumvent an order from the Supreme Court in *D.V.D.*—which is plainly a "like case[]"—and impermissibly interfere with the Executive Branch's plenary authority to conduct the nation's relations with foreign governments. As Defendants explained in their prior briefing, *see* ECF No. 33, Plaintiffs were removed in accordance with the third-country removal procedures that the Supreme Court in *D.V.D.* permitted to take effect pending litigation over their sufficiency and legality. Pursuant to those procedures, Defendants secured the appropriate diplomatic assurances regarding Ghana's treatment of those aliens. Those assurances are not reviewable and even if they were, Plaintiffs' claims here are effectively challenging *Ghana's* compliance with those assurances. But such claims provide no basis for judicial relief. Defendants complied with the applicable procedures; binding precedent precludes the court from second-guessing the government's determination that a foreign state's assurances are sufficient and reliable; the removals were thus entirely lawful; and the Court obviously cannot grant any relief against Ghana. Accordingly, the Court should dismiss Plaintiffs' Complaint. Alternatively, the case should be transferred to the *D.V.D.* court.

## PROCEDURAL HISTORY

Plaintiffs are five aliens with final orders of removal who were removed to Ghana on or around September 5, 2025. They are not citizens or nationals of Ghana, and Ghana was not specifically designated as a country of removal during their removal proceedings. They are

therefore all class members in the certified nationwide Rule 23(b)(2)[1] class in *D.V.D. v. DHS,* No. 1:25-cv-10676 (D. Mass.).[2] Indeed, *D.V.D.* class counsel have indicated that these five Plaintiffs are members of the class. *See D.V.D. v. DHS*, No. 1:25-cv-10676, ECF No. 233-7 (D. Mass Dec. 8, 2025). On April 18, 2025, the district court in the District of Massachusetts entered a classwide preliminary injunction requiring, *inter alia,* written notice of the country to which Immigration and Customs Enforcement (ICE) seeks to remove the alien and an opportunity to raise a fear-based claim. It did so after finding that the Department of Homeland Security's (DHS) March 30, 2025 Guidance Regarding Third Country Removals (March Guidance) was constitutionally insufficient. Specifically, the district court found that the blanket diplomatic assurances the March Guidance relies upon do not satisfy due process because they are not individualized and "offer no protection against either torture by non-state actors or chain refoulment, whereby the third country proceeds to return an individual to his country of origin." *D.V.D.,* 778 F. Supp. 3d at 390 (citing the plaintiffs' complaint discussing chain refoulment). The Court also held that the March Guidance was insufficient because it did not provide sufficient notice and opportunity for class members to be heard regarding any fear of return to the third country. *Id.*

---

[1] "Multiple courts of appeal have approved the practice of staying a case, or dismissing it without prejudice, on the ground that the plaintiff is a member of a parallel class action." *Wynn v. Vilsack,* No. 3:21-CV-514-MMH-LLL, 2021 WL 7501821, at *3 (M.D. Fla. Dec. 7, 2021) (collecting cases) (internal quotations omitted). As the Eighth Circuit stated, "[a]fter rendition of a final judgment, a class member is ordinarily bound by the result of a class action. If a class member cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." *Goff v. Menke,* 672 F.2d 702, 704 (8th Cir. 1982).

[2] The *D.V.D.* class is defined as: "All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceeding as a country to which the individual would be removed." *D.V.D. v. United States Dep't of Homeland Sec.,* 778 F. Supp. 3d 355, 378 (D. Mass. 2025).

The Government appealed and sought a stay of the preliminary injunction before the First Circuit Court of Appeals. After the First Circuit denied the Government's request for a stay, the Government applied for a stay of the preliminary injunction in the Supreme Court. *DHS v. D.V.D.,* Application for a Stay, 24A1153 (May 2, 2025); *see* ECF No. 33-1. In its motion, the Government argued, *inter alia,* the following:

1. The district court lacked jurisdiction to consider Plaintiffs' claims under 8 U.S.C. § 1252(a)(4), (a)(5), (b)(9), (g) and Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA).

2. The district court's classwide injunction enjoining the third country removal statute (8 U.S.C. § 1231) violated 8 U.S.C. § 1252(f)(1).

3. The March Guidance satisfies the Constitution despite Plaintiffs' argument that it does not provide sufficient procedures to comport with the Due Process Clause and argument that the March Guidance does not adequately protect Plaintiffs from chain refoulment.

4. The preliminary injunction is causing irreparable harm to the Government's foreign relations with countries with whom it is seeking to negotiate third country removals.

*Id.*

On June 23, 2025, the Supreme Court granted the requested stay in its entirety as to both named Plaintiffs and classwide relief. *DHS v. D.V.D.,* 145 S. Ct. 2153 (2025). That same day, despite the Supreme Court's stay, the district court nonetheless purported to enforce its since-stayed injunction as to eight class members in DHS custody in Djibouti. *D.V.D.,* ECF No. 176 (June 23, 2023). It ordered the Government to carry out the procedures the Supreme Court found

the district court was precluded from requiring. *Id.* The Government immediately moved to clarify

the Supreme Court's stay. *DHS v. D.V.D.*, Motion for Clarification, 24A1153 (June 24, 2025).

On July 3, 2025, the Supreme Court granted the Government's motion. *Dep't of Homeland*

*Sec. v. D.V.D.,* 145 S. Ct. 2627 (2025). The Supreme Court held that their "June 23 order stayed

the April 18 preliminary injunction in full" and therefore the district court could not "enforce an

injunction that [their] stay rendered unenforceable." *Id.* at 2629; *see also N.I.H. v. American Public*

*Health Assn.,* Order on Application for Stay, 25A103 (August 21, 2025) (Gorsuch, J., concurring)

(criticizing the district court's efforts to enforce the already-stayed preliminary injunction, and

stating that the Supreme Court's clarification order "should have been unnecessary" in light of

"the hierarchy of the federal court system created by the Constitution and Congress.").

On July 4, 2025, the eight aliens in custody in Djibouti filed a complaint and motion for

temporary restraining order in the district court for the District of Columbia. They argued that their

removal was unlawful under the Fifth, Sixth, and Eighth Amendments. The complaint alleged that

DHS had not followed the March Guidance and that plaintiffs were at risk of being subject to chain

refoulment. *Phan v. DHS,* No. 25-cv-2147, ECF No. 1 at ¶¶ 97-100 (D.D.C. July 4, 2025). Judge

Moss, recognizing that plaintiffs were attempting to engage in improper claim splitting, transferred

the case to Judge Murphy in the District of Massachusetts. *Phan,* Minute Order (July 4, 2025).

Judge Murphy denied the Temporary Restraining Order and the eight aliens were removed to

South Sudan. *Phan v. DHS,* 1:25-cv-11910, ECF No. 8 (D. Mass. July 4, 2025).

Despite the Supreme Court's order staying the *D.V.D.* injunction requiring additional

procedures prior to third country removal, numerous *D.V.D.* class members have filed individual

habeas petitions seeking the *same relief* stayed by the Supreme Court. Numerous courts have

appropriately dismissed those petitions due to the Supreme Court's stay of the preliminary

injunction. *See, e.g.*, *Ghamelian v. Baker*, No. 25-cv-02106-SAG, 2025 WL 2049981, at *3 (D. Md. July 22, 2025), *reconsideration denied*, 2025 WL 2074155 (D. Md. July 23, 2025) (denying relief because of petitioner's status as a D.V.D. class member); *I.V.I. v. Baker*, No. 25-cv-1572-JKB, 2025 WL 1519449, at *2 (D. Md. May 27, 2025) ("Even stripped of any reference to the District of Massachusetts' order, these claims are the same as (or substantially related to) the class claims being litigated in that district." (citation omitted)); *Tanha v. Warden, Baltimore Det. Facility*, No. 1:25-cv-02121-JRR, 2025 WL 2062181, at *5 (D. Md. July 22, 2025) ("The court finds that Petitioner is a member of the D.V.D. Class."); *Sanchez v. Bondi*, No. 1:25-cv-02287-CNS, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) ("[B]ecause Mr. Sanchez is a member of D.V.D.'s Rule 23(b)(2) class, he has failed to show a likelihood of success on the merits of his claim."). Other courts have disregarded a binding Supreme Court order and Rule 23(b)(2) to issue individual injunctions requiring additional procedures prior to third country removal. *See, e.g.*, *Nguyen v. Scott*, 2025 WL 2419288, at *20–21 (W.D. Wash. Aug. 21, 2025) (holding that petitioner's ability to seek relief related to third-country removal was not impacted).

On September 12, 2025, Plaintiffs filed a Motion for a Temporary Restraining Order (ECF No. 2) and an Emergency Motion for Interim Relief (ECF No. 18). In those Motions, Plaintiffs argued that "Defendants' practice of removing Plaintiffs to Ghana [a third country] without either meaningful notice or opportunity to be heard is arbitrary and capricious and not otherwise in accordance with law." ECF No. 2-1 at 6. Plaintiffs also sought an order requiring that the Government "facilitate Plaintiffs' return to the custody of the United States." ECF No. 2 at 1. On September 15, 2025, this Court denied Plaintiffs' motions. ECF No. 41. The Court concluded that it "cannot grant Plaintiffs the relief they seek because Plaintiffs have not met their burden to establish that this court has jurisdiction to order such relief." *Id.* at 5. Specifically, the Court

concluded that it lacked jurisdiction to "order the U.S. government to order a foreign government to take any action[.]" *Id.* at 15. The Court further rejected Plaintiffs' argument that it had jurisdiction pursuant to the All Writs Act ("AWA"), 28 U.S.C. § 1651. *Id.* at 13 ("[T]he AWA is not necessarily a freestanding grant of jurisdiction.").

Plaintiffs' Complaint seeks the same kinds of relief that Plaintiffs already sought—and this Court rejected—in their previous motions. Plaintiffs' Complaint—filed by five *D.V.D.* class members—asks this Court to issue relief emanating from what Plaintiffs allege was an unlawful third country removal. As in *D.V.D.,* Plaintiffs assert that "Defendants have violated Plaintiffs' statutory, regulatory, and constitutional rights" and ask this Court to declare that Defendants have "a mandatory duty to provide Plaintiffs with meaningful notice and opportunity to present a fear-based claim to an immigration judge prior to deportation to Ghana [a third country]." Compl. at 17; *D.V.D.,* 778 F. Supp. 3d at 369 ("Plaintiffs challenge Defendants' policy or practice of failing to provide notice and an opportunity to be heard prior to removal to a country that was not designated in their removal orders, which Plaintiffs allege violates the INA, FARRA, regulations implementing the two statutes, and the Due Process Clause of the Fifth Amendment."). Also, as in *D.V.D.,* Plaintiffs seek an order requiring that the Government "immediately facilitate the return of Plaintiffs to the United States and provide them with written notice and a meaningful opportunity to present a fear-based claim." Compl. at 17; *see D.V.D.,* 1:25-cv-10676, ECF No. 1 at 36-37 (D. Mass).

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Davis v. Sarles,* 134 F. Supp. 3d 223, 226 (D.D.C. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)). Because subject matter

jurisdiction implicates the court's power to hear a claim, a court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Davis*, 134 F. Supp. at 226 (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)). *See Manzoni v. Evans*, Civ. A. No. 01-0189 (EGS), 2002 U.S. Dist. LEXIS 27258, at *7 (D.D.C. Sep. 16, 2002) ("[T]his Court clearly has a duty to determine its own jurisdiction." (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986)). A court "may consider [] materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Naegele v. Albers*, 110 F. Supp. 3d 126, 139 (D.D.C. 2015) (internal citation omitted).

A party may move under Rule 12(b)(1) to dismiss an action for lack of subject-matter jurisdiction. *Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017). Under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 131 (D.D.C. 2019). At the motion to dismiss stage, "complaints…are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). Lenient constructions and favorable inferences, however, do "not extend to saving a complaint that lies outside of this Court's jurisdiction." *Conerly v. United States*, 137 Fed. Cl. 140, 142 (2018).

## II.    Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though a court must credit a

complaint's factual allegations, it need not accept as true a plaintiff's "conclusory allegations" or "legal conclusions" drawn from the facts. *Air Excursions LLC v. Yellen*, 66 F.4th 272, 278 (D.C. Cir. 2023). The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

Plaintiffs' Complaint must be dismissed for lack of subject matter jurisdiction because Plaintiffs lack standing. Their claims cannot be redressed by this Court and the extraordinary relief they seek would violate the separation of powers by inserting the judiciary into sensitive issues of foreign affairs. *None* of the Plaintiffs are in the actual or constructive custody of Defendants, and as this Court has already concluded, it irrefutably lacks jurisdiction to "order the U.S. government to order a foreign government to take any action[.]" ECF No. 41 at 15. Furthermore, to the extent that Plaintiffs seek to second-guess the adequacy of the diplomatic assurances the Government obtained from Ghana, that claim is squarely foreclosed by binding precedent from both the D.C. Circuit and the Supreme Court, and it is well-established that diplomatic assurances are not judicially reviewable.

Even setting aside these clear issues of redressability, Plaintiffs' claims are foreclosed by a binding order from the Supreme Court and numerous jurisdictional bars in the Immigration and Nationality Act (INA). Plaintiffs are members of the certified class in *D.V.D. v. DHS,* 1:25-cv-10676 (D. Mass.), and their claims challenging the Government's third country removal procedures are already being litigated in the District of Massachusetts and in the First Circuit Court of Appeals. *See D.V.D. v. DHS,* Nos. 25-1393, 25-1631 (1st Cir.). Furthermore, the Supreme Court has already determined the proper interim status quo for *D.V.D.* class members while that litigation unfolds. Its *D.V.D.* decision thus "squarely controls" this "like case[]." *Boyle*, 145 S. Ct. at 2654.

8

This lawsuit represents Plaintiffs' attempt to circumvent the Supreme Court's stay order by seeking relief from a different District Court. That is forbidden by the most basic principles of civil procedure. And their efforts to evade a clear directive from the Supreme Court and insert this Court into foreign relations threatens a constitutional crisis. The Supreme Court has already determined the appropriate status quo for members of the *D.V.D.* class and determined that the balance of equities tip in favor of the Government. For all of these reasons, Plaintiffs' Complaint should be dismissed.

## I.    Plaintiffs' Removal Claims Must Be Dismissed Because Their Alleged Injury is Not Redressable.

As Plaintiffs concede, they are not in the actual or constructive custody of the United States. *See* Compl. at ¶¶ 4-8 (alleging that, at the time the Complaint was filed, Plaintiffs were in the custody of the Republic of Ghana or located in The Gambia). Accordingly, this Court lacks the power to grant Plaintiffs the relief they seek—an order "prevent[ing] their unlawful transfer to countries from which they have been granted withholding of removal under the INA and deferral of removal under CAT," Compl. at 4, or directing the Government to "immediately facilitate the return of Plaintiffs to the United States," *id.* at 17. *See., e.g.*, *In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 132 (D.D.C. 2010), *aff'd sub nom. Chaman v. Obama*, No. 10-5130, 2012 WL 3797596 (D.C. Cir. Aug. 10, 2012) (holding the court has no authority over foreign governments to redress petitioners' claims, as such their claims are moot); *Al Joudi v. Bush,* 2008 WL 821884, at \*1 (D.D.C. Mar. 26, 2008) (finding injuries are not redressable if they are "totally dependent upon the actions of a nonparty sovereign authority beyond the control of this Court."). Among other things, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). When "existence of one or more of the essential

elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

First, this Court cannot issue an order requiring the Government to compel Plaintiffs' return to the United States or take any specific diplomatic action regarding Plaintiffs. Such an extraordinary order would violate the separation of powers by inserting the judiciary into sensitive issues of foreign affairs. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (an order to "effectuate" an alien's return from the custody of a foreign nation went too far, and ordering the district court to clarify its order "with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs"). Matters of foreign affairs are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). The President's power to speak for the country "in the field of international relations" is both "plenary and exclusive." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936).

Moreover, it is completely speculative that Ghana—or any other foreign government— would release Plaintiffs upon a request from the United States. In anticipating that the United States would be able to regain custody simply by asking, mere "guesswork" is all Plaintiffs have. *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665–66 (D.C. Cir. 2025). Plaintiffs have no evidence to the contrary, so any redress is speculative. It is simply beyond the scope of this Court's power to direct the actions of a foreign government. *See Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009) ("Judicial inquiry into a recipient country's basis or procedures for prosecuting or

detaining a transferee from Guantanamo would implicate not only norms of international comity but also . . . separation of powers principles."). Moreover, this remedy would intrude on the President's Article II powers, which "authorize[] the Executive to engag[e] in direct diplomacy with foreign heads of state and their ministers," *Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015). The Supreme Court has "taken care to avoid 'the danger of unwarranted judicial interference in the conduct of foreign policy.'" *Biden v. Texas*, 597 U.S. 785, 805 (2022). Even to ask the Government to broker such a deal would significantly interfere with the President's core foreign affairs responsibilities. And there is no basis for concluding that such efforts would likely bear fruit.

Plaintiffs' claims also suffer from another insurmountable justiciability hurdle: they raise claims that the federal Judiciary lacks authority to entertain. The crux of Plaintiffs' claim is a desire to second-guess the adequacy of the diplomatic assurances the Government obtained from Ghana. But this entire enterprise is squarely foreclosed by binding precedent from both the D.C. Circuit and the Supreme Court, and it is well-established that diplomatic assurances are not judicially reviewable. "The Judiciary is not suited to second-guess such determinations—determinations that would require federal courts to pass judgment on foreign justice systems and undermine the Government's ability to speak with one voice in this area." *Munaf v. Geren*, 553 U.S. 674, 702 (2008). As a result, *"*the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba,* 561 F.3d at 514-16. Instead, "*Munaf* precludes the district court from barring the transfer of a [party] on the ground that he is likely to be tortured or subject to further prosecution or detention in the recipient country." *Id.* at 516. This Court simply cannot review Ghana's diplomatic assurances or second-guess the Government's determination that those assurances are credible. Accordingly, the Court cannot redress Plaintiffs' alleged injury.

Plaintiffs' counterarguments are unavailing. Because Plaintiffs were either in The Gambia or in Ghanaian custody at the time of the filing of the Complaint, this case is nothing like the cases Plaintiffs reference in which courts entered interim relief to prevent the transfer or removal of individuals who were in the custody or control of the United States at the time the lawsuit was filed. *See, e.g.*, *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) (enjoining removal of group of immigrant detainees until constitutional claims could be heard on merits); *Ozturk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (ordering the return of an immigration detainee from Louisiana to Vermont); *Perez Parra v. Castro*, 765 F. Supp. 3d 1241, 1243 (D.N.M. 2025) (temporarily enjoining the transfer of petitioners to Guantanamo Bay); *Arostegui-Maldonado v. Baltazar*, No. 25-cv-2205, 2025 WL 2280357, at *16 (D. Colo. Aug. 8, 2025) (enjoining an immigration detainee's transfer out of the District of Colorado during the pendency of his habeas action).

Moreover, as discussed below, this case is clearly distinguishable from the cases where courts have ordered the Government to facilitate an individual's return to the United States. As Plaintiffs have acknowledged, aliens "*who prevail in litigation challenging their removal* 'can be afforded effective relief by facilitation of their return[.]'" ECF No. 32 at 5 n.2 (emphasis added) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Here, Plaintiffs ask this Court to put the cart before the horse: order the Government to "facilitate" particular arrangements with a foreign nation for the benefit of an alien *before* there has been any finding that the alien's removal was unlawful or otherwise erroneous.[3] And as this Court has repeatedly noted, the cases upon which Plaintiffs principally rely involved situations where the Government had *conceded* that the alien's removal had been erroneous. *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 507 n.3 (D. Md. 2025)

_____

[3] And, for the reasons explained below, Plaintiffs' claims challenging the propriety of their removals to Ghana must be brought, if at all, as part of the *D.V.D.* litigation in the District of Massachusetts.

(order to facilitate alien's return to the United States where an "administrative error" led to his removal to El Salvador); *Melgar-Salmeron v. Bondi*, No. 23-7792, Doc. 49 (2d. Cir. June 25, 2025) (order to facilitate alien's return to the United States where he had been "improperly sent to El Salvador"); *see also* ECF No. 41 at 15 ("Here, unlike Abrego Garcia's case, Defendants do not concede that Plaintiffs were improperly removed to Ghana—to the contrary, they argue that Plaintiffs were properly sent there pursuant to an agreement with Ghana, which agreed to take them."). The Government maintains that Plaintiffs' removals to Ghana were lawfully executed pursuant to DHS's statutory third country removal authority under 8 U.S.C. § 1231(b) and the March Guidance. Furthermore, their removals were entirely consistent with not one but two binding decisions from the Supreme Court. *Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2153 (2025); *Dep't of Homeland Sec. v. D.V.D.,* 145 S. Ct. 2627 (2025).

## II.  Plaintiffs' Claims are Indistinguishable from those in *D.V.D.* and Should be Dismissed.

To the extent this Court does not dismiss Plaintiffs' removal claims due to lack of standing, it should dismiss them because Plaintiffs are members of the certified class in *D.V.D. v. DHS* and their third country removal claims are already being litigated in that case.[4] Each of the first-to-file factors favor dismissal.

"Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided." *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975). Thus, it is well-established that "district courts have the discretion to stay or dismiss a pending suit when confronted with parallel litigation of factually related cases filed in two separate forums." *Furniture Brands Int'l, Inc. v. United States ITC*, 804 F. Supp. 2d 1, 3-4 (D.D.C. 2011). While

---

[4] Alternatively, the Court could transfer Plaintiffs' claims to Judge Murphy.

there is no hard-and-fast rule, "[a]s between federal district courts … the general principle is to avoid duplicative litigation[,]" *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976), and "[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980).

When deciding whether to dismiss, courts consider whether the case under consideration was filed second. They then "consider whether the two cases bear substantial overlap in (1) the parties and (2) the issues or claims." *Wakaya Perfection, Ltd. Liab. Co. v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1126 (10th Cir. 2018); *Hilton Hotels Corp. v. Weaver*, 325 F.2d 1010 (D.C. Cir. 1963) (affirming dismissal of a second-filed case presenting "issues of fact and law virtually identical" to the first and involving "substantially the same" parties). "After determining the sequence and similarities in the cases, 'court[s] must also determine whether any equitable considerations … merit not applying the first-to-file rule in a particular case.'" *Wakaya*, 910 F.3d at 1126 (quoting *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)). All four of these factors favor deference to the first-filed action (*D.V.D.*) and dismissal of the second-filed action (*D.A.*).

    **a. The D.V.D. Litigation Preceded the D.A. Suit, and Plaintiffs Cannot Opt Out of D.V.D.**

In determining which case was filed "first[,]" courts look to whether another court first obtained jurisdiction over the parties and the issues. *Speed Prods. Co. v. Tinnerman Prods.*, 171 F.2d 727, 730 (D.C. Cir. 1948). As such, "determining the chronology of events typically requires only a comparison of the two filing dates." *Wakaya*, 910 F.3d at 1124.

*D.V.D.* takes precedence over this suit because Plaintiffs have been class members since as early as April 18, 2025, roughly five months before they filed the instant individual suit.[5] Based on the allegations in the complaint, Plaintiffs meet the class definition as aliens who "have a final removal order issued in proceedings […] whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceeding as a country to which the individual would be removed." *D.V.D.,* 778 F. Supp. 3d at 378. *First,* all Plaintiffs have a final order of removal. Compl. ¶¶ 4-8. *Second*, Plaintiffs were removed "on or after February 18, 2025" to a country not previously designated as the country of removal. *Id.* Accordingly, Plaintiffs entered the *D.V.D.* class before they filed their individual suit in September 2025, and the *D.V.D.* court was the first court to obtain jurisdiction over both the parties and the issues.

### b.  The Parties Substantially Overlap.

Furthermore, the parties in this case are virtually indistinguishable from those in the *D.V.D.* litigation. "The first-to-file rule applies when the parties in the two actions 'substantial[ly] overlap,' even if they are not perfectly identical." *Baatz*, 814 F.3d at 790; *Hilton Hotels*, 325 F.2d at 1010 (applying the first-to-file rule when the parties are "substantially the same" as an earlier filed litigation).

On the defendants' side, the parties substantially overlap. Both suits name in their official capacities the Secretary of DHS and the Attorney General. *See* Compl. ¶¶ 9, 11; Docket, *D.V.D.*, No. 1:25-cv-10676 (D. Mass.). While Plaintiffs here name additional defendants, one is the Director of ICE (a component agency of DHS), and the other is the Secretary of State. Compl. ¶¶

---

[5] Plaintiffs T.L. and I.O. did not become class members until they received final orders of removal in June and July 2025.

10, 12. Regardless, the allegations in both suits are primarily directed at DHS and/or its component agencies. *Compare* Compl. ¶¶ 14-35, *with D.V.D.*, Compl. (ECF No. 1).

On the plaintiffs' side, the five Plaintiffs are both plaintiffs in this suit as well as members of the certified class in *D.V.D.* Moreover, as a member of the *D.V.D.* certified class, Plaintiffs may not opt out of the case or the injunctive relief that the D.V.D. court has already ordered and which is currently on appeal before the First Circuit. "Members of [a Rule 23(b)(2)] class have 'no opportunity ... to opt out' and no entitlement to 'notice of the action.'" *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 207 (D.D.C. 2020) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)). Indeed, "certification of a 23(b)(2) class precludes individual suits for the same injunctive or declaratory relief." *Id.* (citing *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018)). "The certification of a suit as a class action has important consequences for the unnamed members of the class. … [t]hose class members may be 'bound by the judgment' and are considered parties to the litigation in many important respects." *Sanchez-Gomez*, 138 S. Ct. at 1538 (citations omitted). The reasoning for this rule is sound because "[t]o allow individual suits would interfere with the orderly administration of the class action and risk inconsistent adjudications." *Gillespie v. Crawford,* 858 F.2d 1101, 1103 (5th Cir. 1988). Because Plaintiffs are class members already bound by the pending litigation in *D.V.D.*, Plaintiffs may not seek separate injunctive or declaratory relief in an individual action. This factor alone strongly favors dismissal of this case.

### c.  The Claims Overlap.

Plaintiffs' claims challenging DHS's procedures for carrying out third country removals are the same as the claims in *D.V.D.* "The third factor to evaluate in the first-to-file rule is the similarity of the issues or claims at stake. Just as with the similarity of the parties' factor, the issues need only to substantially overlap in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791; *Hilton Hotels*, 325 F.2d at 1010 (applying the first-to-file rule when the second-filed "case raise[d]

16

issues of fact and law virtually identical" to the first-filed case). "The issues need not be identical, but they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Baatz*, 814 F.3d at 791 (quoting *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997)); *see also Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979) (affirming a district court's dismissal of portions of an appellant's complaint which duplicated a pending class action on the same claims).

Plaintiffs' claims are substantively identical to those brought in *D.V.D.*, are a clear example of improper claim splitting, and do not belong in this Court. As Judge Moss recently recognized, claims related to the propriety of the third country removal process—whatever the constitutional flavor—belong before Judge Murphy. *See Steele v. United States,* 144 F.4th 316, 2025 U.S. App. LEXIS 17784 *14 (D.C. Cir. 2025) ("Consistent with long-standing precedent we hold that the claim-splitting rule provides a valid, independent basis for dismissal."). This case is not distinguishable from *Phan*. If anything, the aliens in *Phan* had a better argument that their case was distinguishable from *D.V.D.* because it raised claims under the Sixth and Eighth Amendments. Here, if Plaintiffs' claims belong anywhere, they belong before Judge Murphy because they arise from the *exact factual scenario* the class counsel and Judge Murphy used to justify the classwide injunction. Judge Murphy, if anyone, is in the best position to decide the issues raised in this Complaint based on facts he anticipated could occur months ago.

## III.    The Supreme Court has Already Determined that Plaintiffs Are Not Presently Entitled to Relief.

All of the arguments Plaintiffs make in their Complaint have been reviewed, and rejected, by the Supreme Court by virtue of their membership in the certified Rule 23(b)(2) class and the Court's stay of the *D.V.D.* classwide preliminary injunction. Counsel for the nationwide class in both their opposition to the Government's application for a stay of the preliminary injunction and

17

motion for clarification raised all of the arguments Plaintiffs make here. *See generally DHS v. D.V.D.*, Opposition to Application to Stay ("Stay Opp"), 24A1153 (June 4, 2025); *DHS v. D.V.D.*, Opposition to Motion for Clarification ("Clarification Opp"), 24A1153 (June 24, 2025). They expressed their concern that the Government's procedures risk chain refoulment. Stay Opp at 27-28, 32. They complained about the lack of visibility into the Government's diplomatic assurance process. *Id.* at 27-30. They argued that class members were entitled under the Fifth Amendment to meaningful notice and an opportunity to be heard on any fear-based claims. *Id.* at 33-36. They argued that the Government was failing to follow the March Guidance. Clarification Opp. at 5 ("The eight class members in Djibouti have not yet received even the process provided for under Defendants' own policy, its March 30, 2025 policy memorandum."); *id.* at 1-2 (alleging that class members had received "not even the process afforded by the government's own policy memorandum"). They also objected to the Government's claims of irreparable harm and mounted numerous arguments about the harm that would befall their class members who, at the time of briefing, included eight aliens who the Government intended to send to South Sudan and who class counsel cited news articles they claimed demonstrated these eight aliens would be returned to their countries of origin. Stay Opp at 36-40; Clarification Opp at 3-5. Despite all these arguments, the Supreme Court sided with the Government *twice.*

Plaintiffs' attempts to avoid the Supreme Court's orders are without merit. Their assumption that the Supreme Court ruled in favor of the Government only because the classwide injunction violated Section 1252(f)(1)'s prohibition of classwide relief is just that: an assumption—and one squarely at odds with the Supreme Court's stay grant as to *named plaintiffs* (for whom Section 1252(f)(1) was no impediment to relief). Indeed, in its clarification order the Supreme Court emphasized that it had stayed the *D.V.D.* preliminary injunction "in full." *D.V.D.,*

145 S. Ct. at 2629. The Supreme Court's stay grant as to the named Plaintiffs in *D.V.D.* thus "squarely controls" this "like case[].*"Boyle*, 145 S. Ct. at 2654.

Moreover*,* the Supreme Court, by granting the stay, necessarily concluded that the balance of equities and public interest tipped in the Government's favor. *See Hollingsworth v. Perry,* 558 U.S. 183, 190 (2010) (setting the standard for an appellate stay). The Government argued that it was suffering an "ongoing irreparable injuring in the diplomatic, immigration, and foreign policy spheres." ECF No. 33-1 at 1. The Government explained that "[f]inding third countries willing and able to accept aliens is a delicate diplomatic endeavor. By interjecting itself into that process, and disrupting those carefully negotiated arrangements, the court's actions have already caused major and irremediable harm to U.S. foreign policy." *Id.* at 8. It is indisputable that, regardless of the Supreme Court's opinion on the merits arguments, it found that this irremediable harm justified the granting of a stay of the *D.V.D* court's preliminary injunction. Plaintiffs nonetheless ask this Court to *go beyond* what Judge Murphy ordered (relief limited to aliens in U.S. custody) which caused the harm the Supreme Court found sufficiently grievous to merit a stay. Plaintiffs ask this Court to directly interject itself into the United States' diplomatic discussions with a foreign sovereign nation. Whatever this Court's opinion of the Supreme Court's stay, it cannot openly defy the Supreme Court's order by visiting more *direct* harm to the diplomatic process than the Supreme Court found objectionable. For this reason alone, this Court must dismiss Plaintiffs' Complaint.

### IV.    Plaintiffs' Claims are Foreclosed by Numerous Jurisdictional Bars.

Even if Plaintiffs were not members of the mandatory *D.V.D.* class, numerous sections of the INA preclude this Court from issuing the relief Plaintiffs seek.

*First*, this Court would still lack jurisdiction under 8 U.S.C. § 1252(g) to review Plaintiffs' claims because their claims arise from the execution of their removal orders. Section 1252(g), as

amended by the REAL ID Act, bars claims arising from three discrete actions, including, as relevant here, the decision or action to "execute removal orders." *Id.* In enacting Section 1252(g), Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. *Id.*; *accord, Elgharib v. Napolitano,* 600 F.3d 597, 605 (6th Cir. 2010) (holding that Section 1252(g) precludes jurisdiction under the All Writs Act); *Sadhvani v. Chertoff,* 460 F. Supp. 2d 114, 122 (D.D.C. 2006) (same). Accordingly, by its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241 of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. American-Arab Anti-Discrimination Committee* ("AADC"), 525 U.S. 471, 482 (1999); *see also Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (holding that attempt to "employ[] a habeas petition effectively to challenge the validity and execution of [a] removal order," even "indirectly," is "jurisdictionally barred"). The decision to execute a removal order is committed to the discretion of the Executive Branch, and Section 1252(g) was designed to protect that discretion and to avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *AADC*, 525 U.S. at 487.

Section 1252(g) also applies to constitutional claims arising from the execution of a final order of removal, as the language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim[.]" *AADC*, 525 U.S. at 487; *accord Silva v. United States*, 866 F.3d 938, 940-41 (8th Cir. 2017). Further, *AADC* established that Section 1252(g) is "designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that

Congress has designed." *Alvarez v. ICE*, 818 F.3d 1194, 1205 (11th Cir. 2016) (quoting *AADC*, 525 U.S. at 485). Section 1252(g) therefore precludes "[e]fforts to challenge the refusal to exercise [favorable] discretion on behalf of specific aliens[.]" *Id.* (quoting *AADC*, 525 at 485).

Here, Section 1252(g)'s prohibition is particularly pronounced. Plaintiffs' claims not only plainly arise from the execution of their final orders of removal to Ghana, the remedy they seek falls firmly within the Executive's "plenary and exclusive" authority to speak for the country "in the field of international relations." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). All three branches of Government have made clear that the claims Plaintiffs raise are outside of this Court's authority; this Court should therefore dismiss Plaintiffs' Complaint.

*Second,* Plaintiffs' claims are barred in district courts by Sections 1252(a)(5) and (b)(9). By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(a)(5), (b)(2). This explicitly excludes "section 2241 of title 28, or any other habeas corpus provision." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. "Taken together, §[§] 1252(a)(5) and [(b)(9)] mean that *any* issue— whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Section 1252(b)(9) thus eliminates this Court's jurisdiction over Plaintiffs' claims by channeling "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" to the courts of appeals. Accordingly, this Court lacks jurisdiction under Sections 1252(a)(5) and

(b)(9) to review Plaintiffs' request to "undo" their removals. *See J.E.F.M.*, 837 F.3d at 1031; *see also Mata v. DHS*, 426 F. App'x 698, 700 (11th Cir. 2011); *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1257-58. (11th Cir. 2020); *Camarena v. ICE,* 988 F.3d 1268, 1272 (11th Cir. 2021); *Linares v. DHS*, 529 F. App'x 983 (11th Cir. 2013); *Themeus v. DOJ*, 643 F. App'x 830 (11th Cir. 2016).

Plaintiffs focus on the lack of notice regarding the country of removal as if their fear depends on receiving that notice. It does not. Plaintiffs know the countries to which they have a fear of removal, *particularly* in West Africa, and they could have made those fear claims during their initial removal proceedings or moved to reopen their proceedings at any time prior to their removal. To the extent Plaintiffs claim that due process requires notice of removal to the third country, they could have also made that claim through the administrative process. Plaintiffs know that this process is available *and* of the likelihood that they would be removed to a third country in light of the highly publicized nature of third country removals but are still seeking relief in this Court. This is precisely the scenario Congress intended to preclude with Section 1252(b)(9). This Court should give effect to Congress' plain intent and dismiss Plaintiffs' Complaint.

*Third,* FARRA and 8 U.S.C. § 1252(a)(4) also preclude Plaintiffs' claims. The Convention Against Torture (CAT) is not self-executing. *See Medellin v. Texas*, 552 U.S. 491, 505, 520 (2008); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003). Rather, it is only operative domestically insofar as Congress implements it by statute. Congress, in its discretion, implemented the CAT in relevant part by directing the issuance of regulations, expressly depriving courts of jurisdiction to review those regulations, and channeling all review of individual CAT claims into review of final orders of removal. FARRA § 2242(d); *see also* 8 U.S.C. § 1252(a)(4) (explaining that "a petition

for review" is the "sole and exclusive means for judicial review of any cause or claim under the [CAT]").

To the extent Plaintiffs argue that they do not seek to rewrite or challenge the CAT regulations, that is simply untrue. Plaintiffs request that this Court order the Executive Branch to attempt to *force* a foreign sovereign to comply with their own treaty obligations. This is far beyond what the district court in *D.V.D.* even issued. This Court lacks jurisdiction to rewrite the CAT regulations and require *any* additional action by the Government to comply with its obligations under the CAT, and this Court certainly lacks jurisdiction to require the Executive Branch to strong-arm Ghana into complying with Ghana's CAT obligations. Because FARRA § 2242(d) and 8 U.S.C. § 1252(a)(4) together make clear that this Court is without authority to force the Executive Branch to take diplomatic action—which is far beyond what is in DHS's regulations—this Court should dismiss Plaintiffs' Complaint.

**V.    Plaintiffs fail to state a valid claim under FOIA.**

Finally, this Court should dismiss Plaintiffs' claim under FOIA (Count VI) pursuant to Rule 12(b)(6) for several reasons.

First and foremost, as this Court has already noted, there is no formal, written "Ghana Agreement" as Plaintiffs allege. *See* ECF No. 41 at 15 ("That unwritten "agreement" appears to be the result of a diplomatic assurance from Ghana that it would not torture Plaintiffs or send them to a country where they would be tortured"). Instead, the United States has received diplomatic assurances regarding Ghana's treatment of aliens it agrees to receive from the United States. And, as discussed above, diplomatic assurances are an unreviewable part of the Executive's plenary authority to conduct affairs with foreign nations. *Supra* at § I. Such matters of foreign affairs are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades*, 342 U.S. at 589.

23

Furthermore, the type of relief Plaintiffs appear to seek—prohibiting Defendants from "rely[ing] on or us[ing] the Ghana Agreement"—is not available under FOIA. A court's power to remedy an improper withholding is limited by FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B). *See Kennecott Utah Copper Corp.*, 88 F.3d 1191, 1202 (D.C. Cir. 1996) ("The statute's remedial provision, § 552(a)(4), governs judicial review of all three types of documents[.]"). The D.C. Circuit has recognized that "while it may seem strange for Congress to command agencies" to take certain action under FOIA without "providing courts with the power to order" that an agency take that action, "that is exactly what Congress intended." *Id.* at 1202-03.

This analysis is buttressed by the practical consequences of adopting Plaintiffs' proposed remedy for a technical FOIA violation. Plaintiffs' version would radically transform the FOIA statute from a disclosure statute into a vehicle to set aside agency policies or practices regardless of their legality. As the Supreme Court has noted, courts should be reluctant to construe FOIA "as silently departing from prior longstanding practice." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 154 (1980). Longstanding practice dictates that challenges to an agency's policies that carry the force of law and requests to set those policies aside should be brought under the APA—not FOIA. *See* 5 U.S.C. § 702. Congress never intended FOIA to displace or otherwise truncate the requirements of the APA.

Even if Plaintiffs could obtain this type of relief under FOIA, it would still be improper because it is not limited to the named Plaintiffs and Plaintiffs have not sought to certify this case as a class action. Plaintiffs ask this Court to enjoin ICE from removing *any* alien to Ghana by prohibiting ICE from relying on the so-called "Ghana Agreement." Compl. at 15-17. But this relief would constitute an improper universal injunction, which this court lacks jurisdiction to issue. *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("A universal injunction can be justified only as

24

an exercise of equitable authority, yet Congress has granted federal courts no such power").
Moreover, even if Plaintiffs did represent a certified class, their request for non-individualized
relief would still run afoul of 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) states:

> Regardless of the nature of the action or claim or of the identity of the party or
> parties bringing the action, no court (other than the Supreme Court) shall have
> jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–
> 1231, 1252, 1253, and 1254a], other than with respect to the application of such
> provisions to an individual alien against whom proceedings under such part have
> been initiated.

8 U.S.C. § 1252(f)(1); *see* INA § 242(f)(1), as amended through Pub. L. 119-1 (Jan. 29, 2025),
www.govinfo.gov/app/details/COMPS-1376; *cf. Galvez v. Jaddou,* 52 F.4th 821, 830 (9th Cir.
2022). Interpreting this statute in *Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"),
525 U.S. 471, 482 (1999), the Supreme Court held that, "[b]y its plain terms, and even by its title,
that provision is nothing more or less than a limit on injunctive relief. It prohibits federal courts
from granting class-wide injunctive relief against the operation of sections 1221-1231, but
specifies that this ban does not extend to individual cases." 525 U.S. at 481-82; *see Hamama v.
Adducci*, 912 F.3d 869, 877 (6th Cir. 2018). Moreover, in *Aleman Gonzalez*, the Supreme Court
again reiterated that "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that
order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise
carry out the specified statutory provisions." 596 U.S. at 550. Accordingly, Section 1252(f)(1) bars
this Court from granting Plaintiffs' request to enjoin the operation of Section 1231, which is the
statutory provision authorizing detention and removal of aliens with final orders of removal.
Section 1252(f)(1) bars any relief that "enjoins or restrains" Defendants' operation of the removal
statutes, including third country removals under Section 1231(b), on a non-individualized basis.
Prohibiting ICE from removing any aliens (not just the five Plaintiffs) to Ghana would necessarily

restrain ICE's third country removal authority under Section 1231(b) and therefore is forbidden by Section 1252(f)(1).

Finally, even if the FOIA statute did authorize the relief Plaintiffs seek, the diplomatic assurances at issue do not fall within the categories of documents Section 552(a)(2) directs agencies to affirmatively publish. Under FOIA, government agencies are required to affirmatively publish certain categories of records. *See* 5 U.S.C. § 552(a)(1), (2). As relevant here, the affirmative disclosure provisions of FOIA require that:

> Each agency . . . shall make available for public inspection . . . (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; (C) administrative staff manuals and instructions to staff that affect a member of the public[.]

*Id.* § 552(a)(2). The Supreme Court has described documents under Section 552(a)(2) as representing the "working law" of the agency and an "affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 153 (1975).

Plaintiffs' attempt to characterize Ghana's diplomatic assurances as a DHS "statement of policy," Compl. ¶ 64, is clearly mistaken. First, they are not a DHS "statement" at all. As Defendants have explained, the Government received diplomatic assurances from the Government of Ghana, communicated to the U.S. government by diplomatic note. *See* ECF No. 50. These assurances are a communication between the Department of State—*not DHS*—and a foreign government. The assurances do not "create[] or provide[] a way of determining the extent of substantive rights and liabilities." *Cuneo v. Schlesinger,* 484 F.2d 1086, 1091 n.13 (D.C. Cir. 1973). They do not interpret Section 1231(b) or any other provision of law in any way, let alone in a way that constitutes "secret law." *Id.* at 1091. And, critically, they do not address the legal issue Plaintiffs are attempting to raise: what domestic *procedures* DHS is required to provide

26

before carrying out a third country removal under Section 1231(b). Adopting Plaintiffs' interpretation of Section 552(a)(2) would require agencies to publish any and all diplomatic communications that the Executive relies upon when conducting relations with foreign governments. That is an unworkable and unrealistic outcome not envisioned by the FOIA statute.

Finally, Plaintiffs also vaguely allege that DHS "has possibly relied on other statements of policy or instruction or guidance covered by 5 U.S.C. § 552(a)(2)(E)." Compl. ¶ 66. This conclusory statement does not begin to meet the threshold for stating a plausible claim for relief particularly given Plaintiffs' warped view of what information falls under Section 552(a)(2). For all of these reasons, Count VI should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its entirety. Counts I-V should be dismissed for lack of jurisdiction under Rule 12(b)(1) or, alternatively, for failure to state a claim under Rule 12(b)(6). Count VI should be dismissed for failure to state a claim under Rule 12(b)(6).


Respectfully submitted,

BRETT A. SHUMATE                        /s/ *Matthew P. Seamon*
Assistant Attorney General              MATTHEW P. SEAMON
                                        (CA Bar # 309249)
ELIANIS N. PEREZ                        Senior Litigation Counsel
Assistant Director                      U.S. Department of Justice, Civil Division
                                        Office of Immigration Litigation
MARY L. LARAKERS                        P.O. Box 868, Ben Franklin Station
Senior Litigation Counsel               Washington, DC 20044
                                        (202) 598-2648
                                        (202) 305-7000 (facsimile)
                                        Matthew.Seamon2@usdoj.gov